United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| XIAOJIAO LU, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ALIGN TECHNOLOGY, INC., et al.,<br><br>Defendants. | Case No. 18-CV-06720-LHK<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 92 |

This case is a putative securities class action against Align Technology, Inc.; its President and Chief Executive Officer, Joseph M. Hogan; its Chief Financial Officer, John F. Morici; its former Chief Marketing, Portfolio and Business Development Officer, Raphael S. Pascaud; and its Senior Vice President of Global Operations, Emory M. Wright (collectively, "Defendants"). Lead Plaintiff SEB Investment Management AB ("Plaintiff") brings this suit individually and on behalf of "all other persons and entities who purchased or otherwise acquired the common stock of Align Technology, Inc. between April 25, 2018 and October 24, 2018, both dates inclusive (the 'Class Period')." ECF No. 90–1 ¶ 1.

Before the Court is Defendants' motion to dismiss. ECF No. 92. The Court GRANTS Defendants' motion to dismiss with leave to amend.

1
Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

## I. BACKGROUND

### A. Factual Background

Defendant Align Technology, Inc. ("Align," or the "Company") "designs, manufactures, and sells clear aligners for the treatment of malocclusion, or the misalignment of teeth, under the trademark Invisalign." CCAC ¶ 1. Owing to a number of patents held by Align, the Company "held a virtual monopoly over the clear aligner market," at least until those patents began to expire in 2017. *Id.* ¶¶ 1, 3. However, as Align began to lose its patent protections, analysts began to acknowledge that new market entrants could "pressure [average sale prices]." *Id.* ¶ 3.

Plaintiff's claims center around those competitive pressures and the representations that Defendants made to investors regarding how competition would impact Align's business. Plaintiff alleges that, on six separate occasions between April 25, 2018 and September 5, 2018, Defendants made false and misleading statements and/or omissions to investors that downplayed the competition, hid the Company's price cuts to combat competition, and failed to acknowledge that their strategies were insufficient to mitigate competitive pressures. *Id.* ¶ 128. For example, Plaintiff points to Hogan's response to a question on the April 25, 2018 quarterly conference call asking whether the company was "seeing any changes, perhaps in promotional activity or pricing from competitors":

> ***No, we haven't seen any change at all, John. I mean, we – I mean, the same cast of competitors are still out there that we had before.*** Obviously, we expect the 3M product at the AAO [(American Association of Orthodontists Annual Session)]. We are pretty sure to see one there. We saw the DENTSPLY announcement with the MTM expansion in the 510(k) that they've done. But we haven't seen that translate into any kind of strategy or implementation in the marketplace yet. We only expect to see that in the second half. Our guess, John, is pretty much what we've been telling you and the rest of the teams over the last couple of years is we expect this to be midrange products, so in the 26 aligner or less kind of an area. We expect a kind of a slow ramp-up just because of the nature of how you have to scale in this business, take some time in treatment planning and also manufacturing. ***So I mean, you can see with our kind of bullish forecast for the second half of the year that John just called that we're pretty much—have this in place in the sense of what we thought we would face, and we haven't really changed that analysis since we put the plan together last year.***

*Id.* ¶ 130 (emphasis in original) (brackets omitted). Plaintiff purports to show that this and

2

other, similar statements are false or misleading in light of the same repeated, undisclosed factual allegations:

> Defendants: (i) met frequently regarding competition issues, including monthly EMC meetings; (ii) were internally warning their employees about the consequences of the patent expirations and the fact that competition was coming prior to the start of the Class Period (e.g., "they're coming"); (iii) internally made clear that they planned to address their concerns regarding the expiration of the Company's Invisalign patents and increased clear aligner competition by running promotions and offering cheaper alternatives; (iv) already had taken steps specifically intended to address the increasing competition, including overhauling Align's Advantage Program in January 2018 to spur greater dentist participation and provide discounts for certain non-comprehensive products; and (v) based on the available data, knew or were deliberately reckless in not knowing that the 2018 Advantage Program was insufficient by itself to counteract the impact of competition on Align.

*Id.* ¶ 137; *see also id.* ¶¶ 148, 152, 154, 160, 165. Plaintiff alleges that Align's promotional activity and discounts demonstrate the enormity of the competitive pressures on the Company. *See id.* ¶ 128. Plaintiff specifically focuses on Defendant's "significant changes" as of January 1, 2018 to the Company's Invisalign Advantage Program, a doctor incentive system offering volume-based discounts. *Id.* ¶ 7. Plaintiff further notes an additional summer discount program (the "summer sizzler" promotion) in the third quarter of 2018, which provided $200 discounts for certain sales. *Id.* ¶ 10. Plaintiff alleges that Defendants were aware of, but failed to disclose, the impact that these discounts had on the company's average sales prices ("ASP"), a key metric for investors to which Defendants had access throughout the class period. *Id.* ¶ 6.

During the disclosure of third quarter results on an October 24, 2018 investor conference call, Defendant Morici acknowledged a drop in third-quarter ASP figures of approximately $85 "due to a combination of promotional programs, unfavorable foreign exchange and product mix, partially offset by price increases across all regions." *Id.* ¶ 121. Align's stock price declined nearly $59 a share by the following day, *id.* ¶ 124, and this suit followed.

**B. Procedural History**

On November 5, 2018, an Align shareholder filed the instant case captioned *Lu v. Align Technology, Inc., et al.,* N.D. Cal. Case No. 5:18-CV-06720-LHK. *See* ECF No. 1. Another

3

Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

1  shareholder filed suit on December 12, 2018, in a case captioned *Infuso v. Align Technology, Inc., et al.*, N.D. Cal. Case No. 5:18-CV-07469.  On January 2, 2019, the Court granted an administrative motion to relate the two cases.  ECF No. 11.  On March 22, 2019, the Court consolidated the two cases.  ECF No 72.  In the same Order, the Court appointed Plaintiff SEB Investment Management AB as lead plaintiff and appointed Kessler Topaz as lead counsel.  *Id.*

On May 10, 2019, Plaintiff filed a Consolidated Amended Class Action Complaint, ECF No. 87, которое Plaintiff later corrected, ECF No. 90 ("CCAC" or the "Complaint") ¶ 1.[1]  On June 24, 2019, Defendants filed a motion to dismiss the Consolidated Amended Class Action Complaint.  ECF No. 92 ("Mot.").  On August 13, 2019, Plaintiff filed an opposition.  ECF No. 97 ("Opp'n").  On September 12, 2019, Defendants filed a reply.  ECF No. 98 ("Reply").

In support of their motion to dismiss, Defendants filed a request for judicial notice and notice of incorporation by reference.  ECF No. 93.  Plaintiff does not object to incorporation by reference or judicial notice, but instead contests what facts or inferences the Court may draw from those documents.  *See* Opp'n at 12 n.6.  The Court only takes judicial notice of the fact of the filings; the Court does not accept as true any of the disputed facts in the filings.  The Court GRANTS Defendants' request for judicial notice and incorporation by reference.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief may be granted.  Because Plaintiff has brought claims as a federal securities fraud action, Plaintiff must "meet the higher, [more] exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)."  *Or. Pub. Emp. Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 603–04 (9th Cir. 2014).

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must

---

[1] Throughout this Order, the Court's references to the operative complaint will be to the Corrected Consolidated Class Action Complaint, ECF No. 90-1, which followed Plaintiff's notice of errata to the Consolidated Class Action Complaint, ECF No. 87.

4
Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

state with particularity the circumstances constituting fraud or mistake." Plaintiff must include "an account of the time, place, and specific content of the false representations" at issue. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted). Rule 9(b)'s particularity requirement "applies to all elements of a securities fraud action." *Apollo Group*, 774 F.3d at 605. "PSLRA imposes additional specific pleading requirements, including requiring plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter." *In re Rigel Pharmaceuticals, Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012). In order to properly allege falsity, "a securities fraud complaint must . . . specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading." *Id.* (internal quotation marks and alteration omitted). In addition, in order to "adequately plead scienter under the PSLRA, the complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* (internal quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Furthermore, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

Under Federal Rule of Civil Procedure 15(a), when a court grants dismissal, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities."

5

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party moving for leave to amend has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

**III. DISCUSSION**

Plaintiff alleges three causes of action: (1) violation of § 10(b) of the Exchange Act and Rule 10b-5 against all defendants, (2) violation of § 20(a) of the Exchange Act against the individual defendants, and (3) violation of § 10(b) and 20(A) of the Exchange Act and Rule 10b-5 for insider trading against Hogan and Morici. CCAC ¶¶ 71–75. The Court addresses each cause of action in turn.

**A. Claim One: Violation of § 10(b) of the Exchange Act and Rule 10b-5**

"To plead a claim under section 10(b) and Rule 10b-5, Plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Apollo Group*, 774 F.3d at 603. Defendants argue that Plaintiff's complaint should be dismissed because the complaint fails to allege a false or misleading statement; and the complaint fails to adequately allege scienter. The Court finds below that dismissal of the claim is warranted because Plaintiff fails to identify which statements are allegedly false or misleading and because Plaintiff fails to adequately allege falsity. Additionally, in anticipation of an amended complaint, the Court discusses the Complaint's deficiencies with regard to scienter.

**1. Plaintiff fails to identify which statements are allegedly false or misleading.**

As an initial matter, the Court finds dismissal warranted because the Complaint fails to comply with Rule 8's requirement of a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). Courts may dismiss cases for "puzzle pleading," where the complaint "recite[s] lengthy statements attributed to the defendants, followed by a generalized list of reasons that the statements may have been false or misleading or a

6
Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

generalized list of omissions that were required to make the statements not misleading." *Tarapara v. K12 Inc.*, No. 16-CV-4069-PJH, 2017 WL 3727112, at *9 (N.D. Cal. Aug. 30, 2017); *see, e.g.*, *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1073 (N.D. Cal. 2001) (dismissing a complaint where the Court found it "exceedingly difficult to discern precisely which statements are alleged to be misleading"). The Court finds dismissal of the Complaint warranted because, as pleaded, the Court cannot discern which specific statements Plaintiff contends to be false or misleading.

Here, Plaintiff equivocates as to which statements Plaintiff alleges to be false and misleading. For 42 paragraphs in 20 pages of the Complaint, under the heading "Defendants' Materially False and Misleading Statements and Omissions," Plaintiff quotes and discusses paragraph-long statements and selectively bolds and italicizes certain sentences. CCAC at 37–56. Defendants' motion to dismiss contends that many of these statements are nonactionable forward-looking statements under the Safe Harbor. Mot. at 16–17. In response, Plaintiff's opposition abruptly concedes that Paragraphs 130–33, 141–44, 151, 153, 156–57, and 164 were not alleged to be actionable misstatements and were instead included "solely for context." Opp'n at 17. In a footnote, Plaintiff purports to direct the Court to where the Complaint "specifically identifies the paragraphs that contain the alleged false and misleading statements," and cites, for example, ¶¶ 137–38. Opp'n at 17 n.14. But Paragraphs 137–38 circuitously redirect the Court to paragraphs 130–33, which Plaintiff conceded were not actionable misstatements. Specifically, Paragraph 137 states, "Defendant Hogan's statements set forth in Paragraphs 130–133, *supra*, were materially false or misleading when made, or omitted material facts . . . ." *Id.* ¶ 137. Moreover, in both the Complaint and in the Opposition, Plaintiff purports to provide "examples" of the misleading statements rather than enumerating which specific statements the Court should consider. *See, e.g.*, CCAC ¶ 137; Opp'n at 7.

In light of Plaintiff's argument that most of the statements are provided "solely for context," the Court cannot discern which statements are alleged to be actionable and which are not. By failing to articulate *exactly* which statements Plaintiff asserts to be false or misleading,

7

Plaintiff in effect insulates the Complaint from review, e.g., for defenses like puffery or PSLRA's Safe Harbor. *See* 15 U.S.C. § 78u-5(c)(1). Indeed, by asserting that Plaintiff "does not plead any of these particular statements as actionable misstatements," Opp'n at 17, Plaintiff seems to be conceding Defendants' argument that many of the statements are in fact "forward-looking" statements protected by PSLRA's Safe Harbor provision. The Court accordingly dismisses Plaintiff's Complaint for impermissible "puzzle pleading" in violation of Federal Rule of Civil Procedure 8(a)(2).

### 2. Plaintiff fails to adequately allege falsity.

Notwithstanding Plaintiff's failure to identify precisely *which* statements are even at issue, the Court also finds that Plaintiff fails to allege falsity with particularity. To assert a claim under the PSLRA, the plaintiff must plead with particularity, inter alia, the element of falsity. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990–91 (9th Cir. 2009). "The PSLRA has exacting requirements for pleading 'falsity.'" *Metzler Inv. GMBG v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). To satisfy these "exacting requirements," a plaintiff must plead "specific facts indicating why" the statements at issue were false. *Id.*; *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) ("Plaintiffs' complaint was required to allege specific facts that show" how statements were false). Moreover, to be actionable, a statement must be false "at [the] time by the people who made them." *Ronconi*, 253 F.3d at 430. "The fact that [a] prediction proves to be wrong in hindsight does not render the statement untrue when made." *In re VeriFone Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993).

Here, the Court finds that Plaintiff has failed to adequately allege falsity because Plaintiff (1) selectively ignores portions of Defendants' statements, (2) fails to connect the statements with factual allegations that show how the statements were false or misleading when made, and (3) fails to particularize the impact of competition on Align's business. The Court addresses each of these deficiencies in turn.

#### *a. Plaintiff selectively ignores Defendants' statements.*

Broadly speaking, Plaintiff claims that, following the expiration of Align's patents,

8
Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Defendants repeatedly misled them about the extent new competition would impact their clear aligner business segment. But, as an initial matter, Plaintiff repeatedly ignores the actual content of Defendants' statements and draws "unwarranted inferences" that the Court cannot accept. *See Adams*, 355 F.3d at 1183. For example, Plaintiff points to a statement by Hogan when asked on April 25, 2018 about how the Company was responding to competition:

> ***It hasn't changed for a year, honestly.*** I mean, you can tell what we initiated during the beginning of the year. We didn't think we'd have any really major competitive plays in that sense. We knew we'd see more competition. But we've basically looked at our business with the momentum of the business and projected that forward, and you're seeing it within our numbers. ***There's no specificity that I want to share in the sense of what we think and how much in ASP and what areas. Just take a look at our bullish forecast going forward. And as competition becomes more visible to us and more in line, we'll share with you what we're seeing and how we look at the business.***

CCAC ¶ 131 (emphasis in original). To explain how this statement is misleading, Plaintiff asserts that "unbeknownst to investors, Defendants already were seeing and taking affirmative steps to address the impact of competition on Align." *Id.* ¶ 137. Although Plaintiff emphasizes the first sentence, "It hasn't changed for a year, honestly," Plaintiff fails to address the next sentence: "I mean, you can tell what we initiated during the beginning of the year," an explicit acknowledgment that Align had in fact initiated a competitive response at the beginning of the year (i.e., the changes to its Advantage Program). *Id.* ¶ 131. Plaintiff argues that these statements "created the false impression that any competition would not impact the Company's Clear Aligner revenues and ASP." *Id.* ¶ 149. Yet, when read in full, Hogan's statement acknowledges the increased competition, directs investors to the changes that were initiated at the beginning of the year, and says that more information will be shared as the competition becomes more visible to the Company. *See id.* ¶ 131.

Crucially, Plaintiff ignores the disclosures that *were* made and that Plaintiff concedes in the Complaint. The Complaint alleges that "the market was generally aware that Defendants had changed the Advantage program." *Id.* ¶ 8. The Complaint acknowledges that the market was aware of and apprehensive about "the expiration of Align's key patents and the expected influx" of new

9

market entrants. *Id.* ¶ 4. In fact, these competitors' products were revealed publicly at the American Association of Orthodontists' Annual Session, and Hogan addressed them by name in response to analyst questions. *Id.* ¶ 130. In fact, Hogan explicitly acknowledged that competition could affect Align's business. The Complaint quotes Hogan as follows: "And so, possibly, in that lower segment of the marketplace, could we lose some share? Sure." *Id.* ¶ 132. The Complaint quotes Hogan further: "***[O]ur logical conclusion is, yes, I mean, we'll*** [sic] ***probably going to see more competition [in lower-price segments]. The good thing about that, Jon, that's not new to us.***" *Id.* ¶ 133 (emphasis in original). Plaintiff does not engage with these disclosures even though the disclosures undermine Plaintiff's entire theory of the case.

By cherry-picking portions of Defendants' statements and ignoring other portions, Plaintiff asks the Court to make inferences contradicted by the statements viewed properly as a whole. To allege falsity under the PSLRA, Plaintiff "must account for the entirety of [the statements] on which they rely, and not simply invoke selective quoting to make their claims." *See In re Ocera Therapeutics, Inc. Sec. Litig.*, No. 17-CV-06687-RS, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018).

### b. *Plaintiff's factual allegations fail to demonstrate how the statements were false or misleading when made.*

A plaintiff fails to adequately plead falsity under the PSLRA when "the reasons Plaintiffs offer as to why the statements are false or misleading bear no connection to the substance of the statements themselves." *See Hong v. Extreme Networks, Inc.*, No. 15-cv-04883-BLF, 2017 WL 1508991, at *15 (N.D. Cal. Apr. 27, 2017). Here, Plaintiff consistently fails to provide factual allegations that show how Defendants' statements were false or misleading when made. Instead, Plaintiff repeats the same tangential factual allegations to claim falsity. Specifically, across numerous alleged misstatements, Plaintiff's factual allegations showing why the statements were false or misleading boil down to (1) Defendants "met frequently" to discuss "competition issues"; (2) Defendants warned employees that the patent expirations would lead to competitive pressure; (3) Defendants intended to address increased competition by changing Align's Advantage

10
Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Program; (4) Defendants had already implemented changes to the Company's Advantage Program in response to competitive pressures; and (5) Defendants knew or should have known that the revamped Advantage Program was "insufficient by itself to counteract the impact of competition." *See, e.g.*, Compl. ¶¶ 137, 148, 152, 154, 160, 165. Plaintiff repeatedly claims that these facts undermine Defendants' communications to shareholders regarding the actual impact that competition was expected to have on Align's business. *Id.*

However, these factual allegations are almost entirely untethered to the actual statements made by Defendants, and require the Court to guess *how* these factual allegations render the Defendants' representations misleading at the time they were made. Throughout the Complaint, Plaintiff repeatedly pairs Defendants' broad statements about what their competitors are doing with the above "undisclosed" allegations about how Align discussed, prepared for, and implemented strategies to respond to competition. In one example, Hogan was asked during a conference call whether Align was "seeing any changes, perhaps in promotional activity or pricing from competitors." *Id.* Plaintiff emphasizes Hogan's response that "***No, we haven't seen any change at all, John. I mean, we – I mean, the same cast of competitors are out there that we had before,***"[2] *Id.* ¶ 130 (emphasis in original), but Plaintiff fails to explain how the above five factual allegations about Align's response to competition renders this statement false or misleading.

In another instance, Plaintiff identifies Hogan's May 23, 2018 statement, "***I believe what we told you back in 2016, what we thought about competition coming in with 10-year-old technology was pretty much confirmed by the [American Association of Orthodontists Annual Session] in May,***" *Id.* ¶ 141, and simply repeats that the statement was false or misleading "because, unbeknownst to investors, Defendants were seeing and taking affirmative steps to address the impact of competition." *Id.* ¶ 148. The statement, which opines on how Align's

---

[2] As discussed *supra*, Section III.A.1, in light of Plaintiff's opposition, it is entirely unclear what statements the Plaintiff even purports to be actionable, as opposed to "solely for context." *See* Opp'n at 17. For purposes of this discussion, the Court must guess that these examples are among those alleged to be false or misleading because they are bold and italicized. CCAC ¶ 130.

11
Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

competitors' technology was outdated, makes no representation regarding what "affirmative steps" Align was making internally to prepare for new market entrants. This problem pervades the Complaint: wholly absent is the nexus between the statements and omissions and any facts that would render them false or misleading.

Should Plaintiff amend the Complaint, Plaintiff must connect the content of the communications with specific factual allegations that show how the conversations were false at the time made, rather than repeating the same basic background facts. *Cf. Tarapara*, 2017 WL 3727112, at *9 (explaining that dismissal warranted where the complaint "recite[s] lengthy statements attributed to the defendants, followed by a generalized list of reasons that the statements may have been false or misleading or a generalized list of omissions that were required to make the statements not misleading"). To the extent that any misrepresentations or omissions simply cannot be buttressed by specific, particularized factual allegations that show how the statements were false or misleading when made, those claims simply cannot meet the "higher, [more] exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)." *See Apollo Group Inc.*, 774 F.3d at 603–04.

### c. *Plaintiff fails to plead with particularity that competition had any material impact.*

Finally, the Court finds that Plaintiff has also failed to plead with particularity the specific impact that competition had on Align's business. Again, the crux of Plaintiff's claim is that Defendants misrepresented to investors the effect Align's competition was having on Align's business in the wake of Align's patent expirations. Plaintiff's repeated factual allegations include that "the 2018 Advantage Program was insufficient by itself to counteract the impact of competition on Align." CCAC ¶¶ 137–38, 148, 152, 154, 160, 162, 165.

However, as an initial matter, the Complaint itself undermines Plaintiff's position that Align's performance suffered *at all*. Plaintiff focuses on results from the third quarter of 2018, which comprises a significant portion of the April 25, 2018 through October 24, 2018 Class Period. Specifically, Plaintiff touts the $85 drop in worldwide ASPs (from $1,315 in the second

12
Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

quarter of 2018 to $1,230 in the third quarter). CCAC ¶¶ 12, 172. However, other factors mentioned in the Complaint may explain the decrease in ASP for the third quarter. Plaintiff quotes Morici's explanation that the $85 decrease in ASP was mostly explained by other factors unrelated to the promotions: $24 was attributable to "unfavorable foreign exchange," and about $31 attributable to a "shift to the lower stage [non-comprehensive] products," which left a decrease of "$30 or so . . . related to those promotions." CCAC ¶ 174. Plaintiff does not allege that Morici's explanations were incorrect or false. Plaintiff's allegations in the Complaint show that other metrics had in fact improved over the same time period. For example, total shipments were "up 5.5% sequentially and up 35.3% year-over-year." *Id.* ¶ 121. Plaintiff never explains why the Court should focus on the ASP at the expense of other positive metrics over the same time period, particularly where the ASP may have been influenced mostly by other factors.

In fact, as Defendants argue, Plaintiff fails to show that Align lost even "a single dime" due to competition. Reply at 7. Even with some disappointing numbers in the third quarter, Plaintiff must still connect these disappointing results with Defendants' statements about changes to competition to show that the statements were false or misleading when made. *In re VeriFone Sec. Litig.*, 11 F.3d at 871. Plaintiff must specifically allege how new, post-patent-expiration competition caused these results. Simply asserting that Defendants launched promotions "because the Company's sales were on a downward trend," *see* CCAC ¶ 102, is inadequate under Ninth Circuit law. *See Ronconi*, 253 F.3d at 431 (rejecting conclusory assertion that "sales growth was not accelerating" because plaintiff failed to "describe, chart or graph" the sales figures or otherwise provide particular facts to support it). Similarly, Plaintiff's repeated allegations that Defendants implemented discounts to "increase product volume and secure a competitive edge" are too generalized to link expansion of competition following the patent expirations with the third-quarter results. *See* CCAC ¶ 106. While the Court agrees that Plaintiff needs not "precisely quantify the impact that competition was having . . . with specific figures and data points," Opp'n at 8 n.2, the absence of any specificity at all "makes it difficult to understand the severity of the problem or whether that actually had an impact" on Align. *See McGovney v. Aerohive Networks,*

13

Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

*Inc.*, 367 F. Supp. 3d 1038, 1056 (N.D. Cal. Feb. 5, 2019).

In sum, the Court finds that Plaintiff has failed to plead with particularity that competition increased following the expiration of Align's patents and that any such changes impacted Align. Given that these allegations go to the heart of Plaintiff's complaint, the PSLRA requires particularity for these claims to survive.

### 3. Plaintiff fails to adequately allege scienter.

Although the Court grants Defendants' motion to dismiss because Plaintiff fails to identify which statements are allegedly false or misleading and fails to adequately allege falsity, in anticipation of an amended complaint, the Court also addresses Defendants' argument about scienter.

In order to survive a motion to dismiss, Plaintiff's complaint must create a strong inference of scienter. *See* 15 U.S.C. § 78u–4(b)(2) ("[The complaint must] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."). With respect to the strong inference requirement, the U.S. Supreme Court has explained that a strong inference must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). As to the meaning of "scienter," the Ninth Circuit has held that a plaintiff's complaint must show that "the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Zucco*, 552 F.3d at 990–91 (quoting *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014–15 (9th Cir. 2005)). "[F]acts showing mere recklessness or a motive to commit fraud and [the] opportunity to do so" are insufficient. *Id.* (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)). "To meet this pleading requirement, the complaint must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi*, 253 F.3d at 432 (citation omitted). When an omission is at issue, "the plaintiff must plead 'a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a

14

danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Zucco*, 552 F.3d at 991 (quoting *Silicon Graphics*, 183 F.3d at 976).

In the Ninth Circuit, courts must determine first "whether any of the plaintiff's allegations, standing alone, [are] sufficient to create a strong inference of scienter." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014). If none is sufficient alone, the court must "then consider the allegations holistically to determine whether they create a strong inference of scienter taken together." *Id.* Under this holistic determination, scienter is adequately pleaded if "all of the facts alleged, taken collectively, give rise to a strong inference of scienter." *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061–62 (9th Cir. 2014).

Here, Defendants argue that Plaintiff has failed to plead scienter with particularity. Mot. at 18–24. Given that the other serious deficiencies in the Complaint already warrant dismissal, the Court need not consider all of the parties' arguments, but will instead highlight the following: (1) Plaintiff's use of former employees, (2) the lack of contemporaneous data, and (3) Defendants' stock sales.

First, the Court finds that the allegations from former employees fail to "demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi*, 253 F.3d at 432. As the Court explained above, *supra* section III.A.2.b, Plaintiff's factual allegations fail to demonstrate falsity because they "bear no connection to the substance of the statements themselves." *See Hong,* 2017 WL 1508991, at *15. Similarly, the former employee statements do not give rise to any inference of scienter because they bear no connection to the allegedly false or misleading nature of Defendants' statements. *See Ronconi*, 253 F.3d at 432. For example, Plaintiff alleges that Former Employee 5 ("FE 5") "attended meetings that included Defendant Morici," where Morici "talked about Align's competitors" and stated that he was "very, very aware of competition." CCAC ¶ 106. However, Defendants publicly and repeatedly acknowledged the existence of competition and discussed their competitors by name. *See, e.g.*, *id.* ¶ 130. Plaintiff fails to show how this statement from FE 5 creates any inference of

15

Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

scienter, or even falsity. In order for the former employee statements to give rise to an inference of scienter, the statements must directly relate to Plaintiff's allegations of falsity, i.e., the extent to which post patent-expiration competition was impacting Align. As pleaded, these former employee statements fall far from establishing a strong inference of scienter.

Relatedly, Plaintiff fails to plead with particularity what specific data Defendants had that would raise an inference of scienter. The Ninth Circuit has held that "negative characterizations of reports relied on by insiders, without specific reference to the contents of those reports, are insufficient to meet the heightened pleading requirements of the PSLRA." *Intuitive*, 759 F.3d at 1063 (brackets omitted). Plaintiff's Complaint relies on the former employees to establish that Defendants "had direct access to negative material nonpublic information regarding the impact of competition and the Company's Clear Aligner ASP." *Id.* ¶ 183 (emphasis omitted). For example, based on the former employees' statements, Plaintiff alleges that Defendants received "bi-weekly reports that highlighted sales volume, revenue, and ASP"; received a "monthly reporting package that reflected all of the financial figures"; and "had access to Sales Force, which reported ASP in almost real-time." *Id.* ¶ 183. Plaintiff adds that "ASP began to decline" in 2018. *Id.* The former employee allegations are entirely conclusory and "fail to cite a single metric from any of the reports and Sales Force that Defendants supposedly tracked." Mot. at 21. Without allegations of a single figure from those numerous sources, the Court is unable to draw any inference—let alone a "strong inference of scienter"—about what the Defendants knew or should have known about how Align's performance was directly impacted by new competitive pressures. Plaintiff's bare "negative characterization" is insufficient. *See Intuitive*, 759 F.3d at 1063.

Finally, the Court also agrees with Defendants that the individual defendants' stock sales fail to raise a strong inference of scienter. "Although 'unusual' or 'suspicious' stock sales by corporate insiders may constitute circumstantial evidence of scienter, insider trading is suspicious only when it is 'dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.'" *Zucco*, 552 F.3d at 1005 (quoting *Silicon Graphics*, 183 F.3d at 986). Thus, within the Ninth Circuit, courts must consider

16
Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

three factors to determine if stock sales in fact constitute circumstantial evidence of scienter: "(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Zucco*, 552 F.3d at 1005 (quoting *Silicon Graphics*, 183 F.3d at 986). Here, Plaintiff focuses almost exclusively on the first factor, number and percentage of shares sold, and largely omits factual allegations regarding the latter two factors that the Court must consider to determine whether Defendants' stock sales raise an inference of scienter. *See* Opp'n at 21–22.

Specifically, as to the second factor, courts have held that the timing of stock sales may weigh in favor of scienter where "calculated to maximize the personal benefit," or where occurring "just before . . . a steep drop in stock price." *No. 84 Emp'r-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 938 (9th Cir. 2003); *In re OmniVision Techs., Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1110 (N.D. Cal. 2013). Plaintiff's opposition contends that the stock sales occurred "at all-time high stock prices." Opp'n at 22. In the Complaint, Plaintiff claimed that the stock sales were "suspiciously timed" because they occurred "weeks before Align implemented its secret [third-quarter] promotion." CCAC ¶ 186. However, the timing of the individual defendants' and corporate insider's stock sales alleged in the Complaint belie Plaintiff's arguments. Plaintiff alleges that the all-time high stock price of $392.98 per share was in September 2018, *id.* ¶ 169, but all of the corporate insiders' and individual defendants' stock sales took place between April and August 2018, at prices significantly below the "all-time high," (e.g., $252.75 per share in April 2018 for the corporate insiders, and $263.675 per share in May 2018 for the individual defendants). *See id.* ¶¶ 119–120. Moreover, the steep drop in stock price to $232.07 per share took place on October 24, 2018, at least two months after the corporate insiders' and individual defendants' stock sales. CCAC ¶¶ 119, 124. Furthermore, Plaintiff's assertion that the stock sales occurred "weeks before" Align's third-quarter promotion fails to demonstrate how such timing maximized personal benefit or preceded a steep drop in stock price. As such, Plaintiff has not sufficiently alleged why the timing of the sales weighs in favor of scienter.

17

Similarly, as to the third factor, the Complaint "largely omits 'prior trading history.'" Mot. at 22. At most, the Complaint summarily lists Hogan's sales totals for the "three years leading up to these sales," but fails to allege Hogan's trading patterns. *See* CCAC ¶ 185. Moreover, the Complaint fails to allege any trading history whatsoever for the other individual defendants. *See* CCAC ¶¶ 119–20, 184–185. The Court is required to consider "prior trading history" to determine whether the stock sales are suspicious, but the Court is unable to do so here because the Plaintiff did not allege that information. *See Zucco*, 552 F.3d at 1005. Thus, in light of all three factors, the Court finds that the stock sales do not constitute evidence, circumstantial or otherwise, of scienter.

Viewed in their totality, Plaintiff's allegations fall short of raising a strong inference of scienter. Without curing the aforementioned defects, Plaintiff's claim cannot meet the PSLRA's requirement that scienter be pleaded with particularity. *In re Rigel Pharmaceuticals, Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012).

### B. Claim Two: Violation of § 20(a) of the Exchange Act

Congress has established liability in § 20(a) for "[e]very person who, directly or indirectly, controls any person liable" for violations of the securities laws. 15 U.S.C. § 78t(a). To prove a prima facie case under section 20(a), a plaintiff must prove: (1) "a primary violation of federal securities law;" and (2) "that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000). Because Plaintiff has failed to plead a primary securities law violation, Plaintiff has also failed to plead a violation of section 20(a). *See In re Cutera*, 610 F.3d at 1113 n.6. Accordingly, Defendants' motion to dismiss Plaintiff's section 20(a) claim is also GRANTED.

### C. Claim Three: Violation of §§ 10(b) and 20A of the Exchange Act and Rule 10b-5

"Section 20A of the Exchange Act creates a private cause of action for 'contemporaneous' insider trading. To satisfy § 20A, a plaintiff must plead (i) a predicate violation of the securities laws; and (2) facts showing that the trading activity of plaintiffs and defendants occur 'contemporaneously.'" *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 1070116

18

Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

(N.D. Cal. Feb. 27, 2018) (quoting *In re Countrywide Financial Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1074–75 (C.D. Cal. 2008)). The Ninth Circuit has acknowledged that insider trading in violation of § 10(b) and Rule 10b-5 may serve as the predicate violation for a private section 20A claim. *See Johnson v. Aljian*, 490 F.3d 778, 784–785 (9th Cir. 2007). Here, Defendants argue that Plaintiff's claim of insider trading should be dismissed because Plaintiff fails to plead a predicate violation and because Plaintiff does not meet the contemporaneity requirement. *Id.* Plaintiff responds that the Complaint adequately alleges Hogan's and Morici's trading with material, nonpublic information, and that the contemporaneity requirement is satisfied. Opp'n at 24–25. The Court will first address whether Plaintiff has adequately pled a predicate violation and then whether Plaintiff has pled contemporaneity.

First, the Court finds that Plaintiff has not adequately pled a predicate violation. Plaintiff has failed to plead with particularity an independent violation of section 10(b) and Rule 10b-5 for false or misleading statements (Claim One, *supra* Section III.A). The Court reached this conclusion in part because the Complaint lacked the requisite specificity regarding the true nature and extent of post–patent expiration competition and any impact it had on Align's business. For similar reasons, the Court also finds that Plaintiff has failed to adequately allege an insider trading claim in violation of section 10(b) and Rule 10b-5. Plaintiff argues that Hogan and Morici traded while in possession of "material, nonpublic information about the impact that competition was having on Align, and the discounts they were implementing to address that impact." Opp'n at 25. But Plaintiff's lack of specificity regarding what material, nonpublic information Hogan and Morici had defeats any claim of insider trading. Plaintiff also fails to elaborate what, if any, impact competition was having on Align. *See supra* Section III.A.2. Moreover, Plaintiff explicitly acknowledges that "the market was generally aware that Defendants had changed the Advantage program," and alleges only that the market was not privy to the strategic motivations underlying those changes. CCAC ¶ 8. The Court holds that Plaintiff does not adequately allege that Hogan or Morici traded on material, nonpublic information. Thus, because the Complaint does not allege a predicate violation, the Court dismisses Plaintiff's section 20A claim.

19
Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Furthermore, the Court finds that Plaintiff has also failed to allege contemporaneity, at least with respect to Hogan's June 1, 2018 trades. Although eschewing any exact delineation as to how close in time trading must be to be "contemporaneous," the Ninth Circuit has explained that the rule "ensures that only private parties who have traded with someone who had an unfair advantage will be able to maintain insider trading claims." *See Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993).[3] Plaintiff acknowledges that Plaintiff's May 30 and May 31, 2018 purchases *predated* Hogan's June 1, 2018 sale. Opp'n at 25. It is therefore impossible that Plaintiff traded with Hogan for those sales, which is fatal to Plaintiff's Section 20A claim against Hogan.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint in its entirety is GRANTED. Because granting Plaintiff an additional opportunity to amend the complaint would not be futile, cause undue delay, or unduly prejudice Defendants, and Plaintiff has not acted in bad faith, the Court grants leave to amend. *See Leadsinger, Inc.*, 512 F.3d at 532.

Should Plaintiff choose to file an amended complaint, it must do so within 30 days of this Order. Failure to do so, or failure to cure the deficiencies identified in this Order and in Defendants' motion to dismiss, will result in dismissal of Plaintiff's deficient claims with prejudice. Plaintiff may not add new claims or parties without a stipulation or leave of Court. Finally, going forward, any amended complaints must comply with this Court's Securities Class Action Standing Order, effective September 23, 2019.

**IT IS SO ORDERED.**

Dated: October 29, 2019

_____
LUCY H. KOH
United States District Judge

---

[3] Although the *Neubronner* court considered the contemporaneity rule in the context of implied private causes of action under section 10(b) and Rule 10b-5, the Ninth Circuit elaborated that Congress intended to adopt the same case law defining "contemporaneous" when it passed section 20A. *See* 6 F.3d at 669 n.5.

20
Case No. 18-CV-06720-LHK
ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND