1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11
12
13
14
15
16
17

| | |
|---|---|
| SEB INVESTMENT MANAGEMENT AB, et al., | Case No. 18-CV-06720-LHK |
| Plaintiffs, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| v. | Re: Dkt. No. 122 |
| ALIGN TECHNOLOGY, INC., et al., | |
| Defendants. | |

18        This case is a putative securities class action against Align Technology, Inc.; its President

19   and Chief Executive Officer, Joseph M. Hogan; and its Chief Financial Officer, John F. Morici

20   (collectively, "Defendants").  Lead Plaintiff SEB Investment Management AB ("Plaintiff") brings

21   this suit individually and on behalf of all other persons and entities who purchased or otherwise

22   acquired the common stock of Align Technology, Inc. between May 23, 2018 and October 24,

23   2018, both dates inclusive (the "Class Period").

24        Before the Court is Defendants' motion to dismiss.  ECF No. 122.  Having considered the

25   submissions of the parties, the relevant law, and the record in this case, the Court GRANTS in part

26   and DENIES in part Defendants' motion to dismiss.

27
28

United States District Court
Northern District of California

I.      **BACKGROUND**

   **A. Factual Background**

Defendant Align Technology, Inc. ("Align,") is a "global medical device company engaged in the design, manufacture, and marketing of Invisalign® clear aligners and iTero® intraoral scanners and services for orthodontics, restorative, and aesthetic dentistry."  ECF No. 120 ¶ 26.  Owing to a number of patents, Align maintained "dominance" in the industry as a result of "patents it held on its technology and manufacturing processes, many of which related to the computer-aided design and manufacturing technology that allowed the Company to develop and manufacture high-quality clear aligners in large quantities."  *Id.* ¶ 4.  However, as Align began to lose its patent protections, analysts began to acknowledge that Align's "virtual monopoly could come to an end."  *Id.* ¶ 5.

Plaintiff's claims center around those competitive pressures and the representations that Defendants made to investors regarding how competition would impact Align's business. Specifically, in May 2018, at the Annual Meeting of the American Association of Orthodontists ("AAO"), Align's competitors announced products "at price-points under Align's," both in the low end of the market as well as in the "comprehensive case market" for complex treatments.  *Id.* ¶ 7.

As a result, Plaintiff alleges that, on July 1, 2018, Align secretly implemented a $200-per-unit discount (the "3Q18 Discounting Promotion") to its comprehensive cases with hopes of recapturing its lost market share in the comprehensive case market.  *Id.* ¶ 10.  This discount applied on top of Align's existing volume-based loyalty discount, the Invisalign Advantage Program, which Align had recently modified to be a "tiered discounting system based on the number of Invisalign cases each doctor sold."  *Id.* ¶ 45.  Plaintiff alleges that Defendants were aware of, but failed to disclose, the impact that the 3Q18 Discounting Promotion would have on the company's average sales prices ("ASP"), a key metric for investors to which Defendants had access throughout the class period.  *Id.* ¶¶ 5, 16.  Plaintiff further alleges that, between May 23, 2018 and September 5, 2018, Defendants made six affirmative representations to investors that

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

1   were false or misleading because they misrepresented the truth about Align's susceptibility to

2   competitors in the comprehensive case market, and Align's efforts to curb competition by

3   slashing prices through the 3Q18 Discounting Promotion.

4       On October 24, 2018, Defendants "finally revealed the relevant truth about the aggressive

5   discounts they had put in place to stem competition in the comprehensive market," and disclosed

6   that the ASP for comprehensive products "had dropped a full $100 over the prior quarter, from

7   $1,410 to $1,310." *Id.* ¶ 16.  Align's stock price declined nearly $59 a share by the following day,

8   *id.* ¶ 18, and this suit followed.

9       **B.  Procedural History**

10      On November 5, 2018, an Align shareholder filed the instant case captioned *Lu v. Align*

11  *Technology, Inc., et al.,* N.D. Cal. Case No. 5:18-CV-06720-LHK.  *See* ECF No. 1.  Another

12  shareholder filed suit on December 12, 2018, in a case captioned *Infuso v. Align Technology, Inc.,*

13  *et al.*, N.D. Cal. Case No. 5:18-CV-07469.  On January 2, 2019, the Court granted an

14  administrative motion to relate the two cases.  ECF No. 11.  On March 22, 2019, the Court

15  consolidated the two cases.  ECF No 72.  In the same Order, the Court appointed Plaintiff SEB

16  Investment Management AB as lead plaintiff and appointed Kessler Topaz as lead counsel.  *Id.*

17      On May 10, 2019, Plaintiff filed a Consolidated Amended Class Action Complaint, ECF

18  No. 87, which Plaintiff later corrected, ECF No. 90 ¶ 1.  On June 24, 2019, Defendants filed a

19  motion to dismiss the Consolidated Amended Class Action Complaint.  ECF No. 92 ("Mot.").  On

20  October 29, 2019, the Court granted Defendants' motion to dismiss with leave to amend.  ECF

21  No. 107 ("MTD Order").

22      On November 29, 2019, Plaintiff filed an Amended Consolidated Class Action Complaint

23  (the "Amended Complaint") that eliminated two individual defendants (Ralph Pascaud and Emory

24  Wright), shortened the Class Period by about a month, and narrowed the theory of the case to

25  focus specifically on six statements made by Defendants with respect to competition in the

26  comprehensive case market and the 3Q18 Discounting Promotion.  ECF No. 120 ("AC").  On

27  January 17, 2020, Defendants filed a motion to dismiss.  ECF No. 122.  On March 2, 2020,

28

3

United States District Court
Northern District of California

1    Plaintiff filed an opposition, ECF No. 130, and on April 1, 2020, Defendants filed a reply, ECF

2    No. 131.

3              In support of their motion to dismiss, Defendants filed a request for judicial notice and

4    notice of incorporation by reference.  ECF No. 123.  Plaintiff largely does not object to

5    incorporation by reference or judicial notice, except as to Defendants' Exhibit 11.  *See* Opp'n at 14

6    n.8.  However, because the Court largely does not rely on any of Defendants' exhibits, the Court

7    DENIES Defendants' request for judicial notice, except where otherwise noted below.

8    **II.      LEGAL STANDARD**

9              Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

10   action for failure to state a claim upon which relief may be granted.  Because Plaintiff has brought

11   claims as a federal securities fraud action, Plaintiff must "meet the higher, [more] exacting

12   pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation

13   Reform Act (PSLRA)."  *Or. Pub. Emp. Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 603–04

14   (9th Cir. 2014).

15             Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must

16   state with particularity the circumstances constituting fraud or mistake."  Plaintiff must include

17   "an account of the time, place, and specific content of the false representations" at issue.  *Swartz v.*

18   *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks omitted).  Rule 9(b)'s

19   particularity requirement "applies to all elements of a securities fraud action."  *Apollo Group*, 774

20   F.3d at 605.  "PSLRA imposes additional specific pleading requirements, including requiring

21   plaintiffs to state with particularity both the facts constituting the alleged violation and the facts

22   evidencing scienter."  *In re Rigel Pharmaceuticals, Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir.

23   2012).  In order to properly allege falsity, "a securities fraud complaint must . . . specify each

24   statement alleged to have been misleading, [and] the reason or reasons why the statement is

25   misleading."  *Id.* (internal quotation marks and alteration omitted).  In addition, in order to

26   "adequately plead scienter under the PSLRA, the complaint must state with particularity facts

27   giving rise to a strong inference that the defendant acted with the required state of mind."  *Id.*

28

United States District Court
Northern District of California

(internal quotation marks omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Furthermore, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

Under Federal Rule of Civil Procedure 15(a), when a court grants dismissal, leave to amend "shall be freely granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party moving for leave to amend has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## III.   DISCUSSION

Plaintiff alleges three claims for relief: (1) violation of § 10(b) of the Exchange Act and Rule 10b-5 against all defendants, AC ¶¶ 182–187; (2) violation of § 20(a) of the Exchange Act against Hogan and Morici, *id.* ¶¶ 188–94; and (3) violation of § 10(b) and 20A of the Exchange Act and Rule 10b-5 for insider trading against Hogan, *id.* ¶¶ 195–204. The Court addresses each claim in turn below.

### A.  Claim One: Violation of § 10(b) of the Exchange Act and Rule 10b-5

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

"To plead a claim under section 10(b) and Rule 10b-5, Plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Apollo Group*, 774 F.3d at 603.

In the amended complaint, Plaintiff substantially narrows Plaintiff's theory of liability and identifies six specific statements made by Defendants between May 23, 2018 and September 5, 2018 that Plaintiff alleges to have been false or misleading when made.  Below, the Court considers each statement to determine whether Plaintiff has stated a claim for violation of § 10(b) and Rule 10b-5.  Although the Court finds that Statement 3 is not actionable under the PSLRA Safe Harbor, and Statements 1, 2, 4, and 6 fail to adequately allege falsity, the Court finds that Statement 5 adequately states a claim.

### 1.  Statement 3 Is Not Actionable Under the PSLRA Safe Harbor

The parties dispute whether Statement 3 is protected by the PSLRA safe harbor.  In Statement 3, Morici stated on a July 25, 2018 Earnings Call, "[W]e expect the third quarter to shape up as follows: . . . We expect Q3 gross margin to be in the range of 74% to 74.4%, reflecting higher expenses as we regionalize our treatment planning and manufacturing operations, partially **offset by higher ASPs**."  AC ¶ 114 (emphasis in original).  Defendants argue that such a statement is not actionable under the PSLRA Safe Harbor because it is a forward-looking statement that is accompanied by meaningful cautionary language.  Mot. at 18–20.  Plaintiff argues that the statement falls outside of the safe harbor's protections because it lacked adequate cautionary language and because Morici knew when he made the statement that it was false.  Opp'n at 17–18.  Below, the Court finds that the cautionary language provided by Defendants was adequate, and thus the Court need not consider whether the statement was made with actual knowledge that it was false or misleading.

Under the PSLRA's "Safe Harbor" Provision, 15 U.S.C. § 78u-5(c)(1), forward-looking statements are not actionable if either (1) the statements are identified as such and accompanied by meaningful cautionary statements; or (2) the plaintiff does not prove that the statement was made

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

1   with "actual knowledge . . . that the statement was false or misleading." *In re Cutera Sec. Litig.*,

2   610 F.3d 1103, 1112 (9th Cir. 2010) (alteration omitted) (quoting 15 U.S.C. § 78u-5(c)(1)(B)(i),

3   (ii)(II)); *see also McGovney v. Aerohive Networks, Inc.*, 367 F. Supp. 3d 1038, 1060 (N.D. Cal.

4   2019) ("[I]f a forward-looking statement is not identified as a forward-looking statement or is

5   unaccompanied by meaningful cautionary statements, then the statement is actionable only if the

6   plaintiff proves that the forward-looking statement 'was made with actual knowledge . . . that the

7   statement was false or misleading.'").

8       The Court agrees with Defendants that the statement was accompanied by adequate

9   warnings.  Defendants explain that, at the beginning of the investor call, Align's representative

10  stated:

11          As a reminder, the information that the presenters discuss today will include forward-looking statements, including statements about Align's future events, product outlook
12          and the expected financial results for the third quarter of 2018.  These forward-looking statements are only predictions and involve risks and uncertainties that are
13          set forth in more detail in our most recent periodic reports filed with the Securities
            and Exchange Commission. Actual results may vary significantly, and Align
14          expressly assumes no obligation to update any forward-looking statement.  We've
            posted historical financial statements, including the corresponding reconciliations
15          and our second quarter conference call slides on our website under Quarterly Results.
            Please refer to these files for more detailed information.
16
    Mot., Ex. 3 at 4.[1]  The warning, in turn, thus explicitly incorporated risks identified in written

17  filings with the SEC, specifically with respect to "competition, promotions, and decreased ASP."

18  Mot. at 19; *see, e.g.*, Align Technology, Inc., Form 10-Q, June 30, 2018, Mot., Ex. 7.

19      Defendants are correct that substantially similar disclaimers have repeatedly been held by

20  the Court to be a sufficient "meaningful cautionary statement" for purposes of the PSLRA Safe

21  Harbor.  For example, in *In re Fusion-io, Inc. Securities Litigation*, the Court found sufficient a

22  disclosure at the beginning of an earnings call "that forward-looking statements were predictions

23  based on current expectations and assumptions, that these expectations and assumptions involved

24

25  ───────────────

26  [1] The Court agrees with Defendants that the transcript of the July 25, 2018 investor call, Mot., Ex.
    3, may properly be incorporated by reference because statements from the call "form[] the basis of
    the plaintiff's claim."  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir.
27  2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)).  Plaintiff does not
    oppose incorporation by reference of this document.

28  ───────────────
    7
    Case No. 18-CV-06720-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

1    risks and uncertainties, and [that] referred listeners to Fusion's registration statements and reports

2    filed with the SEC."  No. 13-CV-05368-LHK, 2015 WL 661869, at *13 (N.D. Cal. Feb. 12, 2015).

3    Similarly, in *McGovney v. Aerohive Networks, Inc.*, the Court found sufficient a disclaimer at the

4    beginning of a call "that the call would contain 'forward-looking statements' that involve a

5    'number of risks and uncertainties,' and that investors should reference the 'Risk Factors and

6    Management's Discussion and Analysis of Financial Condition and Results of Operations in our

7    recent annual report on Form 10-K and quarterly report on Form 10-Q.'"  *McGovney v. Aerohive*

8    *Networks, Inc.*, 367 F. Supp. 3d 1038, 1061 (N.D. Cal. 2019).

9        Moreover, these cautionary statements are virtually identical to language approved by the

10   Ninth Circuit as "meaningful cautionary language" for purposes of the PSLRA Safe Harbor.  *See,*

11   *e.g., Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d at 1059–60 (approving

12   cautionary language in earnings call warning that comments may contain forward-looking

13   statements, that such statements may differ based on "certain risks and uncertainties," and

14   referring listeners to "the company's [SEC] filings"); *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112

15   (9th Cir. 2010) (approving cautionary language at beginning of earnings call that remarks

16   contained forward-looking statements "concerning future financial performance and guidance,"

17   and that "Cutera's ability to continue increasing sales performance worldwide could cause

18   variance in the results.") (internal quotation marks omitted).

19       Plaintiff's arguments to the contrary are unpersuasive.  For example, Plaintiff argues that

20   these warnings were "boilerplate risk disclosures" that were thus too generic.  Opp'n at 17.

21   However, as explained above, this Court as well as the Ninth Circuit has found substantially

22   similar disclosures to be adequate cautionary statements.  Plaintiff also argues that the cautionary

23   language is not meaningful "if the risk being warned of *has already transpired*."  *Id.*  Yet, the

24   statement itself, which is a projection of the *expected* results for the third quarter of 2018, was

25   made on July 25, 2018, mere weeks into the third quarter of 2018 and months before the quarter

26   would end on September 30, 2018.  *See* AC ¶ 114.  The Court disagrees that any of the disclosed

27   risks could have *already* transpired because the 3Q18 Discounting Promotion's impacts would not

28

8

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

be known until the end of the quarter.  As Defendants note, had the 3Q18 Discounting Promotion had its intended impact of "increas[ing] sales from lower tier customers," Align's ASP might have been higher in the third quarter.  Reply at 11.  Even though the actual uptake on the 3Q18 Discounting Promotion purportedly differed from management's expectations, the Court cannot agree that such hindsight can retroactively diminish the meaningfulness of Defendants' cautionary statements when made.

In sum, because Statement 3 was identified as a forward-looking statement that was accompanied by sufficient "meaningful cautionary statements," the Court finds that it is covered under the PSLRA Safe Harbor.  *See* 15 U.S.C. § 78u-5(c)(1)(A)(i).  Accordingly, the Court GRANTS Defendants' motion to dismiss Plaintiff's Section 10(b) claim with respect to Statement 3.  Moreover, because the Defendants are immunized from liability for Statement 3 under the PSLRA Safe Harbor, the Court finds that leave to amend would be futile.  *See Leadsinger, Inc.*, 512 F.3d at 532.  Thus, the Court's dismissal as to this statement is with prejudice.

### 2.  Statements 1, 2, 4, and 6 Fail to Adequately Allege Falsity

Defendants also move to dismiss on the basis that Plaintiff failed to adequately allege the falsity of the statements.  The Court agrees.

To assert a claim under the PSLRA, the plaintiff must plead with particularity, inter alia, the element of falsity.  *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990–91 (9th Cir. 2009), *as amended* (Feb. 10, 2009).  "The PSLRA has exacting requirements for pleading 'falsity.'"  *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008).  To satisfy these "exacting requirements," a plaintiff must plead "specific facts indicating why" the statements at issue were false.  *Id.*; *Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) ("Plaintiffs' complaint was required to allege specific facts that show" how statements were false).  Moreover, to be actionable, a statement must be false "at [the] time by the people who made them."  *Ronconi*, 253 F.3d at 430.  "The fact that [a] prediction proves to be wrong in hindsight does not render the statement untrue when made."  *In re VeriFone Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993).

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

However, as the United States Supreme Court has held, "§ 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44–45 (2011) (citing 17 C.F.R. § 240.10b-5(b)). Indeed, "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). Rather, "[t]o be actionable under the securities laws, an omission must be misleading." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). That is to say, the omission "must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Id.* "[T]o fulfill the materiality requirement 'there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available.'" *Basic*, 485 U.S. at 231–32 (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).

The Court finds that Plaintiff's allegations of falsity as to Statements 1, 2, 4, and 6, continue to suffer from the same defects identified by the Court in its October 29, 2019 Dismissal Order. *See* MTD Order at 8–12. Specifically, as to these statements, Plaintiff again selectively omits portions of the full statement, *id.* at 8–10, and Plaintiff again fails to allege particularized facts that demonstrate why the statement was false, *id.* at 10–12. Below, the Court addresses in turn the pleading deficiencies for each statement.

### a.   Statement 1

Statement 1 was allegedly made by Hogan on May 23, 2018, during a "conference call with analysts as part of its Investor Day" in response to a question from an attendee about a potential new business model in the industry "disaggregating . . . the treatment planning and the aligner[] manufacturing them . . . ." AC ¶ 109. Specifically, Plaintiff alleges the following exchange:

> JOHNSON: Maybe one other secular kind of item. We're starting to hear some others talk about disaggregating kind of the treatment planning and the aligner, manufacturing them or maybe if the dentist wants to design the case in office and then pay for aligner, and they could send it even to a couple different labs, whatever lab they want to send it to, things like that. Same question. I mean, is that a viable

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

1    model?  Is that model that at all concerns you or that you would see as a real
     competitive threat anytime down the road?

2    HOGAN: **Jeff, I think there's going to be a low end to this market** that we've
     talked about before in these kinds of sessions, and that's **15 aligners or less**.  And
3    this is where companies that don't have the capabilities Align have [sic], **they're
     going to have to play in that segment.**  So it's going to—there's going to be a scrum
4    in that marketplace to a certain extent.

5    *Id.*  Plaintiff explains that Hogan's response was misleading because "it misled investors to

6    believe that only a small portion of Align's business (non-comprehensive cases) was vulnerable to

7    competition when, in fact, Align faced a significant competitive threat in the comprehensive case

8    market following the 2018 AAO."  Plaintiff translates Hogan's response—that competitors

9    without Align's capabilities will be limited to the low-end segment of 15 aligners or less—to mean

10   that Align did not have any significant competition in the comprehensive case market.  The Court

11   finds that Plaintiff's interpretation, which omits the entire context of the statement, is implausible

12   as a matter of law, and that Plaintiff has in any event failed to plead any particular facts to show

13   why Plaintiff's implausible interpretation of the statement would be false or misleading.  The

14   Court addresses each deficiency in turn.

15           First, Plaintiff's theory of falsity as to Statement 1 is illogical in part because it selectively

16   ignores Hogan's statement and the surrounding context.  In the Court's October 29, 2019

17   Dismissal Order, the Court already warned that Plaintiff may not simply "cherry-pick[] portions of

18   Defendants' statements and ignor[e] other portions," but must instead "account for the entirety of

19   [the statements] on which they rely."  MTD Order at 10 (quoting *In re Ocera Therapeutics, Inc.*

20   *Sec. Litig.*, No. 17-CV-06687-RS, 2018 WL 7019481, at *11 (N.D. Cal. Oct. 16, 2018)).  Yet,

21   here, as before, Plaintiff selectively emphasizes parts of Hogan's statement, while ignoring the

22   context and the full statements that were made.  Specifically, in Statement 1, Hogan was not

23   making a blanket statement about the state of competition but was instead responding to a question

24   about the feasibility of a specific type of competitor: a rumored "disaggregat[ed]" business model

25   separating the treatment planning and manufacturing.  *See* AC ¶ 109 ("We're starting to hear some

26   others talk about disaggregating kind of the treatment planning and the aligner[] manufacturing

27   them . . . I mean, is that a viable model?").  Similarly, Plaintiff disregards the ways in which

United States District Court
Northern District of California

28

11

1    Hogan qualifies his answer.  Hogan states, "I think there's going to be a low end *to this market*."

2    *Id.* (emphasis altered).  Hogan also specifies that "companies that don't have the capabilities Align

3    [has]" will "have to play in that [low-end] segment" of 15 aligners or less."  *Id.*  When reading the

4    full statement, together with the surrounding context provided by Plaintiff in the Complaint, the

5    Court finds that Plaintiff's interpretation of the statement to mean that the "comprehensive case

6    market" was "insulated" from competition, *id.* ¶ 111, is implausible as a matter of law.

7         In any event, even if the Court accepted Plaintiff's implausible reading, Plaintiff failed to

8    allege the statement's falsity with any particularized facts.  Plaintiff's explanation for why the

9    statement is false is that "in fact, Align faced a significant competitive threat in the high-end,

10   comprehensive case market following the 2018 AAO."  *Id.*  To support this assertion, Plaintiff

11   points to Defendants' implementation of the 3Q18 Discounting Promotion, which Plaintiff alleges

12   "applied only to Align's full comprehensive cases."  *Id.* ¶ 111 (emphasis omitted).  Yet Plaintiff

13   fails to substantiate at any point the extent of competition in the "comprehensive case" segment

14   that Plaintiff alleges Align failed to disclose.  For example, Plaintiff does not explain how many

15   competitors Align had in the comprehensive case market, nor suggest how much market share

16   Align had lost or was expecting to lose to those competitors.  In fact, the complaint is devoid of

17   any specificity whatsoever as to what the extent of competition in the comprehensive case segment

18   truly was.  The Court previously instructed Plaintiff to substantiate any alleged impact from

19   competition where the falsity was premised on the degree of competition Align was facing.  MTD

20   Order at 12–14.  "While the Court agrees that Plaintiff needs not 'precisely quantify the impact

21   that competition was having . . . with specific figures and data points,' . . . the absence of any

22   specificity at all 'makes it difficult to understand the severity of the problem or whether that

23   actually had an impact' on Align."  *Id.* at 13 (quoting *McGovney*, 367 F. Supp. 3d at 1056).  As

24   the Court already stated, Plaintiff's failure to provide any particularized factual allegations as to

25   the degree of competition is insufficient to show falsity.

26        As a result, the Court GRANTS Defendants' motion to dismiss Plaintiff's Section 10(b)

27   claim with respect to Statement 1.  Moreover, because the Court already identified these precise

28
     12

United States District Court
Northern District of California

deficiencies in its October 29, 2019 Dismissal Order and instructed Plaintiff that failure to cure would result in dismissal with prejudice, the Court finds that leave to amend as to this statement would be futile.  *See Leadsinger, Inc.*, 512 F.3d at 532.  Thus, the Court's dismissal as to this statement is with prejudice.

### b. Statement 2

Statement 2 was allegedly made by Morici at the June 12, 2018 Goldman Sachs Healthcare Conference, in response to a question from an analyst.  Plaintiff cites the following exchange:

> JONES: Obviously, the opportunity in front of you is vast, it is obviously not lost on others.  So **competition is always something that we get from investors**.  It seems like it's a bit heightened now relative to the time that we've followed the story at least.  So I was wondering if maybe you could just take a couple of minutes and describe how you see the competitive landscape.  How has it evolved?  **Is there anything new on the market or coming to the market that you think is a more formidable competitor than maybe what you've seen in the past?**
>
> MORICI: I think what we see—we've faced competition for a number of years, and especially outside the U.S. and what we saw the best analogy that you would look back or the time period you'd look back is perhaps at AAO.  And during AAO, we saw different entrants into the market but they were coming in at a technology in a product that was something that we were producing 5 or 10 years ago.  And at price points that were not so different than where we're currently priced at . . . . [W]hat we do see is that **there's nothing that disrupts us from what we would've expected, and we're going to continue to execute as we have** to be able to grow in this market.

AC ¶ 112.  Specifically, Plaintiff explains that Morici's representation that "there's nothing that disrupts us from what we would've expected" and "we're going to continue to execute as we have" were false or misleading "because, in truth, Defendants were deeply concerned about new competition in the comprehensive case market."  *Id.* ¶ 113.  Defendants argue that Plaintiff fails to plead falsity because Plaintiff does not plead any facts that the "comprehensive competition was disruptive to Align's business in the first instance."  Reply at 9.  The Court agrees and finds that Plaintiff's theory of falsity suffers from the same issues as above—namely, that Plaintiff again reads the statement out of context and fails to allege particular facts to show how the statement is false.

First, as above, Plaintiff's interpretation of Morici's statement is implausible because it conveniently omits portions of the statement.  *See, e.g.*, *In re Ocera Therapeutics, Inc. Sec. Litig.*, 2018 WL 7019481, at *11 (dismissing securities fraud claim in part because plaintiffs "invoke[d]

13

1    selective quoting to make their claims").  Plaintiff reads Morici's statement to mean that there was

2    no disruption in the aligner market.  *See* AC ¶ 113.  However, the full statement by Morici

3    indicates that Align had "faced competition for a number of years" and that "there's nothing that

4    disrupts us *from what we would've expected*."  *Id.* ¶¶ 112–13 (emphasis added).  Thus, Morici's

5    statement, viewed in its full context, merely explains that competitive pressure was in line with

6    "what [Defendants] would've expected," *id.*, and not, as Plaintiff's inexplicably read, that there

7    was no competition in the comprehensive case market at all.  As the Court already explained in its

8    October 29, 2019 Dismissal Order, Plaintiff may not "cherry-pick[] portions of Defendants'

9    statements and ignor[e] other portions."  MTD Order at 10.

10          Thus, when reading Statement 2 in its proper context, the Court finds that Plaintiff has not

11    alleged any particular facts to show that the statement is false or misleading.  Plaintiff alleges no

12    facts about exactly what Align "would've expected" competition to be.  AC ¶ 112.  In fact,

13    Plaintiff's allegation of falsity is belied by their allegation that "in truth, Defendants were deeply

14    concerned about new competition in the comprehensive case market," *id.* ¶ 113, which suggests

15    that Defendants had in fact expected substantial competition in the comprehensive case market.

16    As Defendants correctly note, "That Defendants did not view post-AAO competition as

17    'disruptive' is hardly tantamount to the expression that no competitive response was necessary."

18    Reply at 9.  Nor did Plaintiff allege any facts substantiating the true state of competition to

19    contrast to Defendants' expectations, which the Court explicitly instructed Plaintiff to do in its

20    October 29, 2019 Dismissal Order.  MTD Order at 14 ("[T]he Court finds that Plaintiff has failed

21    to plead with particularity that competition increased following the expiration of Align's patents

22    and that any such changes impacted Align.").  Absent any particularized allegations of fact, the

23    Court has no way to determine what Defendants' expectations of competition were, nor whether

24    those expectations were truly "disrupted."

25          The Court therefore GRANTS Defendants' motion to dismiss Plaintiff's Section 10(b)

26    claim with respect to Statement 2.  Moreover, because the Court already identified these precise

27    deficiencies in its October 29, 2019 Dismissal Order and instructed Plaintiff that failure to cure

28

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

would result in dismissal with prejudice, the Court finds that leave to amend as to this statement would be futile.  *See Leadsinger, Inc.*, 512 F.3d at 532.  Thus, the Court's dismissal as to this statement is with prejudice.

### c.   Statement 4

Statement 4 was allegedly made by Hogan on the July 25, 2018 Earnings Call. Specifically, Plaintiff alleges that an analyst asked Hogan, "[W]hat, if anything, Joe, have you heard about these offerings [from competitors] over the past 2 months since the [AAO]?"  AC ¶ 115.  Hogan purportedly responded, "[F]rom a competitive standpoint, there's nothing really different than what we saw from an AAO standpoint. . . . **I wouldn't say we've changed in any way our assessment of the competition that we saw at the AAO.**"  *Id.*  Plaintiff alleges that Hogan's response that Align had not "changed in any way [its] assessment of the competition that [it] saw at the AAO" was false or misleading simply "because it omitted any mention of the undisclosed 3Q18 Discounting Promotion."  *Id.* ¶ 122.

The Court finds that Plaintiff again fails to provide any factual allegations to show how the statement was false when made.  Plaintiff provides no factual allegations to show what Defendants' assessment of competition *was*, nor how the assessment had *changed*.  On the contrary, Plaintiff's allegation that "Defendant Morici was 'very, very aware of Align's competition' during this period," *id.* ¶ 122, explicitly contradicts Plaintiff's assertion that Defendants' "assessment of competition" had changed at all; instead, this allegation suggests that Defendants had consistently viewed competition to be a concern.  In fact, Plaintiff's complaint repeatedly alleges that Defendants had viewed the growing threat of competition to be an issue for over a year prior to the statement.  *See also id.* ¶ 60 ("[I]n or around early 2017, Align became more focused on the impact of competition entering the market and on the Align sales team's ability to handle this competition."); *id.* ¶ 61 ("[C]ompetition always seemed to be a topic of conversation during [monthly] meetings."); *id.* ¶ 62 ("Align's top executives were worried about patents expiring and competitors entering the market and selling products at a lower price."). Plaintiff's numerous factual allegations that Defendants had been concerned about competition

15

1   since early 2017 contradict Plaintiff's theory that Defendants' "assessment of the competition" had

2   changed. *See Weisbuch*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (explaining that a "plaintiff may

3   plead herself out of court" if she pleads "facts which establish that [she] cannot prevail on

4   [her] . . . claim").

5          In the same vein, the factual allegations that Plaintiff did provide lack the requisite nexus

6   with the actual content of Statement 4 to show how the statement is false.  Specifically, to explain

7   why the statement was false, Plaintiff merely alleges that Defendants had implemented the 3Q18

8   Discounting Promotion in order to compete in the comprehensive case market.  AC ¶ 122.  The

9   mere fact that Plaintiffs had implemented a new discount to address competition does not explain

10  how Defendants' "assessment of the competition" had "changed in any way," which is the crux of

11  Statement 4.  *See id.* ¶¶ 115, 122.  The Court previously dismissed Plaintiff's claims on this very

12  basis: that the "factual allegations are almost entirely untethered to the actual statements made by

13  Defendants, and [thus] require the Court to guess *how* these factual allegations render the

14  Defendants' representations misleading at the time they were made."  MTD Order at 11.  The

15  Court thus instructed Plaintiff to "connect the content of the communications with *specific factual*

16  *allegations* that show how the conversations were false at the time made, rather than repeating the

17  same basic background facts."  *Id.* at 12.

18         Because Plaintiff provides only tangential factual allegations to show how Statement 4 is

19  false, the Court finds that Plaintiff fails to adequately allege falsity as to this statement.  Thus, the

20  Court GRANTS Defendants' motion to dismiss Plaintiff's Section 10(b) claim with respect to

21  Statement 4.  Moreover, because the Court already identified this deficiency in its October 29,

22  2019 Dismissal Order and instructed Plaintiff that failure to cure would result in dismissal with

23  prejudice, the Court finds that leave to amend as to this statement would be futile.  *See*

24  *Leadsinger, Inc.*, 512 F.3d at 532.  Thus, the Court's dismissal as to this statement is with

25  prejudice.

26         **d.  Statement 6**

27

28
Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

Statement 6 was allegedly made by Hogan on September 5, 2018 at the Robert W. Baird

Global Healthcare Conference.  Plaintiff alleges that an analyst asked Hogan:

> Maybe we'll ask a couple of questions here on competition. So obviously, earlier this year, you had a few of the larger companies come out with clear aligner systems. Now that some of the IP has come off late last year, first off, just a simple question, seeing any traction, anything that concerns you in the near term from these competitive launches?

AC ¶ 124.  Hogan responded, "**[T]here's nothing that—of note that was disruptive or different**

**than what we would've seen or would've done in the past, both from a product standpoint or**

**a pricing standpoint.**"  *Id.* ¶ 125.  Plaintiff argues that this statement was false or misleading

because "in truth, Defendants had secretly developed and implemented the 3Q18 Discounting

Promotion in direct response to competition—particularly the new products that competitors had

announced at the May 2018 AAO, which were priced lower than Align's comparable products."

*Id.*

As with the above statements, the Court finds that Plaintiff again fails to provide any

factual allegations to show how the statement was false when made.  In the challenged statement,

Hogan explained that Align had not seen any product or pricing from the competitors that was

"disruptive or different than what we would've seen or would've done in the past."  *Id.*  Yet

Plaintiff does not provide any allegations about what Align had seen or done in the past, either

"from a product standpoint or a pricing standpoint."  Nor does Plaintiff identify any products or

pricing of the competitors that Plaintiff contends to actually be "disruptive or different," such that

Hogan's statement was false or misleading.  Thus, the Court has no way to determine the falsity of

Hogan's statement, which is inherently a comparative statement between competitors' new

products or pricing and what Align had seen or done in the past.  The Court previously instructed

Plaintiff to "connect the content of the communications with specific factual allegations that show

how the [statements] were false at the time made."  MTD Order at 12.

Rather than providing any of the above information germane to the content of the

statement, Plaintiff again merely recites the same background facts that lack a nexus with the

actual content of Statement 5.  Plaintiff again alleges that "Defendants had secretly developed and

17

United States District Court
Northern District of California

United States District Court
Northern District of California

implemented the 3Q18 Discounting Promotion in direct response to competitors," and that such discounts "plac[ed] heavy downward pressure on Align's ASP." AC ¶ 125. These background facts do nothing to identify what Align "would've seen or would've done in the past, both from a product standpoint or a pricing standpoint." *See id.* Nor do these background facts specify a single product or price point of Align's competitors that would be "disruptive or different." The Court explicitly warned Plaintiff that "repeating the same basic background facts" to show how each statement was false or misleading when made would be insufficient. MTD Order at 12. The Court explained that, "[t]o the extent that any misrepresentations or omissions simply cannot be buttressed by specific, particularized factual allegations that show how the statements were false or misleading when made, those claims simply cannot meet the 'higher, [more] exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA).'" *Id.* (quoting *Or. Pub. Emp. Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 603–04 (9th Cir. 2014)).

Thus, as above, Plaintiff's claim as to Statement 6 suffers from the very same deficiencies already identified by the Court because Plaintiff again fails to allege any particularized facts related to the statement to demonstrate its falsity. Because Plaintiff provides only tangential factual allegations to show how Statement 6 is false, the Court finds that Plaintiff fails to adequately allege falsity as to this statement. Thus, the Court GRANTS Defendants' motion to dismiss Plaintiff's Section 10(b) claim with respect to Statement 6. Moreover, because the Court already identified these deficiencies in its October 29, 2019 Dismissal Order and instructed Plaintiff that failure to cure would result in dismissal with prejudice, the Court finds that leave to amend as to this statement would be futile. *See Leadsinger, Inc.*, 512 F.3d at 532. Thus, the Court's dismissal as to this statement is with prejudice.

### 3. Statement 5 adequately alleges a securities fraud claim.

Statement 5 was allegedly made by Hogan on the July 25, 2018 Earnings Call. Plaintiff alleges that an analyst asked Hogan:

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

First one on just competition, Joe, is there anything—since some of the competitors launched back in May [at the AAO], that you're hearing in terms of how they're approaching their and potentially your customer bases with respect to trialing or getting some initial kind of traction in the field? Or has it been relatively kind of quiet? And then with respect to the guidance question and competition, is there anything at all factored into your 2018 growth outlook, including the revised one? **Any kind of impact from competition?**

AC ¶ 116.  Hogan purportedly responded, "[T]he feedback that we get is [that our customers are] being contacted and—but there's nothing really that's different from what was the output from the AAO in that piece," and added that "**there's not a momentum piece or anything that we're adjusting the business around right now**." *Id.* ¶ 117.  Plaintiff alleges that Hogan's response was false because Align "had made a critical adjustment following the emergence of competitors in the comprehensive case market at the AAO, which were priced lower than Align's comprehensive cases." *Id.* ¶ 123.  Specifically, Plaintiff explains that Align had adjusted the business by "secretly design[ing] and implement[ing] the 3Q18 Discounting Promotion," which "provided aggressive, $200-per-unit discounts" and applied to the comprehensive case market.  *Id.*

By contrast to the other statements, the Court finds that Plaintiff has adequately alleged the falsity of Statement 5.  Specifically, although Hogan disclaimed that "there's not a momentum piece or anything we're adjusting the business around right now," Plaintiff explains that Align had in fact been adjusting the business by implementing a new $200 discount to combat competition in the comprehensive case segment. *Id.* ¶ 123.  As pled, Hogan's statement is ambiguous as to whether Hogan was responding to the first portion of the question, about competitors using trials to gain traction in the market, or whether he was addressing the second question, regarding the impact of competition more generally.  *See id.* ¶¶ 116–17.  However, the Court must adopt Plaintiff's interpretation that Hogan was discussing the impact of competition generally because the Court may not resolve any disputes about the actual meaning of the statement in this procedural posture.  *See Manzarek*, 519 F.3d at 1031.  Moreover, on a motion to dismiss, the Court must construe the pleadings in "the light most favorable to the nonmoving party."  *Id.*  Construed in the light most favorable to Plaintiff, the Court finds that the implementation of an "aggressive, $200-per-unit discount" to combat competition in the comprehensive case market

19

could sufficiently demonstrate how Hogan misrepresented that Align was not adjusting its business around competition.  The Court thus finds that, unlike the other statements, Plaintiff has provided enough particularized facts to demonstrate that Statement 5 was false or misleading when made.

Defendants dispute whether Plaintiff's implementation of the 3Q18 Discounting Promotion was in fact an actual "adjustment" to Align's business because "the use of promotions was a regular part of Align's marketing tools."  Mot. at 16.  Specifically, they argue that Align "[ran] promotions in order to increase business" in the past before their patents had expired, and that they merely continued to do so during the class period, when competition was ramping up as Align's patent protections expired.  Mot. at 16–17.  Defendants similarly argue that they had disclosed the existence of promotions like their volume-based discounts (namely, the "Advantage Program").  Mot. at 16 (citing AC ¶ 46).  Plaintiff concedes that investors were aware of the "changes to the Advantage program," but contests that they were not aware of "additional promotional programs," like the 3Q18 Discounting Promotion.  Mot. at 16 (citing AC ¶ 46).

In essence, Defendants dispute the materiality of Defendants' failure to disclose the 3Q18 Discounting Promotion specifically, in light of what investors already knew about Align's regular marketing practices.  However, the Court may not decide in this posture whether the failure to disclose a new "aggressive, $200-per-unit discounts" was a material omission.  *See In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996) ("The 'materiality' of an omission is a fact-specific determination that should ordinarily be assessed by a jury.") (citing *Fecht v. The Price Co.*, 70 F.3d 1078, 1080–81 (9th Cir. 1995)).  The Court may only resolve this issue as a matter of law "if the adequacy of the disclosure or the materiality of the statement is so obvious that reasonable minds could not differ," *id.* at 1081, a standard which the Court finds is not met here.

Defendants also argue that Plaintiff generally failed to plead scienter.  Mot. at 20–24; *see* 15 U.S.C. § 78u–4(b)(2) ("[The complaint must] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.").  The Court disagrees.

The U.S. Supreme Court has explained that a strong inference of scienter must be "cogent

20

and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). As to the meaning of "scienter," the Ninth Circuit has held that a plaintiff's complaint must show that "the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Zucco*, 552 F.3d at 990–91 (quoting *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1014–15 (9th Cir. 2005)). "[F]acts showing mere recklessness or a motive to commit fraud and [the] opportunity to do so" are insufficient. *Id.* (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)). "To meet this pleading requirement, the complaint must contain allegations of specific 'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi*, 253 F.3d at 432 (citation omitted). When an omission is at issue, "the plaintiff must plead 'a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Zucco*, 552 F.3d at 991 (quoting *Silicon Graphics*, 183 F.3d at 976).

The Court finds that Plaintiff has pled adequate facts here to allege that Hogan either intentionally or with deliberate recklessness misrepresented that Align had not adjusted the business despite having recently implemented the $200-per-unit 3Q18 Discounting Promotion. As an initial matter, Plaintiff alleges that Hogan, Align's President and Chief Executive Officer, must have known about the 3Q18 Discounting Promotion under the "core operations" doctrine. The core operations doctrine—the theory that "facts critical to a business's 'core operations' . . . are known to a company's key officers . . . can be one relevant part of a complaint that raises a strong inference of scienter." *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008). Plaintiff argues that Hogan must have known about the implementation of the 3Q18 Discounting Promotion to address competition in the comprehensive clear aligner segment because "the manufacture and sale of clear aligners . . . represented 86% of Align's worldwide revenues during the Class Period," and that "comprehensive clear aligners made up the vast majority of its clear

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1    aligner sales." AC ¶¶ 39, 44.  Defendants conclusorily argue that the doctrine does not apply here,

2    Reply at 14, but the Court finds that the implementation of a substantial discount on Align's main

3    revenue source squarely qualifies as "facts critical to a business's 'core operations.'"  *See*

4    *Killinger*, 542 F.3d at 784.

5         Moreover, Plaintiff does not rely solely on the core operations doctrine and instead

6    provides particularized facts supporting Hogan's knowledge of the promotion.  Specifically,

7    Plaintiff alleges that the "3Q18 Discount Promotion was approved—and its purpose and effects

8    understood—at the highest levels of the Company," and cites multiple former employee accounts

9    that corroborate this allegation.  AC ¶ 78.  For example, "FE 4 stated that SVP and Managing

10   Director Puco approved all promotions before they were implemented and would have had to have

11   approved the 3Q18 Discounting Promotion," and "Puco reported directly to Defendant Hogan."

12   *Id.*  Puco purportedly resigned on November 1, 2019, eight days after Hogan disclosed the 3Q18

13   Discounting Promotion to the market.  *Id.* ¶ 167.  FE 5 reported that Morici "explicitly linked the

14   3Q18 Discounting Promotion to the Company's concerns about competition" during conversations

15   with Align's Finance Department.  *Id.* ¶ 78.  FE 5 described a "whiteboard on which 3M and other

16   competitors were identified and an analysis of what percentage of the comprehensive clear aligner

17   market Align could get back with the $200-per-unit discount provided by the 3Q18 Discounting

18   Promotion."  *Id.* ¶ 79.  As Plaintiff correctly notes, "that the defendants published statements when

19   they knew facts suggesting the statements were inaccurate . . . is classic evidence of scienter."  *See*

20   *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1022 (S.D. Cal. 2005).

21        Contrary to Defendants' argument, these statements of FE 4 and FE 5 adequately

22   "demonstrate the intention or the deliberately reckless false or misleading nature of the statements

23   when made."  Mot. at 21 (quoting MTD Order at 15).  The Court previously explained that simply

24   providing assertions that Defendants were "very, very aware of competition," or that they "talked

25   about Align's competitors" were insufficiently tied to the content of the allegedly false statements.

26   MTD Order at 15.  However, the additional details highlighted by the Court above are directly tied

27   to the alleged misrepresentation that Align had not adjusted its business to respond to competition

28

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1   in the comprehensive clear aligner segment because they show that Align had designed and

2   implemented the 3Q18 Discounting Promotion to do just that.  Accordingly, when considering the

3   core operations doctrine and these additional particularized details in the former employee

4   statements, the Court finds that Plaintiff has adequately alleged the element of scienter as to

5   Statement 5.

6          Nor do Defendants offer any competing inferences that would negate scienter as to

7   Statement 5.  A court must take into account "plausible, nonculpable explanations for the

8   defendant's conduct" to consider whether a plaintiff has provided a "cogent and compelling"

9   inference of scienter.  *Tellabs, Inc.*, 551 U.S. at 323.  Yet Defendants' only alternative explanation

10  is that the 3Q18 Discounting Promotion "did not achieve the 'engagement in the lower end' as

11  [Defendants] had anticipated."  Mot. at 24.  But if Defendants implemented the 3Q18 Discounting

12  Promotion to respond to competition and increase sales in the lower end as Defendants claim, this

13  alternative explanation would in fact contradict Hogan's categorical denial that Align was

14  "adjusting the business" at all to competition.

15         In sum, the Court finds that Plaintiff's allegation as to Statement 5 has adequately stated a

16  claim for violation of § 10(b) of the Exchange Act and Rule 10b-5.  Although the Court finds that

17  it is a close call with respect to both the falsity and the materiality of the statement in light of

18  Defendants' repeated disclosures about the existence of promotional discounts, the Court finds it

19  inappropriate to prematurely resolve that factual dispute on a motion to dismiss.[2]

20         **B.  Claim Two: Violation of § 20(a) of the Exchange Act**

21         Second, Plaintiff asserts a § 20(a) claim for "controller liability" against Hogan and

22  Morici.  AC ¶¶ 188–194.  Congress has established liability in § 20(a) for "[e]very person who,

23  directly or indirectly, controls any person liable" for violations of the securities laws.  15 U.S.C. §

24  78t(a).  To prove a prima facie case under § 20(a), a plaintiff must prove: (1) "a primary violation

25

26  ────────────────
    [2] Because the Court finds that Plaintiff adequately pleads scienter based on the allegations
27  discussed above, the Court need not resolve the parties' dispute as to the other allegations
    supporting scienter, such as the timing of Defendants' stock sales or Defendants' performance-
    based compensation.  *See* Mot. at 21–23.

28
    23

United States District Court
Northern District of California

of federal securities law;" and (2) "that the defendant exercised actual power or control over the

primary violator."   *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

Defendants' motion to dismiss fails to argue that the Court should dismiss Plaintiff's

§ 20(a) claim.  *See* Mot.  Instead, Defendants raise the issue for the first time on reply in passing in

a footnote, which argues that the § 20(a) claim "fails for failure to plead a predicate claim."  Reply

at 15 n.27.  The Court need not address arguments raised for the first time in a reply brief because

"arguments raised for the first time in reply briefs are waived."  *See, e.g., In re Yahoo Mail Litig.*,

7 F. Supp. 3d 1016, 1035 (N.D. Cal. Aug. 12, 2014); *Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th

Cir. 1990) (parties "cannot raise a new issue for the first time in their reply briefs").

Accordingly, to the extent that Defendants moved for dismissal of Plaintiff's § 20(a)

controller liability claim, that motion is DENIED.

### C.  Claim Three: Violation of §§ 10(b) and 20A of the Exchange Act and Rule 10b-5

Finally, Plaintiff asserts a claim against Hogan for insider trading in violation of §§ 10(b)

and 20A of the Exchange Act and Rule 10b-5.  AC ¶¶ 195–204.  Defendants move to dismiss

because Plaintiff failed to plead an underlying violation of Section 10(b), and because Plaintiff

failed to establish that any of Plaintiff's trading activity was contemporaneous with any of

Hogan's trades.  Mot. at 24–25.  Although the Court already found above that Plaintiff adequately

pleaded an underlying violation of Section 10(b) (namely, Plaintiff's Section 10(b) claim against

Hogan with respect to Statement 5), the Court agrees that Plaintiff fails to meet the

contemporaneity requirement as further explained below.

"Section 20A of the Exchange Act creates a private cause of action for 'contemporaneous'

insider trading.  To satisfy § 20A, a plaintiff must plead [(1)] a predicate violation of the securities

laws; and (2) facts showing that the trading activity of plaintiffs and defendants occur

'contemporaneously.'"  *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 1070116

(N.D. Cal. Feb. 27, 2018) (quoting *In re Countrywide Financial Corp. Sec. Litig.*, 588 F. Supp. 2d

1132, 1074–75 (C.D. Cal. 2008)).  As to the second element, contemporaneity, although the Ninth

Circuit has eschewed any exact delineation as to how close in time trading must be to be

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

"contemporaneous," the Ninth Circuit has explained that the rule "ensures that only private parties who have traded with someone who had an unfair advantage will be able to maintain insider trading claims." *See Neubronner v. Milken*, 6 F.3d 666, 670 (9th Cir. 1993).[3]

Here, Plaintiff's Section 20A claim is entirely premised on Hogan's sale of common stock on August 14, 2018, which was for 25,000 shares at approximately $367.48 per share. *See* AC ¶ 161. Plaintiff merely conclusorily states that Plaintiff purchased shares of Align common stock "[c]ontemporaneously with Defendant Hogan's insider sales of Align common stock on August 14, 2018." *Id.* ¶ 199. However, Plaintiff does not specify which of its sales are contemporaneous to Hogan's August 14, 2018 sale, apparently asking the Court to identify which of Plaintiff's 28 purchases are contemporaneous with Hogan's August 14, 2018 sale. *See id.*, Ex. A. The Court agrees with Defendants that none of Plaintiff's 28 purchases satisfy the contemporaneity requirement.

First, as the Court already identified, 10 of the 28 trades occurred *before* Hogan's August 14, 2018 purchase. The Court already explained that trades occurring before the alleged insider trading could never satisfy the contemporaneity requirement because it would be "impossible that Plaintiff traded with Hogan for those sales." MTD Order at 20. "No liability can attach for trades made by plaintiffs before the insider engages in trading activity." *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 664 n.91 (E.D. Va. 2000) (quoting *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1489 (N.D. Cal. 1992)).

Second, 10 of the remaining 18 purchases occurring after Hogan's August 14, 2018 sale were at prices *below* Hogan's selling price of $367.48. Mot. at 25; *see* AC, Ex. A. The only purchase identified by Plaintiff in the opposition brief to satisfy contemporaneity occurred on August 20, 2018, at a price of $354.08, which was a purchase price approximately $13 per share *less* than Hogan's sale price. *See* Opp'n at 25. As the Ninth Circuit has explained, the

---

[3] Although the *Neubronner* court considered the contemporaneity rule in the context of implied private causes of action under section 10(b) and Rule 10b-5, the Ninth Circuit elaborated that Congress intended to adopt the same case law defining "contemporaneous" when it passed section 20A. *See* 6 F.3d at 669 n.5.

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California

1  contemporaneity requirement "ensures that only private parties who have traded with someone

2  who had an *unfair advantage*" will be able to bring a Section 20A claim. *See Neubronner*, 6 F.3d

3  at 670 (emphasis added). Thus, courts have consistently held that shares purchased below the

4  defendant's sale price cannot satisfy the contemporaneity requirement, because it is impossible

5  that those trades occurred with defendant at an unfair advantage. *See, e.g.*, *In re MicroStrategy,*

6  *Inc. Sec. Litig.*, 115 F. Supp. 2d 620, 663 (E.D. Va. 2000) ("The fact that plaintiff bought shares at

7  a lower price than that at which defendant sold suggests that 'plaintiff could not have traded with

8  defendant.'") (quoting *Buban v. O'Brien*, No. C 94-0331 FMS, 1994 WL 324093, at *3 (N.D. Cal.

9  June 22, 1994)). The Court holds that Plaintiff's 10 purchases at prices below Hogan's $367.48

10  sale price may not satisfy the contemporaneity requirement.

11       Finally, the remaining 8 purchases, which range from August 29, 2018 to October 18, 2018

12  are all too distant in time from Hogan's August 14, 2020 sale to satisfy the contemporaneity

13  requirement. The closest purchases in time that occurred both after Hogan's August 14, 2018 sale

14  and at a disadvantageous price (i.e., higher than his $367.48 sales price) are Plaintiff's common

15  stock purchases on August 29, 2018 at $386.50 per share. *See* AC, Ex. A. However, these

16  purchases were over two weeks after Hogan's August 14, 2018 sale. Plaintiff cites no cases

17  finding a period of over two weeks to be "contemporaneous," and the Court has not identified any

18  persuasive authority so holding. Thus, although the Court need not adopt Defendants' suggestion

19  that contemporaneity require same-day stock purchases, Mot. at 24, the Court finds that a period

20  of over two weeks is far too long to be contemporaneous. *See, e.g.*, *Hefler*, 2018 WL 1070116, at

21  *13 (dismissing Section 20A claims because the plaintiff's purchases were four and five days after

22  the defendant's sale).

23       In sum, Plaintiff has again failed to demonstrate that any of Plaintiff's stock purchases

24  were contemporaneous with Hogan's purported insider sales on August 14, 2018. Accordingly,

25  the Court GRANTS Defendants' motion to dismiss Plaintiff's Section 20A claim. Moreover, the

26  Court previously dismissed Plaintiff's Section 20A claim because Plaintiff had failed to allege

27  contemporaneity. MTD Order at 20. Because the Court already identified this deficiency in its

28

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

October 29, 2019 Dismissal Order and instructed Plaintiff that failure to cure would result in dismissal with prejudice, the Court finds that leave to amend as to this statement would be futile. *See Leadsinger, Inc.*, 512 F.3d at 532.  Accordingly, the Court's dismissal of Plaintiff's Section 20A claim is with prejudice.

## IV.     CONCLUSION

For the foregoing reasons, the Court holds as follows:

- Defendants' motion to dismiss Plaintiff's first claim for violation of § 10(b) of the Exchange Act and Rule 10b-5 against all Defendants, is GRANTED with prejudice as to Statements 1, 2, 3, 4, and 6, and DENIED as to Statement 5;

- Defendants' motion to dismiss Plaintiff's second claim for § 20(a) of the Exchange Act against Hogan and Morici is DENIED; and

- Defendants' motion to dismiss Plaintiff's third claim for violation of § 10(b) and 20A of the Exchange Act and Rule 10b-5 for insider trading against Hogan is GRANTED with prejudice.

**IT IS SO ORDERED.**

Dated:  September 9, 2020

*Lucy H. Koh*
_____
LUCY H. KOH
United States District Judge

Case No. 18-CV-06720-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS

United States District Court
Northern District of California