**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
STACEY M. KAPLAN (Bar No. 241989)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:  (415) 400-3000
Fax:  (415) 400-3001
jjoost@ktmc.com
skaplan@ktmc.com

[Additional Counsel on Signature Page.]

*Counsel for Lead Plaintiff SEB Investment Management AB*
*and Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| SEB INVESTMENT MANAGEMENT AB, Individually and on Behalf of All Others Similarly Situated, | Case No. 5:18-cv-06720-LHK |
| | <u>CLASS ACTION</u> |
| Plaintiff, | **LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF** |
| v. | |
| ALIGN TECHNOLOGY, INC., JOSEPH M. HOGAN, and JOHN F. MORICI, | |
| Defendants. | Hearing Date: December 9, 2021<br>Time:          1:30 p.m.<br>Courtroom:  8, 4th Floor<br>Judge:         Hon. Lucy H. Koh |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 9, 2021, at 1:30 p.m., in Courtroom 8 on the 4th Floor of the United States District Court for the Northern District of California, San Jose Courthouse, 280 South 1st Street, San Jose, California 95113, the Honorable Lucy H. Koh presiding, the Court-appointed Lead Plaintiff, SEB Investment Management AB ("SEB" or "Lead Plaintiff"), will and hereby does move for an Order pursuant to Federal Rule of Civil Procedure ("Rule") 23: (1) certifying the proposed class ("Settlement Class") for purposes of effectuating the proposed settlement ("Settlement") of the above-captioned action ("Action"); (2) granting preliminary approval of the Settlement on the terms set forth in the Stipulation and Agreement of Settlement dated June 30, 2021 ("Stipulation");[1] (3) authorizing the retention of JND Legal Administration ("JND") as the administrator for the Settlement ("Claims Administrator"); (4) approving the form and manner of notice of the Settlement to the Settlement Class; and (5) setting a hearing date for final approval of the Settlement ("Final Approval Hearing") as well as the schedule for various deadlines in connection with the Settlement.

This motion is based upon this Notice of Unopposed Motion and Unopposed Motion (together, the "Motion"), the supporting Memorandum that follows, several supporting declarations, including the Declaration of Jennifer L. Joost in Support of the Motion ("Joost Decl."), the Stipulation (and the exhibits thereto), the pleadings and records on file in the Action, and such other matters the Court may consider in evaluating the Motion.

---

[1] The Stipulation is attached as Exhibit 1 to the Declaration of Jennifer L. Joost submitted herewith. Unless otherwise defined herein, capitalized terms shall have the meanings ascribed in the Stipulation.

# TABLE OF CONTENTS

**Page**

STATEMENT OF ISSUES TO BE DECIDED ........................................................ viii

I.    PRELIMINARY STATEMENT ................................................................1

II.   SUMMARY OF THE LITIGATION .........................................................2

III.  TERMS OF THE PROPOSED SETTLEMENT ........................................4

IV.   CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS WARRANTED ...............6

V.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ...........................10

      A.    Ninth Circuit Law Favors and Encourages Settlements .....................10

      B.    The Proposed Settlement Should Be Preliminarily Approved ...........10

            1.    Procedural Aspects of the Settlement Satisfy Rule 23(e)(2) ................11

            2.    The Settlement's Terms Are Adequate.................................13

                  a.    The Settlement provides substantial relief, especially in light of the costs, risks, and delay of further litigation ..................................14

                  b.    The proposed Settlement does not unjustly favor any Settlement Class Member ..........................................16

                  c.    The anticipated request for attorneys' fees is reasonable .........................17

                  d.    Lead Plaintiff has identified all agreements made in connection with the Settlement .........................................19

VI.   THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE SETTLEMENT CLASS .................................20

VII.  THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE ........................23

VIII. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ......................................23

IX.   CONCLUSION.........................................................................24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...................................................................................14

*Allen v. Bedolla*,
787 F.3d 1218 (9th Cir. 2015) ...............................................................................10

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014)....................................................17

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) ..................................................................................................9

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018).......................................................................8, 10

*Avila v. LifeLock Inc.*,
2020 WL 4362394 (D. Ariz. July 27, 2020) .........................................................19

*In re AXA Rosenberg Inv'r Litig.*,
2012 WL 12920617 (N.D. Cal. Apr. 2, 2012) ......................................................19

*In re Banc of Cal. Sec. Litig.*,
2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ........................................................19

*Bellinghausen v. Tractor Supply Co.*,
303 F.R.D. 611 (N.D. Cal. 2014).............................................................................20

*Betorina v. Randstad US, L.P.*,
2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ........................................................13

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)......................................................23

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ....................................................................................5

*Booth v. Strategic Realty Tr., Inc.*,
2015 WL 3957746 (N.D. Cal. June 28, 2015)....................................................7-8

*Bright v. Dennis Garberg & Assocs., Inc.*,
2011 WL 13150437 (C.D. Cal. Aug. 24, 2011).....................................................12

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
2020 WL 1873554 (N.D. Cal. Mar. 11, 2020)........................................................5

*In re Celera Corp. Sec. Litig.*,
2015 WL 1482303 (N.D. Cal. Mar. 31, 2015).......................................................15

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN
SUPPORT THEREOF

*In re Charles Schwab Corp. Sec. Litig.*,
   2011 U.S. Dist. LEXIS 44547 (N.D. Cal. Apr. 19, 2011) ...................................................14

*Chavez v. PVH Corp.*,
   2015 WL 12915109 (N.D. Cal. Aug. 6, 2015) .............................................................13

*Corzine v. Whirlpool Corp.*,
   2019 WL 7372275 (N.D. Cal. Dec. 31, 2019)........................................................... 11-12

*Des Roches v. Cal. Physicians' Serv.*,
   320 F.R.D. 486 (N.D. Cal. 2017)...................................................................................8

*In re Extreme Networks, Inc. Sec. Litig.*,
   2019 WL 3290770 (N.D. Cal. July 22, 2019).............................................6, 9, 17, 23

*Fed. Ins. Co. v. Caldera Med., Inc.*,
   2017 WL 11037391 (C.D. Cal. Jan. 31, 2017) .............................................................10

*Ford v. CEC Entm't, Inc.*,
   2015 WL 11439032 (S.D. Cal. July 7, 2015) ................................................................9

*Gross v. Symantec Corp.*,
   2014 U.S. Dist. LEXIS 182986 (N.D. Cal. Mar. 21, 2014).....................................15-16

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011, 1020 (9th Cir. 1998) ...........................................................................8, 9

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ......................................................................................18-19

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016)................................................................7

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 WL 7406418 (N.D. Cal. Dec. 22, 2016) ..............................................................6

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ................................................10, 12, 19

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .............................................................18

*In re Heritage Bond Litig. v. U.S. Trust Corp.*,
   546 F.3d 667 (9th Cir. 2008) .......................................................................................6

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) .......................................................................................5

*In re High-Tech Emp. Antitrust Litig.*,
   2013 WL 6328811 (N.D. Cal. Oct. 30, 2013)................................................................6

*In re High-Tech Emp. Antitrust Litig.*,
   2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) .............................................................23

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) .................................................................7, 9

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ..............................................................................8

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .....................................................................................9

*Kmiec v. Powerwave Techs., Inc.*,
   2015 WL 12914343 (C.D. Cal. Dec. 4, 2015) ...........................................................8

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ...................................................................................20

*In re LendingClub Sec. Litig.*,
   2018 WL 1367336 (N.D. Cal. Mar. 16, 2018)............................................................5

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015)...............................................................................9

*Luna v. Marvell Tech. Grp.*,
   2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) .........................................................15

*Luna v. Marvell Tech. Grp., Ltd.*,
   2017 WL 4865559 (N.D. Cal. Oct. 27, 2017)............................................................7

*In re Magma Design Automation Sec. Litig.*,
   2007 WL 2344992 (N.D. Cal. Aug. 16, 2007) ..........................................................6

*Mauss v. NuVasive, Inc.*,
   2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)......................................................17, 18

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................................................18

*Mild v. PPG Indus., Inc.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019)....................................................15, 18

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
   2016 WL 1598666 (N.D. Cal. Apr. 21, 2016)............................................................9

*In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*,
   2017 WL 6040065 (N.D. Cal. Dec. 6, 2017),
   *aff'd*, 768 Fed. App'x 651 (9th Cir. 2019)...............................................................18

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
   2016 WL 3369534 (S.D.N.Y. May 2, 2016) ...........................................................19

*Nitsch v. DreamWorks Animation SKG Inc.*,
   2017 WL 399221 (N.D. Cal. Jan. 19, 2017)............................................................13

*Nucci v. Rite Aid Corp.*,
   2020 WL 3187335 (N.D. Cal. June 14, 2020) ......................................................6-7

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN
SUPPORT THEREOF

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ................................................................................ 17-18

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ................................................................................ 10, 18

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 1991529 (N.D. Cal. June 30, 2007) ................................................................ 23

*In re Portal Software, Inc. Sec. Litig.*,
2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ................................................................ 16

*In re Qualcomm Antitrust Litig.*,
328 F.R.D. 280 (N.D. Cal. 2018) ................................................................................ 9

*Quiruz v. Specialty Commodities, Inc.*,
2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ................................................................ 11

*Rael v. Children's Place, Inc.*,
2020 WL 434482 (S.D. Cal. Jan. 28, 2020) ................................................................ 10

*Ramirez v. Ghilotti Bros, Inc.*,
2014 WL 1607448 (N.D. Cal. Apr. 21, 2014) ................................................................ 12

*In re RH, Inc. Sec. Litig.*,
2019 WL 5538215 (N.D. Cal. Oct. 25, 2019) ................................................................ 23

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................................ 10

*Sheikh v. Tesla, Inc.*,
2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) ................................................................ 12

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ................................................................................ 10

*Todd v. STAAR Surgical Co.*,
2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ................................................................ 7

*In re Twitter Inc. Sec. Litig.*,
326 F.R.D. 619 (N.D. Cal. 2018) ................................................................................ 6

*In re UTStarcom, Inc. Sec. Litig.*,
2010 WL 1945737 (N.D. Cal. May 12, 2010) ................................................................ 9

*Vataj v. Johnson*,
2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ................................................................ 6, 22

*In re VeriSign, Inc. Sec. Litig.*,
2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ................................................................ 9

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 ................................................................................ 18

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN
SUPPORT THEREOF

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,*
   2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ............................................................23

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.,*
   895 F.3d 597 (9th Cir. 2018) ........................................................................................6

*Wal-Mart Stores, Inc. v. Dukes,*
   564 U.S. 338 (2011).......................................................................................................7

*Wang v. Chinese Daily News, Inc.,*
   737 F.3d 538 (9th Cir. 2013) ........................................................................................7

*Wong v. Arlo Techs., Inc.,*
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ..............................................................6

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.,*
   2019 WL 387322 (N.D. Cal. Jan. 30, 2019) ..............................................................11

*In re Zynga Inc. Sec. Litig.,*
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)..............................................................17

**Statutes**

15 U.S.C. §78u-4(a)(7) ...........................................................................................................20

Class Action Fairness Act of 2005, 28 U.S.C. § 1715, et seq.................................................22

**Other Authorities**

17 C.F.R. § 240.10b-5..............................................................................................................3

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

N.D. Cal. *Procedural Guidance for Class Action Settlements* ....................................... *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN
SUPPORT THEREOF

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court will likely be able to certify the Settlement Class for purposes of effectuating the Settlement.

2.      Whether the Court will likely be able to approve the proposed $16 million Settlement of the Action under Rule 23(e)(2) so that notice of the Settlement's terms and conditions may be provided to members of the Settlement Class ("Settlement Class Members").

3.      Whether the proposed form and content of the Settlement notices and Proof of Claim Form and the plan for disseminating these materials to Settlement Class Members should be approved.

4.      Whether the Court should schedule a final approval hearing in connection with the proposed Settlement, the proposed Plan of Allocation, and the application of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses.

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF

## I.   PRELIMINARY STATEMENT

After nearly three years of contentious litigation, Lead Plaintiff and Defendants have reached an agreement to resolve this Action in exchange for a $16,000,000 cash payment pursuant to the Stipulation filed herewith. Lead Plaintiff now seeks (i) provisional certification of the Settlement Class for settlement purposes; (ii) preliminary approval of the Settlement pursuant to Rule 23; (iii) approval of the form and manner of providing notice of the Settlement to Settlement Class Members; and (iv) an order scheduling the Final Approval Hearing.

The proposed Settlement—resulting from two extensive arm's-length mediation sessions with an experienced neutral mediator, Gregory P. Lindstrom of Phillips ADR ("Mr. Lindstrom")—provides a significant benefit to the Settlement Class, while avoiding the risks, costs, and delay of continued litigation. At each stage of this Action, Defendants asserted aggressive defenses to virtually every element of Lead Plaintiff's claims. Had the Settlement not been reached, Lead Plaintiff would have faced substantial obstacles in proving its case, particularly because, following the Court's September 2020 order on Defendants' motion to dismiss, only one allegedly misleading statement remained in the case. As a result, the fate of this Action largely hinged on the interpretation of that statement, whether Lead Plaintiff could establish that the statement materially misled investors, whether the information omitted from the statement was material, and what information Defendants knew when they made the statement. Among other defenses, Defendants would have vehemently argued that the statement at issue did not mean what Lead Plaintiff alleged it did, that the allegedly omitted information regarding the third quarter promotion was not material given Align's disclosures concerning its promotional practices, and that Defendants did not know when they made the statement that the promotion would have the impact that it ultimately did. Even if Lead Plaintiff was able to overcome these legal and factual defenses, Defendants would have vigorously challenged Lead Plaintiff's ability to prove loss causation and damages, adding risk at summary judgment and trial. These risks had the real potential to diminish or eradicate the Settlement Class's recovery.

In agreeing to the Settlement, Lead Plaintiff and Lead Counsel were well aware of the strengths and weaknesses of the Settlement Class's claims against Defendants, based on their extensive investigation, exhaustive legal research, and the hard-fought discovery taken to date. This enabled Lead Plaintiff and Lead Counsel to make an informed evaluation of the risks of continued litigation and the

fairness, reasonableness, and adequacy of the Settlement on the terms set forth in the Stipulation. Based on this evaluation, Lead Plaintiff and Lead Counsel respectfully submit that the proposed Settlement merits preliminary approval.

At the Final Approval Hearing, the Court will have before it more extensive submissions in support of the Settlement, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. By this Motion, Lead Plaintiff respectfully requests that the Court enter the Preliminary Approval Order which will, among other things:

- provisionally certify the Settlement Class for settlement purposes;

- appoint Lead Plaintiff SEB Investment Management AB as class representative and Lead Counsel Kessler Topaz Meltzer and Check, LLP ("KTMC") as class counsel for the Settlement Class;

- preliminarily approve the terms of the Settlement as set forth in the Stipulation;

- approve the selection of JND as Claims Administrator;

- approve the form and content of the Notice, Claim Form, and Summary Notice attached as Exhibits A-1, A-2, and A-3 to the Stipulation (Joost Decl., Ex. 1), respectively;

- approve the proposed method for providing notice to the Settlement Class through mailing of the Notice, publishing the Summary Notice, and establishing a dedicated Settlement website as the best notice practicable under the circumstances and in satisfaction of the requirements of Rule 23, due process, the PSLRA, and all other applicable law and rules; and

- approve a schedule for (i) disseminating notice to the Settlement Class; (ii) Settlement Class Members to request exclusion from the Settlement Class; (iii) Settlement Class Members to object to the Settlement, the Plan of Allocation, and/or Lead Counsel's request for attorneys' fees and Litigation Expenses; (iv) Settlement Class Members to submit Claim Forms; (v) Lead Plaintiff and Lead Counsel to submit papers in support of final approval of the Settlement and related matters; and (vi) conducting the Final Approval Hearing.

## II.    SUMMARY OF THE LITIGATION

On November 5, 2018, the initial complaint in this Action, captioned *Xiaojiao Lu v. Align Technology, Inc., Joseph M. Hogan, John F. Morici, and Raphael S. Pascaud*, No. 5:18-cv-06720-LHK, was filed. ECF No. 1.[2] On January 4, 2019, SEB, among seven other applicants, moved to be appointed lead plaintiff. ECF Nos. 45-51. On March 22, 2019, the Court consolidated *Lu v. Align Technology, Inc.*, No. 5:18-cv-06720-LHK, and the related case *Infuso v. Align Technology Inc.*, No. 5:18-cv-07469-LHK,

---

[2]    Unless otherwise indicated, all internal citations, quotations, and footnotes have been omitted and all emphasis has been added.

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF

appointed SEB as Lead Plaintiff, and approved SEB's selection of Kessler Topaz Meltzer & Check, LLP as Lead Counsel. ECF No. 72.

On May 10, 2019, Lead Plaintiff filed the Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("Consolidated Complaint") alleging violations of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78n(a), and 78t(a), respectively, and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. ECF No. 87. The Consolidated Complaint named Align, Joseph M. Hogan, John F. Morici, Raphael S. Pascaud, and Emory M. Wright as defendants. *Id.*

Those defendants moved to dismiss the Consolidated Complaint on June 24, 2019. ECF No. 92. The Court granted defendants' motion on October 29, 2019, dismissed the Consolidated Complaint without prejudice, and granted Lead Plaintiff leave to amend. ECF No. 107.

On November 29, 2019, Lead Plaintiff filed the operative complaint in this Action, the Amended Consolidated Class Action Complaint for Violation of the Federal Securities Laws ("Amended Consolidated Complaint"), which no longer named Raphael S. Pascaud or Emory M. Wright as defendants and modified the class period start date from April 25, 2018 to May 23, 2018. ECF No. 120. The Amended Consolidated Complaint alleged, among other things, that Defendants made materially false and misleading statements during the alleged class period regarding new competitive pressures facing Align's comprehensive clear aligners and the Company's responses thereto. *See id*. On January 17, 2020, Defendants moved to dismiss the Amended Consolidated Complaint. ECF No. 122.

The Court denied in part and granted in part Defendants' motion to dismiss the Amended Consolidated Complaint on September 9, 2020. ECF No. 138. In particular, the Court denied Defendants' motion to dismiss Lead Plaintiff's claims for: (i) violation of Section 10(b) as to a single statement on July 25, 2018, and (ii) the 20(a) claim against individual Defendants Hogan and Morici. *See id.* The Court dismissed all of Lead Plaintiff's other claims (including claims based on alleged false and misleading statements made on May 23, 2018, June 12, 2018, and June 14, 2018, as well as two of the three alleged false and misleading statements made on July 25, 2018) with prejudice. *See id.* On September 24, 2020, the Court issued an order staying the Action to enable the Parties to explore resolution through mediation. ECF No. 143.

Thereafter, on November 23, 2020, the Parties participated in a mediation session with Mr. Lindstrom, including exchanging detailed mediation statements, but were unable to resolve the Action. Soon thereafter, the Court lifted the stay of the Action (ECF No. 148) and discovery commenced.

From January 2021 to June 2021, Lead Plaintiff engaged in extensive fact discovery of Defendants, including, among other things: (i) issuing 30 document requests; (ii) serving interrogatories; (iii) serving 50 requests for admission; (iv) obtaining 19,690 pages of documents produced by Defendants; and (v) reviewing Defendants' written discovery responses and production in response thereto. During this time, Lead Plaintiff also reviewed and produced documents on SEB's behalf and responded to document requests and interrogatories served by Defendants. The Parties also filed and argued four discovery-related motions before Judge DeMarchi. *See* ECF Nos. 155, 156, 164, 172, 174.

On June 10, 2021, in accordance with the Court's May 6, 2021 order (ECF No. 171), the Parties participated in a second arm's-length mediation session before Mr. Lindstrom. Following hard-fought negotiations, the Parties reached an agreement in principle to resolve the Action for $16 million, and executed a binding Term Sheet on June 11, 2021. Thereafter, the Parties negotiated the Stipulation setting forth the full terms and conditions of the Parties' agreement to settle the Action, which was executed on June 30, 2021, and is submitted herewith. *See* Joost Decl., Ex. 1.

## III. TERMS OF THE PROPOSED SETTLEMENT

The Stipulation provides that, in exchange for a cash payment of $16,000,000 (the "Settlement Amount"), Settlement Class Members will release the "Lead Plaintiff's Released Claims." *See* Stip., ¶¶ 1(y), 5. Lead Plaintiff's Released Claims include claims that "(a) Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the Action or (ii) could have asserted in any court or forum that arise out of or are based upon any of the allegations, transactions, facts, matters or occurrences, representations, or omissions set forth in the Action; and (b) relate to the purchase or other acquisition of Align common stock during the Settlement Class Period." *Id.*, ¶ 1(y).[3]

---

[3] Lead Plaintiff's Released Claims exclude "(i) any claims asserted by shareholders on behalf of Align in the two related derivative lawsuits that have been stayed pending the resolution of this Action . . .; (ii) any claims relating to the enforcement of the Settlement; or (iii) any claims of any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court." *Id.*

The scope of this release is reasonably limited to claims that relate to the same factual allegations as set forth in the operative Amended Consolidated Complaint and are anchored to the purchase or acquisition of Align common stock during the Settlement Class Period (i.e., the same class period set forth in the Amended Consolidated Complaint). *See* ECF No. 120; Stip., ¶¶ 1(y), 1(qq), 4; *see also* N.D. Cal. *Procedural Guidance for Class Action Settlements* ("N.D. Cal. Guid."),[4] ¶ 1(c) (requiring differences between the claims to be released and the claims of the operative complaint to be explained). This release "will bar only claims based on an identical factual predicate as that underlying the claims settled in this [Action], as required by Ninth Circuit law."[5] *In re Yahoo! Inc. Sec. Litig.*, No. 17-cv-00373, at ECF No. 105, ¶ 31 (N.D. Cal. May 5, 2018) (citing *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010)). The proposed release is also consistent with release provisions approved by this Court and other courts in this Circuit in similar actions. *See, e.g.*, *In re Yahoo! Inc. Sec. Litig.*, at ECF No. 105, ¶ 31; *In re Banc of Cal. Sec. Litig.*, No. 8:17-cv-00118-AG-DFM, at ECF No. 592, ¶ 1.30 & ECF No. 595 at 3 (C.D. Cal. Oct. 30, 2019); *In re LendingClub Sec. Litig.*, 2018 WL 1367336, at *4 (N.D. Cal. Mar. 16, 2018) (approving release in securities class action that was "anchored to the purchase, acquisition, holding, sale, or disposition of LendingClub common stock by Class Members during the [class period]") (alteration in original).

Additionally, none of the Ninth Circuit's three indicia of collusion are present here. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2020 WL 1873554, at *8 (N.D. Cal. Mar. 11, 2020) (citing *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011)). In particular, as discussed in more detail below, Lead Counsel will request attorneys' fees in an amount below the Ninth Circuit's 25% benchmark. Moreover, there is no clear sailing agreement, and under the terms of the Stipulation, Defendants have no right to the return of the Settlement Fund for any reason upon the occurrence of the Effective Date. Stip., ¶ 14; *see also* N.D. Cal. Guid., ¶ 1(h) (requiring the disclosure of any reversions).

---

[4] For ease of reference, a chart setting forth the N.D. Cal. procedural guidance requirements, along with where the information addressing the requirements can be found in Lead Plaintiff's preliminary approval papers, is attached as Appendix A hereto.

[5] Notably, while this Court dismissed claims based on statements other than the one remaining statement at issue in this Action with prejudice, Lead Plaintiff and the Settlement Class maintain appellate rights with respect to those claims. As a result, the release addresses these rights, as well as the claims sustained by the Court on September 9, 2020.

Further, Lead Plaintiff supports the proposed Settlement and believes that it represents an excellent recovery, and is fair, adequate, reasonable, and in the best interests of the Settlement Class.

## IV.   CERTIFICATION OF THE PROPOSED SETTLEMENT CLASS IS WARRANTED

In connection with preliminary approval of the Settlement, Lead Plaintiff requests that the Court provisionally certify the Settlement Class for the purposes of effectuating the Settlement.[6] At this stage, the Court should determine whether it "will likely be able" to grant certification to the proposed Settlement Class at final approval. Rule 23(e)(1)(B).

As stipulated to by the Parties for purposes of settlement only (*see* Stip., ¶ 2), the proposed Settlement Class consists of: "[A]ll persons and entities who purchased or otherwise acquired the common stock of Align between May 23, 2018 and October 24, 2018, both dates inclusive, and who were damaged thereby."[7] A movant seeking certification of a class for settlement purposes must satisfy the requirements of Rules 23(a) and (b). *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 606 (9th Cir. 2018) (deciding class certification before fairness of the settlement); *In re High-Tech Emp. Antitrust Litig.*, 2013 WL 6328811, at *2 (N.D. Cal. Oct. 30, 2013) (Koh, J.) ("The Court must conditionally certify a proposed settlement class before it can preliminarily approve the class settlement."). Here, "[a]s in almost all lawsuits by shareholders of public companies, the investors in this case easily satisfy the requirements of Rule 23." *In re Magma Design Automation Sec. Litig.*, 2007 WL 2344992, at *1 (N.D. Cal. Aug. 16, 2007). Moreover, courts in this District regularly certify shareholder classes for settlement purposes. *See, e.g.*, *Vataj v. Johnson*, 2021 WL 1550478, at *1-2, *6-7 (N.D. Cal. Apr. 20, 2021); *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *2 (N.D. Cal. Apr. 19, 2021); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *4-5 (N.D. Cal. July 22, 2019); *In re Heritage Bond Litig. v. U.S. Trust Corp.*, 546 F.3d 667, 674-75 (9th Cir. 2008).[8]

---

[6]     The Settlement Class is the same class in the operative complaint. *See* N.D. Cal. Guid., ¶ 1(a) (differences between the settlement class and the class in the operative complaint must be noted).

[7]     Certain persons and entities are excluded from the Settlement Class by definition as set forth in paragraph 1(oo) of the Stipulation.

[8]     *See also Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 7406418, at *2 (N.D. Cal. Dec. 22, 2016) ("As a general matter, the Ninth Circuit has found Rule 23(b)(3) class actions to be useful where a large number of purchasers or holders of securities claim to have been defrauded by a common course of dealing on the part of the defendants."); *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 631 (N.D. Cal. 2018) ("Courts in this district have recognized the utility of the class action device in securities cases.").

**Numerosity**: Rule 23(a)(1) requires that the class be so numerous that joinder of all class members is impracticable. Classes that consist of 40 or more members usually satisfy numerosity. *See, e.g.*, *Nucci v. Rite Aid Corp.*, 2020 WL 3187335, at \*10 (N.D. Cal. June 14, 2020) (Koh, J.). Here, Defendants admit that "the Class contains more than [100] members." Joost Decl., Ex. 2 (relevant portion of Defendants' Responses and Objections to Lead Plaintiff's First Set of Requests for Admission) at 4. Thus, numerosity is established.

**Commonality**: Rule 23(a)(2) is satisfied where class members share at least one common question of law or fact. *See, e.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011); *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). This Action involves myriad common questions, including whether: (i) Defendants' July 25, 2018 statement was false or misleading; (ii) the facts that Defendants misrepresented or omitted were material; (iii) Defendants acted with scienter, (iv) the price of Align common stock was artificially inflated by Defendants' misleading statement; (v) Defendants' misleading statement caused the Settlement Class's losses; and (vi) Hogan and Morici were controlling persons of Align, as well as the proper measure of damages.

Courts routinely certify securities cases involving similar common questions. *See, e.g.*, *Luna v. Marvell Tech. Grp., Ltd.*, 2017 WL 4865559, at \*2 (N.D. Cal. Oct. 27, 2017) ("[L]ead plaintiff's allegations that investors were defrauded by the same misleading statements over the same period of time, and suffered similar losses as a result are sufficient to fulfill Rule 23(a)'s commonality requirement."); *Hatamian v. Advanced Micro Devices, Inc.*, 2016 WL 1042502, at \*4 (N.D. Cal. Mar. 16, 2016) (commonality satisfied by common questions such as "whether [the defendants]: (1) violated the Securities Exchange Act of 1934; (2) misrepresented or omitted material facts; . . . whether Defendants' (4) false statements artificially inflated the price of [the defendant's] stock . . ."). Commonality is thus met.

**Typicality**: Rule 23(a)(3) requires that the claims or defenses of the class representative are typical of the claims or defenses of other class members. Under Rule 23(a)(3)'s "permissive standards," "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1181 (N.D. Cal. 2013) (Koh, J.). Typicality is generally satisfied in securities fraud class actions, where, as here, "plaintiffs have bought and sold stock for investment purposes, subject to the same information and

representations as the market at large." *Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *5 (C.D. Cal. Jan. 5, 2017); *see also Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *4 (N.D. Cal. June 28, 2015). Lead Plaintiff, like other Settlement Class Members, purchased Align common stock during the Settlement Class Period at artificially inflated prices and suffered damages when the relevant truth was disclosed and the stock price declined. Simply put, typicality is satisfied here because the evidence that Lead Plaintiff would present to prove its claims would also prove the Settlement Class's claims. *See Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 266-67 (N.D. Cal. 2011).

**Adequacy**: Courts in the Ninth Circuit set forth a two-prong test for Rule 23(a)(4)'s adequacy requirement: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 505 (N.D. Cal. 2017) (Koh, J.) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)). As described above, Lead Plaintiff's claims are typical of those of other Settlement Class Members, and therefore Lead Plaintiff has no interests antagonistic to other Settlement Class Members' interests. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 309 (N.D. Cal. 2018) (Koh, J.) (finding no conflicts where class members were all victims of the same event and seeking the same type of relief). Lead Plaintiff has also demonstrated its adequacy by vigorously prosecuting this Action on behalf of the Settlement Class, including actively supervising the litigation and engaging in discovery. *See Kmiec v. Powerwave Techs., Inc.*, 2015 WL 12914343, at *3 (C.D. Cal. Dec. 4, 2015) (finding adequacy satisfied where lead plaintiff was "a large, sophisticated institutional investor who has monitored this litigation and become familiar with the facts and theories underlying the class claims"). Furthermore, Lead Plaintiff has retained counsel who is highly experienced in securities class action litigation, and has successfully prosecuted many securities class actions throughout the United States. *See* Joost Decl., Ex. 3 (KTMC Resume). The adequacy requirement is satisfied. Moreover, given Lead Counsel's extensive experience in and knowledge of securities class actions, as well as the significant work and resources that it has devoted to prosecuting this Action, Lead Counsel should be appointed as Class Counsel pursuant to Rule 23(g).

**Predominance and Superiority**: This case also satisfies Rule 23(b)(3), which requires that common questions of law or fact predominate over any individual questions, and that a class action is

superior to other methods of adjudication. Predominance is satisfied when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *In re Qualcomm Antitrust Litig.*, 328 F.R.D. 280, 295-96 (N.D. Cal. 2018) (Koh, J.) (quoting *Hanlon*, 150 F.3d at 1022). A plaintiff need not prove that "each elemen[t] of [the] claim [is] susceptible to classwide proof." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (first and second brackets in original). "The predominance requirement is readily met in securities fraud cases." *In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *9 (N.D. Cal. May 12, 2010). The core elements of the claims here—falsity, materiality, scienter, and loss causation—are susceptible to class-wide proof. *See Extreme Networks*, 2019 WL 3290770, at *5 (common questions of falsity, materiality, scienter, and loss causation predominated); *UTStarcom*, 2010 WL 1945737, at *9 (predominance met where plaintiff alleged "a common course of conduct affecting all purchasers").

Finally, in cases like this one, where "recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis," a class action is the superior method of adjudication.[9] *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015); *see also In re VeriSign, Inc. Sec. Litig.,* 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").[10] Moreover, Lead Plaintiff is not aware of any other pending actions seeking similar relief.

In sum, all of the requirements of Rules 23(a) and (b)(3) are satisfied, and there are no issues that would prevent the Court from certifying the Settlement Class for settlement purposes, appointing SEB as class representative, and appointing Lead Counsel as Class Counsel pursuant to Rule 23(g).

---

[9]     When a class is seeking certification for purposes of settlement, "the superiority inquiry focuses on the efficiency and economy elements of the class action so that cases allowed under [Rule 23(b)(3)] are those that can be adjudicated most profitably on a representative basis." *Ford v. CEC Entm't, Inc.*, 2015 WL 11439032, at *4 (S.D. Cal. July 7, 2015) (brackets in original); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) ("[t]he criteria for class certification are applied differently in litigation classes and settlement classes" and "manageability is not a concern in certifying a settlement class").

[10]     Although not a Rule 23 requirement, the Settlement Class is also ascertainable because the class description is "definite enough so that it is administratively feasible for a court to ascertain whether an individual is a member." *High-Tech Emp.*, 985 F. Supp. 2d at 1182. Here, Settlement Class Members can be easily identified through shareholder acquisition records. *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 2016 WL 1598666, at *2 (N.D. Cal. Apr. 21, 2016).

## V. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A. Ninth Circuit Law Favors and Encourages Settlements

In this Circuit, there is a "judicial policy favoring compromise and settlement of class action suits." *Anthem*, 327 F.R.D. at 317 (citing *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008)). This "strong judicial policy" is particularly applicable "where complex class action litigation is concerned." *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015); *see also Rael v. Children's Place, Inc.*, 2020 WL 434482, at *10 (S.D. Cal. Jan. 28, 2020) (noting the "overriding public interest in settling and quieting litigation, particularly where resource-intensive class actions are concerned"). Moreover, the Ninth Circuit expressly recognizes that:

> [t]he Court's role in evaluating the proposed settlement "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned."

*Fed. Ins. Co. v. Caldera Med., Inc.*, 2017 WL 11037391, at *9 (C.D. Cal. Jan. 31, 2017) (quoting *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)). Thus, because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts favor approval of settlements. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

### B. The Proposed Settlement Should Be Preliminarily Approved

Rule 23(e) requires judicial approval of a class action settlement. Such approval follows a two-step process—first, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the class, *see* Rule 23(e)(1); and second, after notice has been provided to the class, the court determines whether to grant final approval. *See* Rule 23(e)(2); *see also, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *8 (N.D. Cal. Sept. 4, 2018).

By this Motion, Lead Plaintiff requests that the Court preliminarily approve the Settlement so that notice of the Settlement can be provided to the Settlement Class. To this end, a court grants preliminary

approval of a settlement upon a finding that it "will likely be able" to approve the Settlement as fair, reasonable, and adequate at the final hearing. Rule 23(e)(1)(B).[11]

In considering whether final approval is likely, courts consider whether:

(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Rule 23(e)(2). As demonstrated below, the proposed Settlement is a fair result in light of the circumstances in this Action. The Settlement is the product of rigorous arm's-length negotiations between experienced counsel, with the assistance of an experienced mediator. Lead Plaintiff and Lead Counsel negotiated the Settlement with a solid understanding of the strengths and weaknesses of the Settlement Class's claims. Given the complexity of this litigation, the potential difficulty in proving the Settlement Class's claims, and the substantial continued risks if the Parties were to proceed to summary judgment and trial, Lead Plaintiff and Lead Counsel respectfully submit that the Settlement represents a favorable resolution. Accordingly, the Settlement merits preliminary approval.

### 1. Procedural Aspects of the Settlement Satisfy Rule 23(e)(2)

Rule 23(e)(2)'s first two factors "look[] to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Rule 23(e)(2) advisory committee's notes to 2018 amendment. The Settlement embodies all the hallmarks of a procedurally fair resolution under Rule 23(e)(2).

*First*, Courts recognize that the opinion of experienced counsel supporting settlement after vigorous arm's-length negotiation is entitled to considerable weight. *See Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.") (alteration in original); *Corzine v. Whirlpool Corp.*, 2019 WL 7372275, at *5 (N.D. Cal. Dec. 31, 2019)

---

[11] This standard for preliminary approval was established by amendments to Rule 23(e) effective on December 1, 2018. Previously, courts had developed a standard for preliminary approval through case law that was substantively similar but phrased differently. *See, e.g., In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2019 WL 387322, at *4 (N.D. Cal. Jan. 30, 2019) (Koh, J.).

("A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery."). Here, the Parties have litigated this Action since November 2018, and had adequate information to assess their respective positions. Indeed, at the time the Settlement was reached, the Parties were in the midst of a contentious discovery period after fully briefing two motions to dismiss. Therefore, Lead Plaintiff's and Lead Counsel's decision to settle was informed by, among other things: (i) an extensive pre-complaint investigation, including interviews (through in-house investigators) with former employees of Align; (ii) significant work responding to two motions to dismiss, including intensive research of the law applicable to the claims and defenses at issue; (iii) substantial discovery efforts, including Lead Counsel's receipt of 19,690 pages of documents from Defendants; (iv) briefing and arguing four discovery-related motions; (v) consulting with experts in the areas of market efficiency, loss causation, and damages; and (vi) two mediation sessions with Mr. Lindstrom, which involved briefing and extensive discussion regarding the perceived strengths and weakness of the claims and defenses at issue.

This matter has been hard fought by the Parties. The Settlement was reached only after the Parties exchanged voluminous fact discovery and participated in exhaustive meditations, allowing the Parties adequate time to "reasonably evaluate their respective positions." *Bright v. Dennis Garberg & Assocs., Inc.*, 2011 WL 13150437, at *2 (C.D. Cal. Aug. 24, 2011) (preliminarily approving pre-class certification settlement). Indeed, courts regularly find counsel adequately informed even where formal discovery has only just begun. *See, e.g.*, *Hefler*, 2018 WL 4207245, at *10 (granting preliminary approval even though the parties were "only at the outset of formal discovery"); *Sheikh v. Tesla, Inc.*, 2018 WL 5794532, at *5 (N.D. Cal. Nov. 2, 2018) (approving settlement where "[l]ittle formal discovery had been completed at the time of settlement, and the case [was] in its early stages").

Based on a well-informed understanding of the strengths and weaknesses of the Settlement Class's claims, Lead Counsel believes that the Settlement is in the best interests of the Settlement Class and avoids the substantial risk that the Settlement Class could recover less than the Settlement Amount, or nothing, if the Action were to continue. *See Ramirez v. Ghilotti Bros, Inc.*, 2014 WL 1607448, at *1 (N.D. Cal. Apr. 21, 2014) ("When class counsel is experienced and supports the settlement, and the agreement was reached after arm's length negotiations, courts should give a presumption of fairness to the settlement.").

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN
SUPPORT THEREOF

*Second*, Lead Counsel engaged in a rigorous negotiation process with Defendants' Counsel. The Parties' settlement negotiations were hard fought, and were facilitated by an experienced mediator, Mr. Lindstrom. *See* Declaration of Gregory P. Lindstrom submitted herewith ("Lindstrom Decl."). At Mr. Lindstrom's direction, the Parties submitted comprehensive mediation statements in connection with a first mediation session in November 2020. Lindstrom Decl., ¶ 7. Counsel for all Parties also remotely attended a formal settlement conference before Mr. Lindstrom and gave detailed and thoughtful presentations on the perceived strengths and weaknesses of their respective cases. *Id.*, ¶¶ 7-9. The first mediation between the Parties did not resolve the Action, and it was only after six months of additional litigation that the Parties reconvened to determine if common ground could be reached. *Id.*, ¶ 10. Even then, it took another formal mediation session overseen by Mr. Lindstrom in June 2021 before the Parties ultimately reached an agreement-in-principle to resolve the Action. *Id.*, ¶ 11. These additional hard-fought negotiations allowed the Parties to come to an agreement. Courts have recognized that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Betorina v. Randstad US, L.P.*, 2017 WL 1278758, at *7 (N.D. Cal. Apr. 6, 2017); *see also, e.g.*, *Chavez v. PVH Corp.*, 2015 WL 12915109, at *2 (N.D. Cal. Aug. 6, 2015).

*Finally*, throughout the Action and settlement negotiations, Defendants were aggressively represented by experienced counsel at Wilson Sonsini Goodrich & Rosati, P.C. Defendants' Counsel was therefore equally well-informed regarding the case and its representation of the Defendants was no less rigorous than Lead Counsel's representation of the Settlement Class. The fact that the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly-qualified mediator, supports preliminary approval. *See Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 399221, at *2 (N.D. Cal. Jan. 19, 2017) (granting preliminary approval where there was "arm's length negotiations among experienced counsel, following extensive discovery on both sides").

### 2. The Settlement's Terms Are Adequate

Rules 23(e)(2)(C) and 23(e)(2)(D) direct the Court to evaluate whether "the relief provided for the class is adequate" and "the proposal treats class members equitably relative to each other." Here, the Settlement represents a favorable result for the Settlement Class. Furthermore, Lead Counsel, with the assistance of Lead Plaintiff's damages consultant, has proposed a plan for allocating the Settlement

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF

proceeds that ensures all Settlement Class Members will be treated equitably relative to their respective losses.

### a. The Settlement provides substantial relief, especially in light of the costs, risks, and delay of further litigation

A key factor in assessing the approval of a proposed class action settlement is the plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. Here, the Settlement provides for a near-term, certain cash recovery of $16,000,000 to be allocated among Settlement Class Members following the deduction of Court-approved fees and expenses.

In comparison, if the Action had continued, Lead Plaintiff would have faced numerous risks that could have precluded it from securing any recovery at all on behalf of the Settlement Class. Securities cases, like the present one, are notoriously difficult and uncertain. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.") (O'Connor, J, sitting by designation).

Moreover, following the Court's September 2020 order on Defendants' second motion to dismiss, just one allegedly false and misleading statement remained in this case. As they did in their motions to dismiss, Defendants would be prepared to argue at summary judgment and trial that the remaining statement was not materially false and misleading. Defendants would also have continued to argue that the allegedly omitted information regarding Align's promotion in the third quarter of 2018 was immaterial given that the market was already aware that Align regularly engaged in marketing and promotional activities. *See* ECF No. 122. In so doing, Defendants would have seized upon the Court's observation that "it is a close call with respect to both the falsity and the materiality of the statement." ECF No. 138 at 23. Lead Plaintiff would also have faced challenges proving that the individual Defendants acted with the requisite scienter. *See In re Charles Schwab Corp. Sec. Litig.*, 2011 U.S. Dist. LEXIS 44547, at *19 (N.D. Cal. Apr. 19, 2011) ("[P]rosecuting these claims through trial and subsequent appeals would have involved significant risk, expense, and delay to any potential recovery . . . risks included proving loss causation and the falsity of the representations at issue.").

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF

Even if Lead Plaintiff could clear these hurdles and establish that the remaining statement was materially false and misleading and that Defendants acted with the requisite scienter, Defendants would have presented loss causation and damages arguments and expert analysis that had the potential to substantially decrease any recovery available to the Settlement Class. *See In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial. . . . Lead Plaintiff would risk recovering nothing without a settlement."); *Luna v. Marvell Tech. Grp.*, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at trial). For example, Defendants would have argued that a large portion of the Company's average sales price ("ASP") decline and resulting stock price decline on October 25, 2018, was caused not by the promotional activity at issue in the Action, but instead by non-fraud related factors like a change in the exchange rate and a shift in Align's product mix. Indeed, on October 25, 2018, Defendants publicly represented that just 36% of the ASP decline was the result of promotional activities, with the remainder attributable to the product mix and exchange rate shifts. Thus, while total potential damages for the non-dismissed claims were approximately $482 million as estimated by Lead Plaintiff's damages consultant, if Defendants' argument prevailed, recoverable damages would have decreased significantly to $174.6 million. The Settlement thus represents between 3.3% and 9.1% of likely recoverable damages according to Lead Plaintiff's damages consultant.[12]

This recovery must be compared to the real risk that the Settlement Class would recover nothing after summary judgment, trial, and likely appeals, possibly years into the future. *See Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) (recognizing the "significant risk that continued litigation might yield a smaller recovery or no recovery at all"); *Gross v. Symantec Corp.*, 2014 U.S. Dist. LEXIS 182986, at *3 (N.D. Cal. Mar. 21, 2014) (settlement consideration was reasonable given "the

---

[12]     Cornerstone Research reported that in 2020, the median securities class action settlement amount was 1.0% of estimated damages for cases with estimated damages between $250 and $499 million, and over the prior two+ decades (1996 through 2019), the median settlement amount for such cases was 3.0% of estimated damages. For cases with estimated damages between $150 and $249 million, the median securities class action settlement amount was 3.0% of estimated damages for years 1996 through 2020. *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis*, Cornerstone Research, Appendix 2 at p. 18 (2020), http://www.cornerstone.com/Publications/Reports/Securities-Class-Action-Settlements-2020-Review-and-Analysis.

potential risks and likelihood of success of alternatively pursuing trial on the merits"); *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) ("[F]urther litigation would entail substantial risk to the class of recovering nothing. . . . Additional consideration of increased expenses of fact and expert discovery and the inherent risks of proceeding to summary judgment, trial and appeal also support the settlement."). Given the foregoing risks and after substantial discovery and research, Lead Plaintiff and Lead Counsel have concluded that $16,000,000 is reasonable, fair, and represents a favorable recovery for the Settlement Class.

### b.   The proposed Settlement does not unjustly favor any Settlement Class Member

The Court must also ultimately assess the Settlement's effectiveness in equitably distributing the Net Settlement Fund to Settlement Class Members. Rule 23(e)(2)(C)(ii). Here, too, the Court can readily find that the Settlement will likely earn approval. The Plan of Allocation that Lead Plaintiff proposes (the "Plan") was formulated in close consultation with Lead Plaintiff's damages consultant, and provides for a straightforward and effective means of equitably distributing the Net Settlement Fund to eligible Settlement Class Members. *See* Rule 23(e)(2)(D).

The Plan provides for distribution of the Net Settlement Fund to Settlement Class Members who submit timely and valid Claim Forms demonstrating that they purchased or otherwise acquired Align common stock during the Settlement Class Period and suffered a loss as a result of the conduct alleged in the Action. The formula to apportion the Net Settlement Fund among Settlement Class Members is based on when they purchased/acquired and sold their shares of Align common stock. In particular, Lead Plaintiff's damages consultant estimated the amount of artificial inflation in Align' stock price on each day of the Settlement Class Period, and developed a formula to apply that inflation ribbon to Settlement Class Members' transactions to determine their Recognized Loss Amounts. The Plan also takes into account the Court's September 9, 2020 Order on Defendants' motion to dismiss, which dismissed with prejudice certain alleged misstatements in the Amended Consolidated Complaint, most of which were made prior to or within hours after the close of the market on July 25, 2018. As a result of their dismissal with prejudice, it is far less likely that Lead Plaintiff could prevail on these claims. Accordingly, the Plan discounts Recognized Loss Amounts for purchases of Align common stock from May 23, 2018 through July 25,

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF

2018, inclusive by 90% (i.e., the Recognized Loss Amounts for this period will be multiplied by 0.10) to reflect the significantly lesser likelihood of success on these dismissed claims. *See In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *19 (C.D. Cal. July 28, 2014) (approving a similar method); *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 n.4 (S.D. Cal. Dec. 6, 2018) (same). Lead Plaintiff's damages consultant developed the Plan without consideration of Lead Plaintiff's individual transactions.[13]

Each Settlement Class Member will receive a *pro rata* distribution of the Net Settlement Fund based on his, her, or its Recognized Claim as a percentage of the total Recognized Claims of all Settlement Class Members. This method ensures Settlement Class Members' recoveries are based upon the relative losses they sustained, and that eligible Settlement Class Members will receive distributions calculated in the same manner. Accordingly, the Plan applies in an equitable manner to all Settlement Class Members. *See Extreme Networks*, 2019 WL 3290770, at *8 (finding *pro rata* allocation "did not constitute improper preferential treatment" and was "equitable"); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").[14]

### c.   The anticipated request for attorneys' fees is reasonable

As set forth in the Notice, Lead Counsel intends to apply to the Court for an award of attorneys' fees in an amount not to exceed 20% of the Settlement Fund, which is below the benchmark percentage for attorneys' fees in the Ninth Circuit. *See*, *e.g.*, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934,

---

[13]   As set forth in the proposed Notice (Ex. A-2 to the Stipulation), based on Lead Plaintiffs' damages consultant's estimate of the number of shares of Align common stock eligible to participate in the Settlement, and assuming that all investors eligible to participate do so, the estimated average recovery per eligible share of Align common stock (before deduction of any Court-approved fees and expenses, taxes, and administration costs) will be approximately $1.37. This is only an estimate, and some Settlement Class Members may recover more or less than this amount per share depending on: (i) when and the price at which they purchased/acquired shares of Align common stock; (ii) whether they sold their shares of Align common stock; (iii) the total number and value of valid Claims submitted; (iv) the amount of Notice and Administration Costs; and (v) the amount of attorneys' fees and Litigation Expenses awarded by the Court.

[14]   Pursuant to the Plan, if the funds remaining following distribution of the Net Settlement Fund to eligible Settlement Class Members are so small that a redistribution would not be economically feasible, Lead Counsel shall contribute the balance, subject to Court approval, to Charitable Smiles, a 501(c)(3) organization helping people who cannot afford dental treatment get the care they need. *See* Stip,, ¶ 29. The Parties do not have any relationship to the proposed *cy pres* recipient.

949 (9th Cir. 2015). In complex securities class actions such as this one, courts in this Circuit routinely awarded fee percentages greater than 20%. *See, e.g., Mauss*, 2018 WL 6421623, at *7 (approving fee award of 30% of settlement fund); *Mild*, 2019 WL 3345714, at *5 (preliminarily approving fee award of 27 % of settlement fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457 (9th Cir. 2000) (awarding one-third of total recovery); *Pac. Enters.*, 47 F.3d at 379 (awarding 33% of settlement fund). Further, Lead Plaintiff's fee request is made in accordance with an *ex ante* retainer agreement with the sophisticated Lead Plaintiff.

The maximum fee request is also reasonable in light of Lead Counsel's lodestar, a figure calculated by multiplying the hours expended to date on the Action by Lead Counsel for each attorney and professional by their respective hourly rates. Based on an initial review of its contemporaneous time records, Lead Counsel has devoted approximately 4,375 hours to the Action with an estimated total lodestar value of approximately $2.7 million. If preliminary approval is granted, Lead Counsel will present its total lodestar in connection with its fee application at the final approval stage, after further detailed review and adjustment of its contemporaneous daily time entries to account for billing judgment. Lead Counsel anticipates that a fee of 20% of the Settlement (i.e., $3.2 million plus interest) will result in a lodestar multiplier of approximately 1.19 which is on the lower end of the range of multipliers commonly awarded in class actions and other similar cases. *See, e.g., Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (awarding fee representing a 3.22 multiplier); *In re N.C.A.A. Athletic Grant-in-Aid Cap Antitrust Litig.*, 2017 WL 6040065, at *7-9 (N.D. Cal. Dec. 6, 2017) (awarding fee representing a 3.66 multiplier), *aff'd*, 768 Fed. App'x 651 (9th Cir. 2019); *see generally Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050-52 & 1051 n.6 (9th Cir. 2002) (affirming 3.65 multiplier on appeal and finding that multipliers ranged as high as 19.6, with the most common range from 1.0 to 4.0). The requested attorneys' fees would befit the substantial risks Lead Counsel undertook in pursuing this Action, its extensive litigation efforts, and the recovery obtained for the benefit of the Settlement Class.

In addition to attorneys' fees, Lead Counsel also intends to apply for reimbursement of Litigation Expenses incurred in connection with the institution, prosecution, and resolution of the claims on behalf of the Settlement Class, in an amount not to exceed $250,000. *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (plaintiff may recover "those out-of-pocket expenses that would normally be charged to a

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF

fee paying client").[15] A large portion of Lead Counsel's expenses, approximately $80,000, was incurred in connection with the retention of Lead Plaintiff's consultants. This amount also includes the costs for document management, mediation, and on-line research, among other costs.

Any attorneys' fees and Litigation Expenses awarded by the Court will be paid from the Settlement Fund.[16] *See* Stip., ¶ 10. As noted above, Lead Counsel will submit further briefing in support of its request for attorneys' fees and Litigation Expenses at the final approval stage. At this juncture, however, Lead Counsel respectfully submits that the anticipated request for attorneys' fees and Litigation Expenses is reasonable and justifies notice to the Settlement Class.

### d.    Lead Plaintiff has identified all agreements made in connection with the Settlement

In addition to the Term Sheet and Stipulation, the Parties have entered into a standard, confidential Supplemental Agreement which gives Align the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class exceed certain agreed-upon conditions ("Opt-Out Threshold"). *See* Stip., ¶ 39. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g., Hefler*, 2018 WL 4207245, at *11 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."). As is standard practice in securities class actions, the full terms of the Supplemental Agreement are not made public to avoid incentivizing the formation of a group

---

[15]    *See also, e.g., Avila v. LifeLock Inc.*, 2020 WL 4362394, at *2 (D. Ariz. July 27, 2020) (awarding $350,000 in litigation expenses from a $20 million settlement fund); *In re Yahoo! Inc. Sec. Litig.*, No. 17-cv-00373, ECF No. 119, ¶ 4 (N.D. Cal. Sept. 7, 2018) (awarding $353,282.72 in litigation expenses from a $80 million settlement fund); *In re Banc of Cal. Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019) (preliminarily approving expenses of $1.7 million from a $19.75 million settlement fund).

[16]    Additionally, the proposal that Lead Counsel receives its award of attorneys' fees and Litigation Expenses upon issuance of an order awarding such fees and expenses is appropriate and consistent with common practice in cases of this nature. *See* Stip., ¶ 17 ("Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel immediately upon award . . . subject to Lead Counsel's obligation to make appropriate refunds . . . if the Settlement is terminated pursuant to the terms of this Stipulation or . . . the award of attorneys' fees and/or Litigation Expenses is reduced or reversed . . . ."); *see also, e.g., NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at *1 (S.D.N.Y. May 2, 2016) ("[T]he fees and expenses awarded herein shall be paid from the Settlement Fund to Lead Counsel immediately upon entry of this Order, notwithstanding the existence of any timely filed objections thereto, if any, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to repay all such amounts with interest[.]"); *In re AXA Rosenberg Inv'r Litig.*, 2012 WL 12920617, at *2 (N.D. Cal. Apr. 2, 2012) (similar).

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF

of opt-outs for the sole purpose of triggering the Opt-Out Threshold and extracting an individual settlement. Pursuant to its terms, the Supplemental Agreement is being submitted to the Court, with the Out-Out Threshold filed under seal. *See* Stip., ¶ 39; *see also* Joost Decl., Ex. 4.

The Stipulation (and preceding Term Sheet) and the Supplemental Agreement are the only agreements the Parties entered into concerning the Settlement.

## VI.    THE COURT SHOULD APPROVE THE FORM, CONTENT, AND METHOD FOR DISSEMINATING NOTICE TO THE SETTLEMENT CLASS

Rule 23(c)(2)(B) requires notice of a settlement to be "the best notice that is practicable under the circumstances." Further, Rule 23(e)(1)(B) requires that such notice be directed "in a reasonable manner to all class members who would be bound by the propos[ed settlement]." The notices "must generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (alteration in original).[17]

Here, the proposed Notice includes all of the information required by the Federal Rules, the PSLRA,[18] and this District's *Procedural Guidance for Class Action Settlements*.[19] In particular, the

---

[17]    The notice must explain in basic terms the nature of the action, class definition, class claims, issues and defenses, ability to appear through individual counsel, procedure to request exclusion, and binding nature of a class judgment. Fed. R. Civ. P. 23(b)(3); *Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 624 (N.D. Cal. 2014).

[18]    Under the PSLRA, notices must state: (1) "[t]he amount of the settlement," both "in the aggregate and on an average per share basis;" (2) "[i]f the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged under this chapter, a statement from each settling party concerning the issue or issues on which the parties disagree;" (3) "a statement indicating which parties or counsel intend to make [] an application [for attorneys' fees or costs], the amount of fees and costs that will be sought (including the amount of such fees and costs determined on an average per share basis), and a brief explanation supporting the fees and costs sought;" (4) "[t]he name, telephone number, and address of one or more representatives of counsel for the plaintiff class who will be reasonably available to answer questions from class members . . .;" and (5) briefly, "the reasons why the parties are proposing the settlement." 15 U.S.C. §78u-4(a)(7).

[19]    Pursuant to N.D. Cal Guid., ¶ 3:

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN SUPPORT THEREOF

proposed Notice describes in clear and simple terms the Settlement, as well as: (i) the nature, history, and status of the litigation; (ii) the definition of the proposed Settlement Class and who is excluded; (iii) the reasons for the Settlement; (iv) the amount of the Settlement; (v) the estimated average recovery per damaged share; (vi) the Settlement Class's claims; (vii) the Parties' disagreement over damages and liability; (viii) the maximum amount of attorneys' fees and expenses that Lead Counsel intends to seek; (ix) the Plan of Allocation; and (x) the date, time, and location of the Final Approval Hearing. The proposed Notice also discusses Settlement Class Members' rights to: (i) request exclusion from the Settlement Class and the manner for submitting such request; (ii) object to the Settlement, or any aspect thereof, and the manner for filing an objection; and (iii) participate in the Settlement and instructions on how to complete and submit a Claim Form. The Notice also provides contact information for Lead Counsel and the Court.

Further, Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." The proposed notice satisfies these requirements; both the proposed Notice and Summary Notice specifically advise Settlement Class Members that Lead Counsel will apply to the Court for attorneys' fees not to exceed 20% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $250,000 to be paid from the Settlement Fund. *See* Stip., ¶¶ 1(bb), 1(tt); Stip. Exs. A-1 and A-3.

Lead Plaintiff's proposed method for disseminating notice to the Settlement Class also satisfies the applicable standards. Lead Plaintiff respectfully requests that the Court authorize the retention of JND, an experienced and diligent class action claims administrator. *See* Declaration of Luiggy Segura submitted

---

The notice should include the following information: (1) contact information for class counsel to answer questions; (2) the address for a website, maintained by the claims administrator or class counsel, that has links to the notice, motions for approval and for attorneys' fees and any other important documents in the case; (3) instructions on how to access the case docket via PACER or in person at any of the court's locations. The notice should state the date of the final approval hearing and clearly state that the date may change without further notice to the class. Class members should be advised to check the settlement website or the Court's PACER site to confirm that the date has not been changed. The notice distribution plan should be an effective one.

The N.D. Cal. Guid. also provides instructions and suggested language regarding opt-opts and objections for inclusion in the Notice (*id.*, ¶¶ 4-5) and this language has been incorporated into the proposed notices. *See* Stip. Exs. A-1 and A-3.

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN
SUPPORT THEREOF

herewith ("Segura Decl.").[20] Consistent with Rules 23(c)(2)(B) and 23(e)(1), Lead Plaintiff proposes that JND will carry out a robust campaign to identify and disseminate notice to Settlement Class Members through direct mailing and/or e-mailing of the Notice, publication of the Summary Notice,[21] and a dedicated settlement website.[22]

JND estimates that Notice and Administration Costs for this Settlement, which shall be paid out of the Settlement Fund, will be between $300,000 and $375,000. Segura Decl., ¶ 23. This is an estimate, given that the administration has not yet commenced. *Id.*, ¶ 25. Notice and Administration Costs will largely depend upon the number of Notice Packets mailed and the number of Claim Forms submitted for processing. *Id.* In light of JND's experience in other recent settlements of similar claims, including *In re Yahoo! Inc. Sec. Litig.*, No. 17-CV-00373-LHK (N.D. Cal.), *Palazzolo, et al. v. Fiat Chrysler Autos. N.V., et al.*, No. 4:16-cv-12803-LVP-SDD (D. Mich.), and *Rabkin v. Lion Biotechnologies, Inc., et al.*, No. 3:17-cv-02086-SI (N.D. Cal.), JND estimates that approximately 15% to 25% of the potential Settlement Class Members to whom notice is mailed will submit claims. Segura Decl., ¶ 15. The Claims Administrator's costs are necessary in order to effectuate the Settlement and, as estimated, at approximately 1.9% to 2.3% of the total Settlement Amount, are reasonable in relation to the value of the Settlement. *Id.*, ¶ 24; *see also* N.D. Cal. Guid., ¶ 2 (preliminary approval motion should identify "proposed settlement administrator" and discuss anticipated costs, their reasonableness, and who will pay them); *see also, e.g.*, *Vataj*, 2021 WL 1550478, at *3 (preliminarily approving $265,000 in administration costs from a $10 million settlement fund); *In re Yahoo! Inc. Sec. Litig.*, No. 17-CV-00373-LHK, ECF No. 131 at 1 (N.D. Cal. Apr. 17, 2020)

---

[20]     The Segura Declaration includes the following information required by N.D. Cal. Guid., ¶ 1(g) (an estimate of the number and/or percentage of class members who are expected to submit a claim and related information); ¶ 2 (the methods of notice and claims payment proposed and the anticipated administrative costs, the reasonableness of those costs in relation to the value of the settlement, and who will pay the costs); and ¶ 11 (past distributions).

[21]     The proposed Notice and Summary Notice are attached as Exs. A-1 and A-3, respectively, to the Stipulation. The Summary Notice will be published as set forth in the Preliminary Approval Order and will provide additional notice of the (i) pendency of the Action and proposed Settlement; (ii) Final Approval Hearing; and (iii) Motion for Attorneys' Fees and Litigation Expenses. *See* Stip., ¶ 1(tt).

[22]     No later than ten calendar days following the filing of the Stipulation with the Court, Defendants shall serve the notice required under the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, et seq. ("CAFA"). *See* Stip., ¶ 21; N.D. Cal. Guid., ¶ 10. Prior to the Final Approval Hearing, Defendants will provide proof, by affidavit or declaration, regarding their compliance with CAFA.

(reporting notice and administration costs represented 3.6% of settlement); *Extreme Networks*, 2019 WL 3290770, at *2, *12 (approving $500,000 in administration costs from a $7 million settlement fund).

Courts routinely find that comparable notice procedures meet the requirements of due process and Rule 23. *See, e.g.*, *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2018 WL 6198311, at *8 (N.D. Cal. Nov. 28, 2018) (approving direct mail notice as it would "provide individual notice to identifiable class members as required by Rule 23(c)(2)")*; In re Portal Software, Inc. Sec. Litig.*, 2007 WL 1991529, at *7 (N.D. Cal. June 30, 2007) (holding that "notice by mail and publication is the best notice practicable under the circumstances, as mandated by FRCP 23(c)(2)(B)"). Accordingly, in granting preliminary approval of the Settlement, Lead Plaintiff respectfully requests that the Court approve the proposed form and method of providing notice to the Settlement Class.

## VII.   THE PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE

In considering the proposed Plan of Allocation, the Court must determine whether the Plan is fair and reasonable, and equitably distributes the Net Settlement Fund amongst Settlement Class Members. *See In re High-Tech Emp. Antitrust Litig.*, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015). As discussed in *supra* Section V.B.2.b., the Plan, which was developed in close collaboration with Lead Plaintiff's damages consultant, ensures that Settlement Class Members' recoveries are based upon the relative losses they sustained as a result of the conduct alleged in the Action, and that eligible Settlement Class Members will receive a *pro rata* distribution from the Net Settlement Fund calculated in the same manner.

Courts have previously found plans that award *pro rata* shares to each class member to be fair and reasonable. *See, e.g.*, *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding a plan that awards a *pro rata* share of the net settlement fund to be "a fair and reasonable method of distributing settlement proceeds"); *In re RH, Inc. Sec. Litig.*, 2019 WL 5538215, at *20 (N.D. Cal. Oct. 25, 2019) (approving plan of allocation using *pro rata* shares). Accordingly, the Plan is fair, reasonable, and applies in an equitable manner to all Settlement Class Members.

## VIII.   PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events (i.e., mailing of the Notice, publication of the Summary Notice, filing of supporting briefs,

deadlines for requesting exclusion from the Settlement Class, objecting to the Settlement, submitting

Claims, and the Final Approval Hearing). The Parties propose the following schedule:

| Event | Proposed Time for Compliance |
|---|---|
| Deadline for mailing the Notice and Claim Form to Settlement Class Members[23] ("Notice Date") | 20 business days after the Court's entry of the Preliminary Approval Order (Preliminary Approval Order, ¶ 7(b)) |
| Deadline for publishing the Summary Notice[24] | 10 business days after the Notice Date (Preliminary Approval Order, ¶ 7(d)) |
| Deadline for filing papers in support of final approval of the Settlement, plan of allocation, and Lead Counsel's request for attorneys' fees and Litigation Expenses | 42 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶ 27) |
| Deadline for requesting exclusion from the Settlement Class or filing an objection to the Settlement, plan of allocation, and/or Lead Counsel's request for attorneys' fees and Litigation Expenses | 28 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶¶ 14, 18)[25] |
| Deadline for filing reply papers | 7 calendar days prior to the Final Approval Hearing (Preliminary Approval Order, ¶ 27) |
| Final Approval Hearing | 135 calendar days following entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order, ¶ 5) |
| Deadline for submitting Claim Forms | 100 calendar days after the Notice Date (Preliminary Approval Order, ¶ 11) |

## IX.    CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter the [Proposed]

Order Preliminarily Approving Settlement and Providing for Notice submitted herewith, which will:

(i) provisionally certify the proposed Settlement Class for settlement purposes; (ii) appoint Lead Plaintiff

as class representative and Lead Counsel as class counsel for settlement purposes; (iii) preliminarily

approve the Settlement; (iv) authorize retention of JND as the Claims Administrator for the Settlement;

---

[23]     *See* Exhibits A-1 and A-2 to the Stipulation.

[24]     *See* Exhibit A-3 to the Stipulation.

[25]     Under this proposed schedule, Settlement Class Members will have more than 35 days to request exclusion from the Settlement Class or submit objections to the Settlement and/or request for attorneys' fees and expenses. N.D. Cal. Guid., ¶ 9.

(v) approve the form, content, and method of disseminating notice of the Settlement to the Settlement Class; and (vi) schedule a hearing date and time to consider final approval of the Settlement and related matters.

Respectfully submitted,

Dated: July 15, 2021

**KESSLER TOPAZ**
**   MELTZER & CHECK, LLP**

*/s/ Jennifer L. Joost*
Jennifer L. Joost (Bar No. 296164)
Stacey M. Kaplan (Bar No. 241989)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
jjoost@ktmc.com
skaplan@ktmc.com

– and –

**KESSLER TOPAZ**
**   MELTZER & CHECK, LLP**
Johnston de F. Whitman, Jr. (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jwhitman@ktmc.com

*Counsel for Lead Plaintiff SEB Investment*
*Management AB*
*and Lead Counsel for the Class*

LEAD PLAINTIFF'S NOTICE OF UNOPPOSED MOTION AND UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, AND MEMORANDUM IN
SUPPORT THEREOF

**APPENDIX A**

| N.D. Cal. Procedural Guidance for Class Action Settlements<br>Items to Address at Preliminary Approval | Where Procedural Guidance is<br>Addressed in Papers |
|---|---|
| **1.  INFORMATION ABOUT THE SETTLEMENT** | |
| (a)  If a litigation class has not been certified, any differences between the settlement class and the class proposed in the operative complaint and an explanation as to why the differences are appropriate in the instant case. | **Memorandum p. 6 n.6** |
| (b)  If a litigation class has been certified, any differences between the settlement class and the class certified and an explanation as to why the differences are appropriate in the instant case. | **N/A** |
| (c)  If a litigation class has not been certified, any differences between the claims to be released and the claims in the operative complaint and an explanation as to why the differences are appropriate in the instant case. | **Memorandum p. 5** |
| (d)  If a litigation class has been certified, any differences between the claims to be released and the claims certified for class treatment and an explanation as to why the differences are appropriate in the instant case. | **N/A** |
| (e)  The anticipated class recovery under the settlement, the potential class recovery if plaintiffs had fully prevailed on each of their claims, and an explanation of the factors bearing on the amount of the compromise. | **Memorandum pp. 14-16, 17 n.13;<br>Proposed Notice pp. 2, 6** |
| (f)  The proposed allocation plan for the settlement fund. | **Memorandum pp. 16-17, 23<br>Proposed Notice Appx. A** |
| (g)  If there is a claim form, an estimate of the number and/or percentage of class members who are expected to submit a claim in light of the experience of the selected claims administrator and/or counsel from other recent settlements of similar cases, the identity of the examples used for the estimate, and the reason for the selection of those examples. | **Segura Decl., ¶ 15** |
| (h)  In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the potential amount or range of amounts of any such reversion, and an explanation as to why a reversion is appropriate in the instant case. | **Memorandum p. 5<br>Stipulation, ¶ 14** |
| **2.  SETTLEMENT ADMINISTRATION** | |
| •  Identify proposed settlement administrator. | **Memorandum pp. 21-22<br>Segura Decl. at Ex. A** |
| •  Identify the settlement administrator selection process. | **Joost Decl., ¶¶ 2-4** |
| •  Identify how many settlement administrators submitted proposals. | **Joost Decl., ¶ 2** |
| •  Identify what methods of notice and claims payment were proposed. | **Joost Decl., ¶ 3<br>Segura Decl., ¶¶ 4-14, 20** |
| •  Identify lead counsel's firm's history of engagements with the settlement administrator over the last two years. | **Joost Decl., ¶ 4** |
| •  Address the anticipated administrative costs, the reasonableness of these costs in relation to value of the settlement, and who will pay the costs. | **Memorandum pp. 22-23<br>Segura Decl., ¶¶ 23-25** |

1

| **N.D. Cal. Procedural Guidance for Class Action Settlements<br>Items to Address at Preliminary Approval** | **Where Procedural Guidance is<br>Addressed in Papers** |
|---|---|
| **3. NOTICE** | |
| • The parties should ensure that the class notice is easily understandable, taking into account any special concerns about the education level or language needs of the class members. | ***See generally* Proposed notices** |
| • The notice should include contact information for class counsel to answer questions. | **Proposed Notice, ¶ 59<br>Proposed Summary Notice p. 3** |
| • The notice should include the address for a website, maintained by the claims administrator or class counsel, that has links to the notice, motions for approval and for attorneys' fees and any other important documents in the case. | ***See generally* Proposed notices** |
| • The notice should include instructions on how to access the case docket via PACER or in person at any of the court's locations. | **Proposed Notice, ¶ 58** |
| • The notice should state the date of the final approval hearing and clearly state that the date may change without further notice to the class. Class members should be advised to check the settlement website or the Court's PACER site to confirm that the date has not been changed. | **Proposed Notice, ¶ 49** |
| • The notice distribution plan should be an effective one. | **Memorandum pp. 16-17, 23<br>Proposed Notice Appx. A** |
| • Class counsel should consider the following ways to increase notice to class members: identification of potential class members through third-party data sources; use of social media to provide notice to class members; hiring a marketing specialist; providing a settlement website that estimates claim amounts for each specific class member and updating the website periodically to provide accurate claim amounts based on the number of participating class members; and distributions to class members via direct deposit. | ***See generally* Segura Decl.** |
| • The notice distribution plan should rely on U.S. mail, email, and/or social media as appropriate to achieve the best notice that is practicable under the circumstances, consistent with Federal Rule of Civil Procedure 23(c)(2). If U.S. mail is part of notice distribution plan, notice envelope should be designed to enhance the chance that it will be opened. | **Segura Decl., ¶ 5** |
| • Inclusion of suggested language for class notice:<br><br>This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at www._____.com, by contacting class counsel at _____, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, *[insert appropriate Court location here]*, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.<br><br>PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT OR THE CLAIM PROCESS. | **Proposed Notice, ¶ 58** |

| N.D. Cal. Procedural Guidance for Class Action Settlements Items to Address at Preliminary Approval | Where Procedural Guidance is Addressed in Papers |
|---|---|
| **4.  OPT-OUTS** | |
| • The notice should instruct class members who wish to opt out of the settlement to send a letter, setting forth their name and information needed to be properly identified and to opt out of the settlement, to the settlement administrator and/or the person or entity designated to receive opt outs. It should require only the information needed to opt out of the settlement and no extraneous information. The notice should clearly advise class members of the deadline, methods to opt out, and the consequences of opting out. | **Proposed Notice, ¶¶ 44-45** |
| **5.  OBJECTIONS** | |
| • Objections must comply with Federal Rule of Civil Procedure 23(e)(5). | **Proposed Notice, ¶¶ 51-54** |
| • The notice should instruct class members who wish to object to the settlement to send their written objections only to the court. The notice should make clear that the court can only approve or deny the settlement and cannot change the terms of the settlement. The notice should clearly advise class members of the deadline for submission of any objections. | **Proposed Notice, ¶¶ 51-54** |
| • Inclusion of suggested language for class notice:<br><br>"You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out and the lawsuit will continue. If that is what you want to happen, you must object.<br><br>Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (_____ v. _____, Case Number _____), (b) be submitted to the Court either by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, *[insert appropriate Court location here]*, or by filing them in person at any location of the United States District Court for the Northern District of California, and (c) be filed or postmarked on or before _____." | **Proposed Notice, ¶¶ 51-52** |
| **6.  ATTORNEYS' FEES** | |
| • In a common fund case, the parties should include information about the relationship among the amount of the award, the amount of the common fund, and counsel's lodestar calculation. | **Memorandum pp. 17-19** |
| • To the extent counsel base their fee request on having obtained injunctive relief and/or other non-monetary relief for the class, counsel should discuss the benefit conferred on the class. | **N/A** |
| • Counsel's lodestar calculation should include the total number of hours billed to date and the requested multiplier, if any. | **Memorandum p. 18** |

| N.D. Cal. Procedural Guidance for Class Action Settlements<br>Items to Address at Preliminary Approval | Where Procedural Guidance is<br>Addressed in Papers |
|---|---|
| • Additionally, counsel should state whether and in what amounts they seek payment of costs and expenses, including expert fees, in addition to attorneys' fees. | **Memorandum pp. 18-19** |
| **7.  INCENTIVE AWARDS** | |
| • The parties should include information about the incentive awards they intend to request as well as the evidence supporting the awards. The parties should ensure that neither the size nor any conditions placed on the incentive awards undermine the adequacy of the named plaintiffs or class representatives. | **N/A** |
| **8.  CY PRES AWARDEES** | |
| • If the settlement contemplates a cy pres award, the parties should identify their chosen cy pres recipients, if any, and how those recipients are related to the subject matter of the lawsuit and the class members. | **Memorandum p. 17 n.14<br>Stipulation, ¶ 29<br>Proposed Notice Appx. A, ¶ 11** |
| • The parties should also identify any relationship they or their counsel have with the proposed cy pres recipients. | **Memorandum p. 17 n.14** |
| **9.  TIMELINE** | |
| • The parties should ensure that class members have at least thirty-five days to opt out or object to the settlement and the motion for attorney's fees and costs. | **Memorandum p. 24 n.25** |
| **10.  CLASS ACTION FAIRNESS ACT (CAFA)** | |
| • The parties should address whether CAFA notice is required and, if so, when it will be given. In addition the parties should address substantive compliance with CAFA. | **Memorandum p. 22 n.22<br>Stipulation, ¶ 21** |
| **11.  PAST DISTRIBUTIONS** | |
| • Lead class counsel should provide the following information for at least one of their past comparable class settlements (i.e. settlements involving the same or similar clients, claims, and/or issues):<br><br>The total settlement fund, the total number of class members, the total number of class members to whom notice was sent, the method(s) of notice, the number and percentage of claim forms submitted, the average recovery per class member or claimant, the amounts distributed to each cy pres recipient, the administrative costs, and attorneys' fees and costs. | **Segura Decl., ¶ 22, Ex. B** |
| • Where class members are entitled to non-monetary relief, such as discount coupons or debit cards or similar instruments, the number of class members availing themselves of such relief and the aggregate value redeemed by the class members and/or by any assignees or transferees of the class members' interests. Where injunctive and/or other non-monetary relief has been obtained, discuss the benefit conferred on class. | **N/A** |
| • Counsel should summarize this information in easy-to-read charts that allow for quick comparisons with other cases. | **Segura Decl., Ex. B** |