**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
JENNIFER L. JOOST (Bar No. 296164)
STACEY M. KAPLAN (Bar No. 241989)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Tel:  (415) 400-3000
Fax:  (415) 400-3001
jjoost@ktmc.com
skaplan@ktmc.com

[Additional Counsel on Signature Page.]

*Counsel for Lead Plaintiff SEB Investment Management AB*
*and Lead Counsel for the Settlement Class*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SEB INVESTMENT MANAGEMENT AB, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ALIGN TECHNOLOGY, INC., JOSEPH M. HOGAN, and JOHN F. MORICI, <br><br> Defendants. | Case No. 3:18-cv-06720-VC <br><br> <u>CLASS ACTION</u> <br><br> **LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Hearing Date:  April 28, 2022 <br> Time:  1:30 p.m. <br> Courtroom:  4, 17th Floor <br> Judge:  Hon. Vince Chhabria |

## TABLE OF CONTENTS

Page

STATEMENT OF ISSUES TO BE DECIDED ....................................................................1

I.     PRELIMINARY STATEMENT ...............................................................................2

II.    THE SETTLEMENT WARRANTS FINAL APPROVAL..........................................5

       A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement
             Class in the Action..........................................................................................7

       B.    The Settlement Is the Product of Arm's-Length Negotiations Between
             Experienced Counsel and Two Mediations with an Experienced Neutral ........8

       C.    The Settlement Provides the Settlement Class Adequate Relief, Considering the
             Costs, Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors ....10

             1.     The Amount Offered in Settlement.........................................................10

             2.     The Strength of Lead Plaintiff's Case....................................................11

             3.     The Complexity, Expense, and Duration of Continued Litigation .........14

             4.     Risk of Maintaining Class Action Status ...............................................15

             5.     The Extent of Discovery Completed and the Stage of Proceedings .......16

             6.     The Experience and Views of Counsel....................................................16

             7.     Existence of a Governmental Investigation ...........................................17

             8.     The Reaction of Settlement Class Members to Date ..............................17

       D.    The Remaining Rule 23(e)(2) Factors Also Support Final Approval...............18

III.   THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND
       WARRANTS FINAL APPROVAL ..........................................................................20

IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ..........................21

V.     NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23,
       DUE PROCESS, AND THE PSLRA ........................................................................22

VI.    CONCLUSION........................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Anthem, Inc. Data Breach Litig.*,
  327 F.R.D. 299 (N.D. Cal. 2018)................................................................................9

*In re Apollo Grp., Inc. Sec. Litig.*,
  2010 WL 5927988 (9th Cir. June 23, 2010) .......................................................12

*In re Biolase, Inc. Sec. Litig.*,
  2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) .....................................................11

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ..............................................................................8, 9

*In re Broadcom Corp. Sec. Litig.*,
  2005 WL 8153007 (C.D. Cal. Sept. 14, 2005) .....................................................11

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ...........................................................................5, 6

*In re Celera Corp. Sec. Litig.*,
  2015 WL 7351449 (N.D. Cal. Nov. 20, 2015) ....................................................14

*In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2019 WL 2554232 (N.D. Cal. May 3, 2019).........................................................6

*Churchill Vill., L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) ....................................................................... *passim*

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ..........................................................................6, 20

*Destefano v. Zynga, Inc.*,
  2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...........................................10, 16, 23

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336 (2005)..........................................................................................13, 15

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)................................................................................................22

*Ellis v. Costco Wholesale Corp.*,
  657 F.3d 970 (9th Cir. 2011) ..................................................................................7

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019).......................................................11

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) ..................................................................17

*Hampton v. Aqua Metals, Inc.*,
  2021 WL 4553578 (N.D. Cal. Oct. 5, 2021) ..............................................................20, 21

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ...............................................................................6, 8

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012)..............15

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ...............................................................23

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4. 2018) ...........................................................9, 19

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................................6

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ...............................................................15

*Hubbard v. BankAtlantic Bancorp, Inc.*,
  688 F. 3d 713 (11th Cir. 2012) ................................................................................12

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ...................................................................................5

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ...................................................................11

*Joh v. Am. Life Ins. Co.*,
  2020 WL 109067 (N.D. Cal. Jan. 9, 2020) .....................................................................8

*Knapp v. Art.com, Inc.*,
  283 F. Supp. 3d 823 (N.D. Cal. 2017) .........................................................................11

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) .....................................................................................6

*In re LendingClub Sec. Litig.*,
  282 F. Supp. 3d 1171 (N.D. Cal. 2017) .........................................................................7

*In re LinkedIn User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015)................................................................................14

*Linney v. Cellular Ala. P'ship*,
  1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998) ..................8-9

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

*In re LJ Int'l, Inc. Sec. Litig.*,
    2009 WL 10669955 (C.D. Cal. Oct. 19, 2009)........................................................................11

*In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices*
    *& Prods. Liab. Litig.*,
    952 F.3d 471 (4th Cir. 2020) ...............................................................................................19

*McPhail v. First Command Fin. Planning, Inc.*,
    2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ........................................................................11

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...................................................................................10, 11, 16

*In re MGM Mirage Sec. Litig.*,
    708 F. App'x 894 (9th Cir. 2017) ........................................................................................22

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019) ......................................................................10

*Miller v. Ghirardelli Chocolate Co.*,
    2014 WL 4978433 (N.D. Cal. Oct. 2, 2014)........................................................................19

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)............................................................................................................22

*Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................. 16-17

*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*,
    768 F. App'x 651 (9th Cir. 2019) ........................................................................................19

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)........................................................................8

*Nguyen v. Radient Pharm. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) .......................................................................20

*Nobles v. MBNA Corp.*,
    2009 WL 1854965 (N.D. Cal. June 29, 2009) ...............................................................12, 14

*Officers of Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ..............................................................................................10

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................11, 15

*In re Oracle Sec. Litig.*,
    1994 WL 502054 (N.D. Cal. June 18, 1994)......................................................................20

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

*In re Polaroid ERISA Litig.*,
  240 F.R.D. 65 (S.D.N.Y. 2006) ....................................................................................7

*In re Portal Software, Inc. Sec. Litig.*,
  2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ..........................................................15

*Quiruz v. Specialty Commodities, Inc.*,
  2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ............................................................17

*In re Rambus Inc. Derivative Litig.*,
  2009 WL 166689 (N.D. Cal. Jan. 20, 2009) ..............................................................16

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) .....................................................................................22

*Spann v. J.C. Penney Corp.*,
  314 F.R.D. 312 (C.D. Cal. 2016) ...............................................................................23

*Taafua v. Quantum Glob. Techs., LLC*,
  2021 WL 579862 (N.D. Cal. Feb. 16, 2021) ...............................................................5

*Vataj v. Johnson*,
  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) .............................................................11

*Velazquez v. Int'l Marine & Indus. Applicators, LLC*,
  2018 WL 828199 (S.D. Cal. Feb. 9, 2018)............................................................16, 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  2019 WL 2077847 (N.D. Cal. May 10, 2019) .............................................................6

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  229 F. Supp. 3d 1052 (N.D. Cal. 2017) .....................................................................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  895 F.3d 597 (9th Cir. 2018) .......................................................................................5

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ...........................................................23

*Young v. LG Chem., Ltd.*,
  783 F. App'x 727 (9th Cir. 2019) ..............................................................................23

**Statutes**

15 U.S.C. § 78u...............................................................................................................23

28 U.S.C. § 1715.............................................................................................................17

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................................................ *passim*

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 28, 2022, at 1:30 p.m.,[1] in Courtroom 4 on the 17th Floor of the United States District Court for the Northern District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, San Francisco, California 94102, the Honorable Vince Chhabria presiding, Court-appointed Lead Plaintiff, SEB Investment Management AB ("SEB" or "Lead Plaintiff"), will and hereby does move pursuant to Federal Rule of Civil Procedure ("Rule") 23 for orders: (i) granting final approval of the proposed settlement set forth in the Stipulation and Agreement of Settlement dated June 30, 2021 ("Stipulation") (ECF No. 189-2); and (ii) approving the proposed plan for allocating the net proceeds of the Settlement to the Settlement Class ("Plan of Allocation" or "Plan").

This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities that follows, the accompanying declarations, including the Declaration of Jennifer L. Joost in Support of: (I) Lead Plaintiff's Motion for Final Approval of Proposed Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Litigation Expenses ("Joost Declaration"), the Stipulation, and the papers and pleadings filed in this action, the arguments of counsel, and any other matters properly before the Court.

Lead Counsel is not aware of any opposition to the motion. Pursuant to the Court's Order Preliminarily Approving Settlement and Providing for Notice dated November 2, 2021 ("Preliminary Approval Order") (ECF No. 198), any objections to the Settlement and/or Plan of Allocation must be filed by March 31, 2022, and Lead Plaintiff's reply submission must be filed by April 21, 2022. Proposed orders granting the relief requested herein will be submitted with Lead Plaintiff's reply submission.

## STATEMENT OF ISSUES TO BE DECIDED

1.      Whether the Court should approve the proposed settlement of this securities class action as fair, reasonable, and adequate under Rule 23(e)(2).

2.      Whether the Court should approve the Plan of Allocation as fair and reasonable.

---

[1]      Lead Counsel has noticed this motion for the date and time ordered in Judge Koh's November 2, 2022 Preliminary Approval Order: Thursday, April 28th at 1:30 p.m. Lead Counsel recognizes that this Court holds motion hearings on Thursdays at 10:00 a.m. and may reset the time of the hearing.

3.      Whether the Court should finally certify the Settlement Class pursuant to Rules 23(a) and (b)(3) for the purposes of effectuating the Settlement only.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiff, on behalf of itself and the Settlement Class, respectfully submits this Memorandum of Points and Authorities in support of its motion for final approval of the proposed Settlement, approval of the proposed Plan of Allocation, and certification of the Settlement Class for settlement purposes.[2]

## I.    PRELIMINARY STATEMENT

After nearly three years of hard-fought litigation, including two rounds of motion to dismiss briefing, substantial fact discovery, and extensive arm's-length negotiations facilitated by an experienced mediator, Lead Plaintiff and Lead Counsel have succeeded in securing a $16 million cash recovery for the Settlement Class. Subject to the Court's final approval, this Settlement will resolve all claims asserted in the Action against Defendants and the other Released Defendants' Parties. The Settlement provides an excellent result for the Settlement Class and readily satisfies Rule 23(e)(2)'s standards for final approval.

As set forth herein, the Settlement provides a considerable benefit to the Settlement Class by conferring a near-team, certain recovery while avoiding the significant risks and expense of continued litigation, including the risk that the Settlement Class could recover nothing or substantially less than the Settlement Amount after additional years of litigation and delay. The Settlement Amount also represents a meaningful percentage of the Settlement Class's estimated damages. *See infra* Section II.C.1.

In reaching the Settlement, Lead Plaintiff and Lead Counsel carefully considered the risks of continued litigation. While Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants are meritorious, they recognize that the Action presented a number of substantial risks to establishing Defendants' liability, including challenges to proving falsity, materiality, and scienter. Indeed, at the pleading stage the Court dismissed with prejudice all but one of the alleged misleading statements and even for the sole remaining statement, noted that falsity and materiality were "a close call." ECF No. 138 at 23; Joost Decl., ¶¶ 8, 141. As a result, the Settlement Class's ability to recover anything in this

---

[2]      All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation and the Joost Declaration. Unless otherwise noted, all internal quotation marks, citations, or other punctuation are omitted, and all emphasis is added.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Action depended entirely on the interpretation of this single remaining statement—specifically, whether Lead Plaintiff could establish that the statement materially misled investors, whether the information omitted from the statement was material, and what information Defendants knew when they made the statement.

As just one example, had the Action continued, Defendants would have asserted at summary judgment and trial that Lead Plaintiff's interpretation of the sole remaining statement was incorrect. Indeed, at the motion to dismiss stage, the Court agreed that the "statement is ambiguous" as to whether Defendant Hogan was discussing "the impact of competition" but ultimately upheld the statement because at the pleading stage "the Court must adopt Plaintiff's interpretation." ECF No. 138 at 19; Joost Decl., ¶ 139. In addition, Defendants would have argued that their failure to disclose the 3Q18 Discounting Promotion was immaterial given that the market was already fully aware that Align regularly engaged in marketing and promotional activities, and that these activities had the potential to drive down the Company's ASPs. Joost Decl., ¶ 140. Although Lead Plaintiff believed it had strong arguments on these disputes and others, it recognized that there was a real risk that the Court or a jury may ultimately have sided with Defendants, in which case the Settlement Class would have recovered nothing.

In addition to liability, Lead Plaintiff also faced significant hurdles in proving loss causation and damages. For example, Defendants would have argued that a large portion of Align's ASP decline—and resulting stock price decline on October 25, 2018—was caused by non-fraud related factors. Joost Decl., ¶ 152. In support, Defendants would point to their October 25, 2018 disclosure that just 36% of Align's ASP decline resulted from promotional activities, with the remainder attributable to product mix and exchange rate shifts. *Id*. Defendants may have further argued that a portion of the 36% ASP decline was attributable to promotional programs *other than* the 3Q18 Discounting Promotion pled in the Amended Complaint. Joost Decl., ¶ 153. Thus even if Lead Plaintiff succeeded in proving liability, these arguments had the potential to significantly diminish, or even eradicate, the Settlement Class's recovery.

As detailed in the Joost Declaration, based on their extensive prosecution of the claims in the Action, Lead Plaintiff and Lead Counsel were well-informed of the strengths and weaknesses of the case

prior to reaching the Settlement.[3] Moreover, the Settlement is the product of extensive, arm's-length negotiations between the Parties—including two full-day remote mediation sessions with Gregory P. Lindstrom of Phillips ADR, an experienced mediator of complex class actions; the preparation and exchange of comprehensive mediation statements by the Parties; and multiple rounds of settlement demands and offers. Joost Decl., ¶¶ 119-26. The Parties' negotiations culminated in an agreement-in-principle to resolve the Action on June 11, 2021. The Settlement is not "claims-made" and all Settlement proceeds, after the deduction of Court-approved fees and costs, will be distributed to Settlement Class Members who submit Claims that are accepted by the Court for payment.

On November 2, 2021, following a hearing on the motion, the Court preliminarily approved the Settlement, finding it likely that the Court will approve the Settlement at the final approval stage. ECF No. 198, ¶ 4. The Settlement has the full support of the sophisticated, institutional investor Lead Plaintiff, and the reaction of the Settlement Class to date has been positive. While the deadline for objections has not yet passed, following the dissemination of more than 135,000 Notices to Settlement Class Members and Nominees as well as publication of a summary notice online and in high-circulation media,[4] there have been no objections to the Settlement or the Plan of Allocation. Joost Decl., ¶¶ 9, 159, 169.

Given the foregoing considerations and the factors addressed below, Lead Plaintiff and Lead Counsel respectfully submit that: (i) the Settlement meets the standards for final approval under Rule 23, and is a fair, reasonable, and an adequate result for the Settlement Class; and (ii) the Plan of Allocation is a fair and reasonable method for equitably distributing the Net Settlement Fund. Lead Plaintiff also requests that the Court grant final certification to the Settlement Class for purposes of effectuating the Settlement.

---

[3]    The Joost Declaration is an integral part of this submission and, for the sake of brevity herein, Lead Plaintiff respectfully refers the Court to the Joost Declaration for a detailed description of, *inter alia*: the claims asserted, the procedural history of the Action, the Settlement negotiations, the risks of continued litigation, compliance with the Court-approved notice plan and the reaction of the Settlement Class to date, and the Plan of Allocation.

[4]    *See* Declaration of Luiggy Segura Regarding (A) Dissemination of Notice Packet; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion and Claims Received to Date ("Segura Decl.") submitted herewith, ¶¶ 10-11.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## II.    THE SETTLEMENT WARRANTS FINAL APPROVAL

Rule 23(e) requires judicial approval of any class action settlement. Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). Whether to grant such approval lies within the district court's sound discretion. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018). In exercising this discretion, a court should be guided by the Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also Taafua v. Quantum Glob. Techs., LLC*, 2021 WL 579862, at *3 (N.D. Cal. Feb. 16, 2021) ("The Ninth Circuit has declared that a strong judicial policy favors settlement of Rule 23 class actions.").

"Under [Rule] 23(e)(2), a district court may approve a class action settlement only after finding that the settlement is fair, reasonable, and adequate." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1120-21 (9th Cir. 2020). In making that determination, Rule 23(e)(2) provides that a court should consider whether:

(A)    the class representatives and class counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

Consistent with Rule 23(e)(2)'s guidance, the Ninth Circuit has identified similar factors for courts to consider in deciding whether to approve a class action settlement:

(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a

governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (approving settlement after considering both the "Rule 23(e)(2) factors . . . and the factors identified in" Ninth Circuit case law).[5] Further, the Ninth Circuit has explained that a court's review of a settlement should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). In approving a settlement, a court "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992); *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012).

At the preliminary approval stage, the Court considered the Rule 23(e)(2) factors in assessing the Settlement, and found it to be fair, reasonable, and adequate, subject to further evaluation at the Final Approval Hearing. ECF No. 198, ¶ 4. Nothing has changed to alter this previous analysis, and the factors supporting the Court's determination to preliminarily approve the Settlement apply equally now. *See, e.g.*, *In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Practices, & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) (finding "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"). Accordingly, the Settlement is fair, reasonable, and adequate and warrants final approval under the Rule 23(e)(2) factors and Ninth Circuit law.

---

[5]    The "goal" of the 2018 amendments to Rule 23(e)(2) was "not to displace" any of the factors historically articulated by the various Circuits, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Campbell*, 951 F.3d at 1121 n.10. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

### A.  Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class in the Action

In determining whether to approve a class action settlement, the Court should first consider whether Lead Plaintiff and Lead Counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). To determine adequacy, "courts consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *See, e.g., In re LendingClub Sec. Litig.*, 282 F. Supp. 3d 1171, 1182 (N.D. Cal. 2017). This factor clearly weighs in favor of the Settlement.

Lead Plaintiff's claims, all of which are based on a common course of alleged wrongdoing by Defendants, are typical of other Settlement Class Members and Lead Plaintiff has no interests antagonistic to the Settlement Class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (adequacy of representation depends on "an absence of antagonism" and "a sharing of interest" between representatives and absent class members). In addition, Lead Plaintiff—like all other Settlement Class Members—has an interest in obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Lead Plaintiff has adequately represented the interests of the Settlement Class in both its vigorous prosecution of the Action during the past three years—*inter alia*, communicating regularly with Lead Counsel, reviewing pleadings and briefs, and gathering documents and information in response to Defendants' discovery requests—as well as in the negotiation and achievement of the Settlement. *See generally* Joost Decl., ¶¶ 97, 185.

Likewise, Lead Plaintiff retained counsel who is highly experienced in securities class action litigation and has successfully prosecuted many of these actions throughout the United States. S*ee* ECF No. 189-4 (KTMC's resume). Here, Lead Counsel actively pursued the claims on behalf of the Settlement Class and aggressively negotiated a favorable Settlement through mediation. *See Churchill*, 361 F.3d at 576-77 (instructing courts to consider "*experience and views of counsel*") (emphasis in original).

**B.      The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel and Two Mediations with an Experienced Neutral**

The Court should next consider whether the settlement was "negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). This includes consideration of related circumstances bearing on the procedural fairness of the settlement, including: (i) counsel's understanding of the strengths and weakness of the case based on factors such as "the extent of discovery completed and the stage of the proceedings," *Hanlon*, 150 F.3d at 1026; (ii) the presence or absence of any indicia of collusion, *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011); and (iii) the involvement of a mediator, *see Joh v. Am. Life Ins. Co.*, 2020 WL 109067, at *7 (N.D. Cal. Jan. 9, 2020) ("The involvement of a neutral mediator is evidence that settlement negotiations were conducted at arm's length."). This factor also weighs in favor of the Settlement.

The Settlement is the product of a rigorous negotiation process, including two formal mediation sessions with Mr. Lindstrom held more than six months apart, the preparation and exchange of detailed mediation statements on the relevant law and facts, and multiple settlement demands and offers. Joost Decl., ¶¶ 119-26. At the end of the initial mediation session in November 2020, the Parties were too far apart in their respective positions to resolve the Action. *Id.*, ¶ 122. Thereafter, following over six months of highly-contested discovery efforts, the Parties resumed their settlement discussions in accordance with the Court's May 6, 2021 order referring the Parties to private mediation and participated in a second formal mediation session with Mr. Lindstrom on June 10, 2021. *Id.*, ¶ 123. The June 2021 mediation, which continued late into the evening and resumed the following day, resulted in an agreement-in-principle to resolve the Action. *Id.*, ¶ 125.

As courts in this District have explained, the fact that the Parties reached a settlement through arm's-length negotiations between experienced counsel following discovery efforts creates a presumption of fairness. *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel."); *Linney v. Cellular Ala. P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997) ("The involvement of experienced class action counsel and the fact that the settlement agreement was

reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair."), *aff'd*, 151 F.3d 1234 (9th Cir. 1998). The involvement of an experienced mediator in the settlement process, like Mr. Lindstrom here, further "confirms that the settlement is non-collusive." *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018).

In addition, as noted above, Lead Plaintiff possessed a thorough understanding of the strengths and weaknesses of the case before reaching the Settlement. As detailed in the Joost Declaration, Lead Counsel conducted an extensive investigation, including interviews (facilitated through in-house investigators) with former Align employees, prepared two amended complaints, briefed two motions to dismiss, participated in substantial discovery efforts, litigated four discovery-related motions, and consulted with experts in the areas of market efficiency, loss causation, and damages. Joost Decl., ¶¶ 25-114. The Parties' extensive settlement negotiations further informed the Parties of the strength of each side's arguments. *Id.*, ¶¶ 119-26.

Finally, the Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, such as a "clear-sailing" fee agreement or a provision that would allow settlement proceeds to revert to Defendants.[6] *See Bluetooth Headset*, 654 F.3d at 947. In short, the Settlement was reached after extensive arm's-length negotiations supervised by an experienced mediator and conducted by well-informed counsel after the completion of substantial discovery and was not a product of fraud, overreaching, or collusion among the Parties.[7]

---

[6]    *See* Stipulation, ¶ 16 ("Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Counsel other than what is set forth in this Stipulation."); Stipulation, ¶ 14 ("The Settlement is not a 'claims-made' settlement. Upon the occurrence of the Effective Date, neither Align nor any other person or entity who or which paid any portion of the Settlement Amount (including the D&O Insurers) shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever[.]").

[7]    *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018) ("[I]n light of the fact that the Settlement was reached after the parties engaged in motion practice and participated in multiple days of formal mediation, the Court concludes that the negotiations and agreement were non-collusive.").

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

**C.    The Settlement Provides the Settlement Class Adequate Relief, Considering the Costs, Risks, and Delay of Litigation and the Other Rule 23(e)(2) Factors**

The remaining Rule 23(e)(2) factors overlap considerably with those articulated by the Ninth Circuit, and all entail "a 'substantive' review of the terms of the proposed settlement" that evaluate the fairness of the "relief that the settlement is expected to provide to" the Settlement Class. Fed. R. Civ. P. 23(e)(2) Advisory Comm. Notes to 2018 Amendment; *see also Churchill*, 361 F.3d at 575-77. As discussed below, these factors weigh in favor of the Settlement.

**1.    The Amount Offered in Settlement**

"The critical component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016) (amount of settlement is "generally considered the most important" factor). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). By definition, a settlement "embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers of Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982); *see also Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on the significant risks of continued litigation and the Settlement amount, the Court finds that the amount offered for settlement is fair.").

Here, the $16 million Settlement constitutes a favorable result for the Settlement Class. Notably, in terms of the amount alone, the Settlement is more than double the size of the median securities class action settlement in the Ninth Circuit between 2011 and 2020—i.e., $7.3 million.[8]

In addition, the Settlement provides a meaningful financial benefit to the Settlement Class in comparison to the estimated potential damages and eliminates the significant risk that the Settlement Class could recover less, *or even nothing at all*, if the Action continued. Had Lead Plaintiff overcome *all* of the obstacles to establishing liability, loss causation, and damages discussed *infra*, total potential damages for

---

[8]    *See* Laarni T. Bulan & Laura E. Simmons, *Securities Class Action Settlements: 2020 Review and Analysis*, Cornerstone Research, at 20 (2021), https://www.cornerstone.com/wp-content/uploads/2021/12/Securities-Class-Action-Settlements-2020-Review-and-Analysis.pdf.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

the non-dismissed claims were estimated by Lead Plaintiff's damages consultant to be approximately $482 million. Joost Decl., ¶ 172. However, if Defendants prevailed on their argument that a large portion of Align's ASP decline and resulting stock price decline on October 25, 2018, was caused by non-fraud related factors such as a change in the exchange rate or a shift in Align's product mix as opposed to the promotional activities at issue in the Action, the Settlement Class's recoverable damages would have decreased significantly to $174.6 million. *Id.* Accordingly, the Settlement represents between 3.3% and 9.1% of likely recoverable damages—a range of percentage recoveries routinely approved by courts in this Circuit. *Id.*; *see also Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages"); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (approving settlement representing between 5% and 9.5% of "maximum potential damages").[9] Considered against the significant risks involved with prosecuting this Action further, the Settlement Amount is fair, reasonable, and adequate, and thus, this factor strongly supports final approval.

### 2.    The Strength of Lead Plaintiff's Case

Courts evaluating proposed class action settlements consider the strength of the plaintiff's case and the risks of further litigation. *See Mego Fin. Corp. Sec. Litig.*, 213 F. 3d 454, 458 (9th Cir. 2000). To determine whether the Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of [a] recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

---

[9]    *See also, e.g., In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (finding settlement recovering 8% of estimated damages "equals or surpasses the recovery in many other securities class actions"); *IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement recovering approximately 3.5% of maximum damages); *McPhail v. First Command Fin. Planning, Inc.*, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding securities-class-action settlement recovering 7% of estimated damages "weigh[s] in favor of final approval"); *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving settlement recovering 4.5% of maximum damages); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (finding settlement yielding 9% of potential damages "higher than the median percentage of investor losses recovered in recent shareholder class action settlements"); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153007, at *6 (C.D. Cal. Sept. 14, 2005) (approving settlement representing 2.7% of damages and finding such percentage was "not [] inconsistent with the average recovery in securities class action[s]").

While Lead Plaintiff and Lead Counsel are confident in the merits of their claims and believe that they could have ultimately prevailed against Defendants, they recognize the numerous risks and uncertainties that would accompany further litigation. Joost Decl., ¶¶ 133-55. Lead Plaintiff and Lead Counsel also recognize that plaintiffs have prosecuted many securities actions believing their cases to be meritorious, only to lose on summary judgment, at trial, or on appeal. *See Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009) (noting that, although "[p]laintiff's claim has survived a motion to dismiss, [] success is not guaranteed if this matter were to proceed to jury trial").[10]

*First*, Lead Plaintiff faced challenges to proving that the sole remaining statement in the Action was materially false or misleading when made and that Defendants did not legitimately believe the truth of such statement. Joost Decl., ¶¶ 144-45. Had the Action continued, Defendants would have vigorously contended, as they did at the motion to dismiss stage, that Lead Plaintiff was misinterpreting the alleged misstatement. More specifically, Defendants would argue that Defendant Hogan's response—"there's not a momentum piece or anything that we're adjusting the business around right now" was in response to the *first portion* of the following multi-part question from an analyst regarding competitors "approaching their and potentially your customer bases with respect to trialing or getting some initial kind of traction in the field" *and not the second portion* of the question regarding whether there has been "[a]ny kind of impact from competition":

> First one on just competition, Joe, is there anything—since some of the competitors launched back in May [at the AAO], that you're hearing in terms of how they're approaching their and potentially your customer bases with respect to trialing or getting some initial kind of traction in the field? Or has it been relatively kind of quiet? And then with respect to the guidance question and competition, is there anything at all factored into your 2018 growth outlook, including the revised one? Any kind of impact from competition?

*Id.*, ¶¶ 137-39. In its September 2020 MTD Order, the Court found Defendant Hogan's statement to be "*ambiguous* as to whether [he] was responding to the first portion of the question, about competitors using

---

[10]   *See also, e.g.*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F. 3d 713 (11th Cir. 2012) (overturning jury verdict and award in favor of plaintiff on loss causation grounds); *In re Apollo Grp., Inc. Sec. Litig.*, 2010 WL 5927988 (9th Cir. June 23, 2010) (granting judgment to defendants and nullifying an unanimous jury verdict for plaintiff following trial).

trials to gain traction in the market, or whether he was addressing the second [portion of the] question, regarding the impact of competition more generally." ECF No. 138 at 19.

In addition, Defendants would continue to argue at summary judgment and trial that their failure to disclose the 3Q18 Discounting Promotion was not materially misleading, given that the market was already fully aware that Align regularly engaged in marketing and promotional activities and further disclosed that such activities could negatively impact Align's ASPs. Joost Decl., ¶ 140. Defendants would also assert that the 3Q18 Discounting Promotion was not put into place in response to any competitive threat, but was instead just a run of the mill promotion of the sort that Align ran all of the time. *Id.*, ¶ 142. Even at the pleading stage—accepting all of Lead Plaintiff's allegations as true and drawing all inferences in its favor, the Court noted that falsity and materiality for the disputed statement was a "close call." ECF No. 138 at 23. Lead Plaintiff and Lead Counsel thus recognized that there was no guarantee that the Court, on a fully evidentiary record, or ultimately a jury would ultimately find in their favor on these critical elements.

Similarly, Defendants would have continued to aggressively dispute that the requisite element of scienter was satisfied. Joost Decl., ¶ 144. For example, Defendants would have argued that they did not realize until the very end of the third quarter that the 3Q18 Discounting Promotion would have a detrimental effect on Align's ASPs and that the impact on ASPs was entirely unexpected. *Id.*, ¶ 145. Although Lead Plaintiff and Lead Counsel believe that their scienter arguments were persuasive, they also understood that there was a real risk that the trier of fact could disagree.

*Second*, even if Lead Plaintiff could establish liability, it still faced significant risks in proving loss causation and damages at trial. Joost Decl., ¶¶ 151-55. To establish these elements, Lead Plaintiff would have to prove that the revelation of the relevant truth concealed by Defendants' alleged misstatement proximately caused the declines in the price of Align common stock.[11]

During the course of the Action, Defendants asserted that a large portion of Align's ASP decline and resulting stock price decline on October 25, 2018, was not caused by promotional activity but instead by non-fraud related factors like a change in the exchange rate and a shift in Align's product mix. Joost

---

[11]   *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiff bears the burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover").

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

Decl., ¶ 152. In fact, on October 25, 2018, Defendants publicly represented that just 36% of the ASP decline was the result of promotional activities. *Id*., ¶ 153. If Defendants' argument succeeded, recoverable damages would have decreased by approximately 64%. *Id*. Defendants were also likely to argue that some portion of the 36% ASP decline attributable to promotional programs was the result of discounting promotions other than the 3Q18 Discounting Promotion discussed in the Amended Complaint, which had the potential to further reduce damages. *Id*. Indeed, because the determination of damages is a complicated process requiring expert testimony, the jury's assessments of the experts' evidence could vary substantially at trial, reducing this crucial element to an uncertain "battle of experts." *In re Celera Corp. Sec. Litig.*, 2015 WL 7351449, at *6 (N.D. Cal. Nov. 20, 2015) (risks related to "battle of the experts" favored of settlement approval).

Lead Counsel carefully analyzed each of these risks, and others, prior to agreeing to the Settlement. If realized, any one of these risks could have resulted in no recovery for the Settlement Class. By resolving the Action through the Settlement, in contrast, Lead Plaintiff guaranteed the Settlement Class a cash recovery of $16 million. This factor strongly supports final approval of the Settlement.

### 3.    The Complexity, Expense, and Duration of Continued Litigation

In addition to the risk of continued litigation, in evaluating the fairness of the Settlement, the "expense, complexity, and likely duration of further litigation," *Churchill*, 361 F.3d at 576, or "delay of trial and appeal" should be taken into account, Fed. R. Civ. P. 23(e)(2)(C)(i). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015). Here, these factors further underscore the fairness of the Settlement.

Class action litigation is inherently complex. *See Nobles*, 2009 WL 1854965, at *2 (finding proposed settlement proper "given the inherent difficulty of prevailing in class action litigation"). This

securities class action, prosecuted under the more restrictive provisions of the PSLRA is no exception.[12] As discussed above and in the Joost Declaration, continued litigation of this Action presented numerous risks to Lead Plaintiff's ability to establish liability and damages. Joost Decl., ¶¶ 136-55.

Further, the Parties were in the midst of contested discovery when the Settlement was reached. Joost Decl., ¶¶ 78-107. Barring settlement, continued litigation of the Action—through substantial additional fact discovery, expert discovery, class certification briefing, dispositive motion practice, pre-trial preparation, and post-trial appeals—would impose substantial additional costs on the Settlement Class and delay the Settlement Class's ability to recover. In contrast, the Settlement avoids the risk, expense, and delay of continued litigation while providing a substantial, near-term recovery for the Settlement Class. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 640 (S.D. Cal. 2011), *aff'd in part*, 473 F. App'x 716 (9th Cir. 2012) ("Considering these risks, expenses and delays, an immediate and certain recovery for class members . . . favors settlement of this action.").

### 4.    Risk of Maintaining Class Action Status

When the Settlement was reached, Lead Plaintiff's motion for class certification was due to be filed on July 20, 2021. ECF No. 187. Although Lead Plaintiff is confident that it would succeed in obtaining certification of a class, the Settlement removes any uncertainty with respect to certification. *See OmniVision*, 559 F. Supp. 2d at 1041-42 ("If the Court were to refuse certification, the unrepresented potential plaintiffs would likely lose their chance at recovery entirely. . . . As Defendants agree to the class certification for the purposes of the Settlement, there is much less risk of anyone who may have actually been injured going away empty-handed.").[13] This factor favors the Settlement.

---

[12]    Indeed, "the heightened pleading requirement of the PSLRA and the application of *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336 (2005), which poses significant risks to plaintiffs' ability to survive . . . summary judgment and prevailing at trial, suggest that settlement here is prudent." *In re Portal Software, Inc. Sec. Litig.*, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (finding that securities class actions have well-deserved reputation for complexity).

[13]    This factor would support the Settlement even if Lead Plaintiff obtained class certification, as the Court may exercise its discretion to re-evaluate the appropriateness of class certification at any time. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *see also Omnivision*, 559 F. Supp. 2d at 1041 ("[T]here is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class.").

### 5.      The Extent of Discovery Completed and the Stage of Proceedings

In assessing a settlement, courts should consider the stage of the proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case. *See, e.g.*, *Mego Fin. Corp.*, 213 F. 3d at 459; *In re Rambus Inc. Derivative Litig.*, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009). Moreover, "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *Velazquez v. Int'l Marine & Indus. Applicators, LLC*, 2018 WL 828199, at *5 (S.D. Cal. Feb. 9, 2018).

From the commencement of this Action in November 2018 through the Parties' agreement to settle in June 2021, Lead Plaintiff and Lead Counsel spent substantial time and resources analyzing and zealously litigating the factual and legal issues involved in the Action. At the time of settlement, Lead Plaintiff, through its counsel, were in the midst of discovery efforts, having: (i) issued 30 document requests; (ii) served interrogatories; (iii) served 50 requests for admission; (iv) obtained 19,690 pages of documents from Defendants; and (v) reviewed Defendants' written discovery responses and production in response thereto. Joost Decl., ¶¶ 78-93. Lead Plaintiff also searched for, reviewed, and produced documents and responded to document requests and interrogatories served by Defendants. *Id.*, ¶¶ 94-99. The Parties also filed and argued four discovery-related motions before Judge DeMarchi. *Id.*, ¶¶ 100-07. Prior to settlement, Lead Plaintiff, through its counsel, also briefed two motions to dismiss, consulted with experts, and was preparing a motion for class certification. *Id.*, ¶¶ 42-43, 61, 108-14. In addition, Lead Plaintiff and Lead Counsel participated in two formal mediation sessions with Mr. Lindstrom, which included preparation of detailed mediation statements. *Id.*, ¶¶ 119-25.

This substantial record demonstrates that, when the Settlement was reached, "litigation had proceeded to a point in which both parties had a clear view of the strengths and weaknesses of their cases." *Zynga, Inc.*, 2016 WL 537946, at *12. This factor supports final approval of the Settlement.

### 6.      The Experience and Views of Counsel

The informed opinion of experienced Lead Counsel that the Settlement is in the best interest of the Settlement Class should be afforded significant weight. *Nat'l Rural Telecomms. Coop. v. DirectTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("Great weight is accorded to the recommendation of counsel . . .

because parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."); *see also Quiruz v. Specialty Commodities, Inc.*, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."). Here, as set forth above, Lead Counsel has a thorough understanding of the merits and risks of the Action and extensive prior experience in securities litigation (*see* ECF No. 189-4 (KTMC resume)). Therefore, Lead Counsel's belief that the Settlement represents a very favorable outcome for Settlement Class Members favors approval of the Settlement.

### 7.    Existence of a Governmental Investigation

Here, there was no governmental investigation into the claims alleged in the Action, and thus, the Settlement is the only recovery for Settlement Class Members. Thus, this factor supports approval.

Also, pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), Defendants provided notice of the Settlement to appropriate state and federal officials (ECF No. 202, ¶ 6) and, to date, there have been no objections (Joost Decl., ¶¶ 9, 159). Courts have found this factor to weigh in favor of final approval where no state or federal officials have objected after receiving notice pursuant to CAFA. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) ("Although CAFA does not create an affirmative duty for either state or federal officials to take any action in response to a class action settlement, CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures.").

### 8.    The Reaction of Settlement Class Members to Date

"In addition to the enumerated fairness factors of Rule 23(e)(2), courts within the Ninth Circuit typically consider the reaction of the class members to the proposed settlement." *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *15 (N.D. Cal. Mar. 18, 2020); *see also Churchill*, 361 F.3d at 577. "The absence of a large number of objectors supports the fairness, reasonableness, and adequacy of the settlement." *Velazquez*, 2018 WL 828199, at *6. Here, as of the date of this filing, no

objections to the Settlement have been filed. Joost Decl., ¶¶ 9, 159. Moreover, Lead Plaintiff supports the Settlement as well. This factor favors approval of the Settlement.

### D. The Remaining Rule 23(e)(2) Factors Also Support Final Approval

In evaluating the Settlement, Rule 23(e)(2) instructs courts to also consider: (i) the effectiveness of the proposed method of distributing the relief provided to the class, including the method of processing class member claims; (ii) the terms of any proposed award of attorney's fees, including the timing of payment; (iii) any other agreement made in connection with the proposed settlement; and (iv) whether class members are treated equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv), (e)(2)(D). These factors also weigh in favor of the Court's approval of the Settlement.

*First*, the proposed method of distribution and claims processing ensures equitable treatment of Settlement Class Members. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D). Settlement Class Members' Claims will be processed and the Net Settlement Fund distributed pursuant to a standard method routinely approved in securities class actions. The Court-authorized Claims Administrator, JND Legal Administration ("JND"), will review and process all Claims received, provide Claimants with an opportunity to cure any deficiency or request judicial review of the denial of their Claims, if applicable, and will ultimately mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund, as calculated under the Plan of Allocation. *See infra* Part III; Joost Decl., ¶¶ 160-68. Importantly, none of the Settlement proceeds will revert to Defendants. *See* Stipulation, ¶ 14.

*Second*, the relief provided by the Settlement remains adequate upon consideration of the terms of the proposed award of attorneys' fees and reimbursement of Litigation Expenses incurred in prosecuting this Action, including the timing of any such Court-approved payments. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii). As shown in the Fee Memorandum, the requested attorneys' fees of 20% of the Settlement Fund, made in accordance with Lead Plaintiff's retention agreement and to be paid only upon the Court's approval, are reasonable in light of Lead Counsel's efforts in prosecuting this Action over the past nearly three years and obtaining a $16 million cash recovery, as well as the significant risks shouldered by Lead Counsel.[14]

---

[14]    In connection with its fee request, Lead Counsel also seeks payment from the Settlement Fund of its Litigation Expenses in the total amount of $190,419.50. Joost Decl., ¶ 186.

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF

As discussed in the Fee Memorandum, the requested fee is also below the 25% benchmark for percentage fee awards in the Ninth Circuit and well within the range of fee percentages awarded by courts in this Circuit. *See In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019) (noting Ninth Circuit case law "permit[s] awards of attorneys' fees ranging from 20 to 30 percent of settlement funds, with 25 percent as the benchmark award"). Further, any fee award is separate from the approval of the Settlement, and neither Lead Counsel nor Lead Plaintiff may terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees. *See* Stipulation, ¶ 17. Additionally, the proposal that any Court-awarded attorneys' fees be paid upon issuance of such an award is reasonable and consistent with common practice in similar cases, as the Stipulation dictates that if the Settlement were terminated or any fee award subsequently modified, Lead Counsel must repay the subject amount with interest. *Id* As is the practice of this Court, Lead Counsel will request that 90% of its fee award be paid at the time of award and the remaining 10% be paid following the initial distribution to the Settlement Class.[15]

*Lastly*, as previously disclosed, the only agreement the Parties entered into in addition to the initial Term Sheet and the Stipulation was a confidential Supplemental Agreement regarding requests for exclusion. *See* Stipulation, ¶ 39; ECF No. 188-5; *see also* Fed. R. Civ. P. 23(e)(2)(C)(iv). The Supplemental Agreement provides Align with the option to terminate the Settlement in the event Settlement Class Members who timely and validly request exclusion from the Settlement Class meet certain conditions. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler*, 2018 WL 4207245, at *11 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

For the reasons set forth above and in the Joost Declaration, the Settlement is fair, reasonable, and adequate when evaluated under any standard, and, therefore, warrants the Court's final approval.

---

[15]     Such provisions in class action settlements, sometimes termed "quick-pay" provisions, "have generally been approved by other federal courts." *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 487 (4th Cir. 2020); *see also, e.g.*, *Miller v. Ghirardelli Chocolate Co.*, 2014 WL 4978433, at *5 (N.D. Cal. Oct. 2, 2014).

### III.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE AND WARRANTS FINAL APPROVAL

A plan for allocating settlement proceeds under Rule 23 is evaluated under the same standard of review applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See, e.g.*, *Class Plaintiffs*, 955 F.2d at 1284-85; *Hampton v. Aqua Metals, Inc.*, 2021 WL 4553578, at *10 (N.D. Cal. Oct. 5, 2021). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014). Further, "[a] plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable." *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).

Here, the Plan (set forth in Appendix A to the Notice) was developed by Lead Counsel in consultation with Lead Plaintiff's damages consultant Mr. Coffman and his team at Global Economics Group, LLC. Joost Decl., ¶ 162. The Plan is designed to equitably distribute the Net Settlement Fund to Settlement Class Members who timely submit valid Claims demonstrating they suffered economic losses caused by Defendants' alleged misrepresentations and omissions, as opposed to losses caused by market or industry factors or Align-specific factors unrelated to the allegations in the Action. *Id.*, ¶ 161.

The Plan is based upon the estimated amount of artificial inflation in the per share price of Align common stock during the Settlement Class Period. Joost Decl., ¶ 162. To have a Recognized Claim under the Plan, a Claimant must have purchased or otherwise acquired Align common stock during the Settlement Class Period (i.e., between May 23, 2018 and October 24, 2018, inclusive) and held those shares through the alleged corrective disclosure on October 24, 2018, after the close of the market, that removed the alleged artificial inflation caused by Defendants' alleged misrepresentations. *Id.*, ¶ 163. A Claimant's loss under the Plan will depend upon several factors, including the date(s) when the Claimant purchased/acquired their shares of Align common stock during the Settlement Class Period, and whether such shares were sold and if so, when and at what price, taking into account the PSLRA's statutory limitation on recoverable damages. *Id.*, ¶ 165. In addition, given the Court's dismissal with prejudice of all claims related to allegedly false and misleading statements made from May 23, 2018 through July 25, 2018, the Plan applies a 90% discount to Recognized Loss Amounts resulting from purchases or other

acquisitions during this time period to reflect the increased litigation risks on such dismissed claims. *Id.*, ¶ 166.[16] The sum of an Authorized Claimant's Recognized Loss Amounts for all their Settlement Class Period purchases/acquisitions is the Authorized Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims. *Id.*, ¶ 167.

One hundred percent of the Net Settlement Fund will be distributed to Authorized Claimants. If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent cost-effective distributions will be conducted. Joost Decl., ¶ 168. In the event any residual funds remain after all cost-effective distributions of the Net Settlement Fund to Authorized Claimants have been completed, the Plan identifies Charitable Smiles (www.charitablesmiles.org) as the proposed *cy pres* recipient. *Id.*[17] As noted in the Plan, payment will only be made to this charity when the residual amount left for re-distribution to Authorized Claimants is so small that a further re-distribution would not be cost effective. *Id.*

Notably, more than 135,000 copies of the Notice, containing the Plan and advising Settlement Class Members of their right to object to the Plan, have been mailed to potential Settlement Class Members and Nominees and, to date, no objections to the Plan have been received. Joost Decl., ¶ 169. Accordingly, Lead Counsel and Lead Plaintiff believe the Plan is fair, reasonable, and adequate and should be approved. Fed. R. Civ. P. 23(e)(2)(C)(ii), (e)(2)(D).

## IV.    THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

As set forth in Lead Plaintiff's motion for preliminary approval of the Settlement, the Settlement Class satisfies all of the requirements of Rules 23(a) and (b)(3). ECF No. 189 at 6-9; Preliminary Approval Order, ¶¶ 1-3 (finding the Court will likely be able to certify the Settlement Class in connection with final approval). None of the facts supporting certification of the Settlement Class have changed since Lead

---

[16]    *See Aqua Metal.*, 2021 WL 4553578, at *10 ("A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

[17]    Charitable Smiles is a 501(c)(3) nonprofit organization devoted to helping people who cannot afford dental treatment get the care they need. *See* Stipulation, ¶ 29. The Parties do not have any relationship to the proposed *cy pres* recipient.

Plaintiff submitted its preliminary approval motion. Accordingly, Lead Plaintiff respectfully requests that the Court certify the Settlement Class under Rules 23(a) and (b)(3) for purposes of effectuating the Settlement.

## V.   NOTICE OF THE SETTLEMENT SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA

Lead Plaintiff has provided the Settlement Class with adequate notice of the Settlement. Here, notice satisfied both: (i) Rule 23, as it was "the best notice . . . practicable under the circumstances" and directed "in a reasonable manner to all class members who would be bound by the" Settlement, Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173-75 (1974); *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); and (ii) due process, as it was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

In accordance with the Court's Preliminary Approval Order, JND began mailing and/or e-mailing copies of the Notice Packet to potential Settlement Class Members and Nominees on December 2, 2021. Segura Decl., ¶¶ 3-4. Through February 23, 2022, JND has mailed a total of 135,086 Notice Packets. *Id.*, ¶ 10. In addition, JND caused the Summary Notice to be published in *The Wall Street Journal* and transmitted over *PR Newswire* on December 13, 2021. *Id.*, ¶ 11. JND also established a dedicated website, www.AlignSecuritiesLitigationSettlement.com, to provide additional information about the Action and the Settlement as well as access to downloadable copies of the Notice and Claim Form and other Settlement-related documents. *Id.*, ¶ 13. Copies of the Notice and Claim Form can also be downloaded from Lead Counsel's website, www.ktmc.com. Pursuant to the Stipulation, Defendants also issued notice pursuant to CAFA. ECF No. 189-2, ¶ 21; ECF No. 202.

Collectively, the notices apprise Settlement Class Members of, *inter alia*: (i) the amount of the Settlement; (ii) the reasons why the Parties are proposing the Settlement; (iii) the estimated average recovery per affected share of Align common stock; (iv) the maximum amount of attorneys' fees and expenses that will be sought; (v) the identity and contact information for a representative from Lead

Counsel available to answer questions concerning the Settlement; (vi) the right of Settlement Class Members to object to the Settlement; (vii) the right of Settlement Class Members to request exclusion from the Settlement Class; (viii) the binding effect of a judgment on Settlement Class Members; (ix) the dates and deadlines for certain Settlement-related events; and (x) the opportunity to obtain additional information about the Action and the Settlement by contacting Lead Counsel, the Claims Administrator, or visiting the Settlement Website. *See* Fed. R. Civ. P. 23(c)(2)(B); 15 U.S.C. § 78u-4(a)(7). The Notice also contains the Plan of Allocation and provides Settlement Class Members with information on how to submit a Claim in order to be potentially eligible to receive a payment from the Net Settlement Fund. *See* Segura Decl., Exs. A & B. The content disseminated through this notice campaign was more than adequate, as it "generally describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Young v. LG Chem., Ltd.*, 783 F. App'x 727, 736 (9th Cir. 2019); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 330 (C.D. Cal. 2016) ("Settlement notices must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.").

In sum, this combination of individual first-class mail to all Settlement Class Members who could be identified with reasonable effort, supplemented by notice in an appropriate publication, transmission over a newswire, and publication on internet websites, was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Comparable notice programs are routinely approved by Courts in this District. *See, e.g.*, *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *2, *6 (N.D. Cal. Apr. 19, 2021) (approving similar notice plan); *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4-5 (N.D. Cal. Nov. 21, 2016) (same); *Zynga*, 2016 WL 537946, at *7-8 (same).

## VI.   CONCLUSION

For the reasons set forth herein and in the Joost Declaration, Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement, approve the Plan of Allocation, and grant final certification of the Settlement Class for settlement purposes.

Respectfully submitted,

Dated: February 24, 2022

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**

*/s/ Jennifer L. Joost*
Jennifer L. Joost (Bar No. 296164)
Stacey M. Kaplan (Bar No. 241989)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001
jjoost@ktmc.com
skaplan@ktmc.com

– and –

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Johnston de F. Whitman, Jr. (*Pro Hac Vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jwhitman@ktmc.com

*Counsel for Lead Plaintiff SEB Investment*
*Management AB and Lead Counsel for the*
*Settlement Class*

LEAD PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF
PROPOSED SETTLEMENT AND PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS
AND AUTHORITIES IN SUPPORT THEREOF